**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION**

Civil Action No. 1:18-cv-00282

| | | |
|---|---|---|
| NUVASIVE, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | INJUNCTIVE RELIEF SOUGHT |
| | ) | |
| MICHAEL JONES, and KENNETH KORMANIS, | ) ) | ORAL ARGUMENT REQUESTED |
| Defendants, | ) | |
| _____ | ) | |

## NUVASIVE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

By and through its counsel of record, and pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65.1, Plaintiff, NuVasive, Inc. ("NuVasive"), respectfully requests that this Court preliminarily enjoin Defendants, Michael Jones ("Jones") and Kenneth Kormanis ("Kormanis"), from violating the reasonable non-solicitation and non-competition obligations they owe to it and its exclusive distributor, InoSpine, LLC ("InoSpine"). In support of this request, NuVasive states:

### INTRODUCTION AND STATEMENT OF THE CASE

NuVasive's recently filed Complaint for Injunctive Relief and Damages alleges, among other things, that Jones and Kormanis are violating reasonable non-solicitation and non-competition obligations they owe to it and InoSpine. More specifically, NuVasive alleges that Jones is violating the terms of his Independent Contractor Agreement and Kormanis is violating the terms of his Employment Agreement by promoting and/or selling competitive products within their former InoSpine sales territories. As NuVasive will be irreparably harmed if Jones

and Kormanis continue violating their respective agreements, this Court should preliminarily enjoin Jones and Kormanis from violating their clear and unambiguous contractual obligations.

## STATEMENT OF RELEVANT FACTS

### I. NuVasive's Business.

NuVasive is an innovative medical device company focused on creating implants and systems used to treat spine disease. NuVasive markets its products through its exclusive sales force which consists of directly-employed personnel and exclusive sales agents. (Clay Dec., attached as **Exhibit 1**, at ¶ 3; D.E. 1, Compl. ¶ 9). NuVasive invests significant funds into providing this sales force with extraordinary, specialized, comprehensive, and industry leading training. (**Id.**) NuVasive also grants its sales force access to and knowledge of its trade secrets and proprietary information so that they are able to favorably represent NuVasive to its customers. (Hens Decl., attached as **Exhibit 2**, at ¶ 3). These sales agents are the "face" of NuVasive to its customers within their sales territory. (**Id.** at ¶ 4). Accordingly – as NuVasive's industry is highly competitive – it requires its sales personnel to agree to certain confidentiality, non-competition, and non-solicitation obligations as a condition of allowing the sales personnel to sell its products. (**Exhibit 1**, at ¶ 3; D.E. 1, Compl. ¶ 8).

### II. NuVasive's North Carolina Exclusive Distributor, InoSpine.

InoSpine is a North Carolina-based exclusive sales agent of NuVasive's products. (**Id.**; D.E. 1, Compl. ¶ 11). Jones and Kormanis are former sales representatives of InoSpine. (**Id.**; D.E. 1 Compl. ¶¶ 3-4).

Before joining InoSpine, Jones was a sales representative for Novus Technologies, Inc. ("Novus"), another exclusive distributor of NuVasive. (**Id.** at ¶ 4). Jones was engaged with Novus as an independent contractor and his sales territories included Western and Central North

Carolina.  (**Id.**)  In early, 2014, InoSpine acquired a portion of Novus' sales territory that included Western and Central North Carolina, and, pursuant to that acquisition, InoSpine was assigned Jones' independent contractor agreement with Novus.  (**Id.** at ¶¶ 8-9).  Jones' transition from Novus to InoSpine occurred through January and February 2014.  (**Id.** at ¶¶ 10-11).

Jones' relationship with InoSpine is governed by the February 1, 2014, Independent Contractor Agreement to which NuVasive is an express third-party beneficiary; and Kormanis' relationship with InoSpine is governed by the February 17, 2014, Employment Agreement to which NuVasive is also an express third-party beneficiary.  (**Id.** at ¶ 3; D.E. 1, p. 35, Compl. Ex. B at § 10).  These agreements: (a) contain reasonable non-competition, non-solicitation, and confidentiality obligations; (b) are supported by adequate consideration; and (c) do not violate North Carolina's public policy.

### III.     Jones' and Kormanis' Contractual Obligations.

Jones' Independent Contractor Agreement contains a reasonable non-competition provision, which states in relevant part:

> During the term of this Agreement and for a period of one (1) year following [Jones'] last day of employment, [Jones] will not compete with [InoSpine] in [Jones'] Territory,[1] as defined on <u>Schedule A</u> as it may be amended from time to time by [InoSpine], by:
>
> > (1) Selling and/or promoting any products that are competitive with any products sold and/or promoted by [InoSpine] on the last day of [Jones'] employment and which [Jones] sold and/or promoted while employed by [InoSpine].

(**Id.**; D.E. 1, Compl. Ex. A at § 8(A)(1)).  It also contains a reasonable non-solicitation agreement, which states in relevant part:

---

[1] Jones' Territory consisted of the following counties in North Carolina:  Mecklenburg, Catawba, Haywood, Iredell, Cabarrus, Rowan, Gaston, Rutherford, Caldwell, and Burke.  (**Exhibit 1**, at ¶ 3; D.E. 1, p. 25, Compl. Ex. A).

> For a period of one (1) year following the last day of [Jones'] employment, [Jones] will not compete with [InoSpine] by, in a competitive capacity:
>
>> (1) Soliciting or accepting business competitive to [InoSpine] from, or providing competing products and/or services to, any person or entity, from whom or which [Jones] accepted business on behalf of [InoSpine] or to whom or which [Jones] provided products and/or services on behalf of [InoSpine] during the one-year period preceding the last day of [Jones'] employment; or
>>
>> (2) Soliciting or accepting competing business from or providing competing products and/or services to, any person or entity from whom or which [Jones] personally solicited business on behalf of [InoSpine] during the three (3) month period immediately preceding the last day of [Jones'] employment.

Other than a two year temporal restriction[2], Kormanis' non-competition and non-solicitation obligations are similar to Jones'. (**Id.**; D.E. 1, Compl. Ex. B at §§ 8-9). Both Jones' Independent Contractor Agreement and Kormanis' Employment Agreement expressly recognize: (a) the existence of irreparable harm; (b) the insufficiency of remedies at law; and (c) an entitlement to injunctive relief against them. (**Id.**; D.E. 1, Compl. Ex. A at § 13, Ex. B at § 13).

### IV. Jones' and Kormanis' Violations of Their Contractual Obligations

Kormanis and Jones terminated their relationships with InoSpine on March 3 and 6, 2018, respectively. (**Id.**; D.E. 1, Compl. ¶ 35). Kormanis resigned via an email sent March 4, 2018, to InoSpine's sole member which stated only "[P]lease allow this correspondence to serve as my resignation effective 03/03/2018. Thank you for the opportunity to be apart [sic] of the team." (**Id.**; D.E. 1, Compl. ¶ 36). Similarly, Jones resigned via a March 6, 2018, email which stated:

> Jarrett,
>
> I appreciate the opportunity to work for you over the years. However, I have decided to move on. Please consider this my letter of resignation.

---

[2] Kormanis' Territory under his Employment Agreement consisted of four North Carolina counties: Guilford, Forsyth, Stokes, and Rockingham. (**Exhibit 1**, at ¶ 3; D.E. 1, p. 40, Compl. Ex. B).

726289.3/020180373

4

> For any financial or contractual issues please contact Karen Wolter (cc'd).
>
> Many Thanks,
>
> Mike

(**Id.**; D.E. 1, Compl. ¶ 37).

NuVasive recently learned that Jones began violating his contractual non-competition obligations well before he terminated his Independent Contractor Agreement by selling competitive products manufactured and/or marketed by NuTech Medical (the "Competitive Biologic Products"). (**Id.**; D.E. 1, Compl. ¶¶ 31-33). Jones' sale of the Competitive Biologic Products within his InoSpine Territory violates Section 8(A)(1) of his Independent Contractor Agreement, and NuVasive understands that Jones continues to sell the Competitive Biologic Products, among other competitive products, within his former InoSpine Territory in violation of his restrictive covenants. (**Id.**; D.E. 1, Compl. ¶ 34).

Similarly, Kormanis, in direct violation of his Employment Agreement, is promoting and selling products manufactured by Alphatec Spine, Inc. ("Alphatec"), one of NuVasive's direct competitors, within his former InoSpine Territory. (**Id.**; D.E. 1, Compl. ¶¶ 39-40, 42-45). In fact, Kormanis acknowledges – on his LinkedIn page – that he now promotes competitive products within his former InoSpine sales Territory. (**Id.**; D.E. 1, Compl. ¶ 40). And, one of NuVasive's former surgeon-customers within Kormanis' Territory – who now utilizes Alphatec products – recently represented to InoSpine that he had been aware of Kormanis' departure from InoSpine for some time, and that he felt obligated to "give Ken's stuff a try." (**Id.**; D.E. 1, Compl. ¶¶ 42-44).

726289.3/020180373

5

Case 1:18-cv-00282-CCE-LPA   Document 9   Filed 04/24/18   Page 5 of 14

## STANDARD FOR ISSUING A PRELIMINARY INJUNCTION

A preliminary injunction is "an extraordinary remedy . . . which is to be applied only in limited circumstances which clearly demanded it." *Stuart v. Huff*, 834 F. Supp. 2d 424, 427 (M.D.N.C. 2011) (omission in original) (quoting *Direx Isr., Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991)). The historic purpose of a preliminary injunction is "to protect the status quo and to prevent irreparable harm during the pendency of the litigation to preserve the court's ability in the end to render a meaningful judgment on the merits." *Id.* (quoting *Sun Microsystems, Inc. v. Microsoft Corp.*, 333 F.3d 517 526 (4th Cir. 2003)). In order to secure a preliminary injunction, movants must establish that:

1. they are likely to succeed on the merits of the litigation;
2. they are likely to suffer irreparable harm in the absence of preliminary relief;
3. the balance of equities tips in their favor; and
4. an injunction is in the public interest.

*Id.* (quoting *Winter v. Natural Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

## ARGUMENT

As this case's facts establish all four of these elements, the Court should preliminarily enjoin Jones and Kormanis from further violating their respective agreements with InoSpine. To date, and without limitation, Jones' and Kormanis' wrongful actions have caused NuVasive to: (a) lose sales of its biologic products to a competitor; and (b) lose at least one of its surgeon-customers to a competitor. Absent a preliminary injunction – and given that Defendants are admittedly disavowing their respective agreements – they will likely continue to improperly solicit NuVasive's surgeon-customers within their former InoSpine Territories, and cause NuVasive to incur further irreparable harm in the form of lost sales and lost customers.

## I. NuVasive is likely to succeed on the merits.

The first element – whether NuVasive is likely to succeed on the merits of its claim that Jones and Kormanis breached their restrictive covenants – is "far stricter" than merely "demonstrat[ing] only a grave or serious question for litigation," but does not require NuVasive to show a "certainty" of success." *Lab Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 456 (citing *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009); *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013)). As the facts demonstrate that Jones and Kormanis are violating valid and enforceable restrictive covenants, NuVasive meets its burden.

North Carolina courts enforce restrictive covenants that are: (a) in writing; (b) reasonable as to time and territory; (c) made part of the employment contract; (d) based on valuable consideration; and (e) not against public policy. *Lab Corp.*, 575 F.3d at 458 (citing *Young v. Mastrom, Inc.*, 392 S.E.2d 446, 448 (N.C. Ct. App. 1990)). As there is no dispute that Jones' and Kormanis' restrictive covenants are in writing and a part of their respective employment contracts, NuVasive addresses the remaining factors below.[3]

### A. The restrictive covenants are reasonable in time and territory.

The temporal and geographic restrictions in Jones' and Kormanis' restrictive covenants are reasonable. The temporal restrictions fall well within the range that North Carolina courts routinely hold to be reasonable, and the geographic limitations are limited to the customers and counties within their assigned sales territories.

As to the temporal restrictions, Jones' and Kormanis' restrictive covenants are for one and two years, respectively. These are well within the range that the North Carolina courts have

---

[3] NuVasive notes that it is of no consequence that Jones was an independent contractor (rather than an employee) of InoSpine as North Carolina courts hold restrictive covenants applicable to independent contractor relationships. *See Market Am., Inc. v. Christman-Orth*, 520 S.E.2d 570, 578 (N.C. App. 1999)

726289.3/020180373

deemed reasonable." *Superior Performers, Inc. v. Meaike*, No. 1:13CV1149, 2014 U.S. Dist. LEXIS 50302, at *31 (citing *Triangle Leasing Co. v. McMahon*, 393 S.E.2d 854, 857-58 (N.C. 1990) (two-year restriction period reasonable); *Kennedy v. Kennedy*, 584 S.E.2d 328, 333-34 (N.C. Ct. App. 2003) (three-year restriction period reasonable)).

North Carolina courts consider six (6) factors when determining whether the geographic scope of a restrictive covenant is reasonable: (a) the area, or scope of the restriction; (b) the area assigned to the employee; (c) the area where the employee actually worked or was subject to work; (d) the area in which the employer operated; (e) the nature of the business involved; and (f) the nature of the employee's duty and his knowledge of the employer's business operation. *Clyde Rudd & Assocs., Inc. v. Taylor*, 225 S.E.2d 602, 605 (N.C. Ct. App. 1976). "Where the alleged primary concern is the employee's knowledge of the customers, 'the territory should only be limited to areas in which the employee made contacts during the period of his employment.'" *Hartman*, 450 S.E.2d at 917 (quoting *Manpower of Guilford Cnty., Inc. v. Hedgecock*, 257 S.E.2d 109, 114-15 (N.C. Ct. App. 1979)).

Here, each of these factors weighs in favor of finding that the geographic restrictions in Jones' and Kormanis' restrictive covenants are reasonable. The first four factors are satisfied as their restrictive covenants are limited to their assigned sales territories. Indeed, while InoSpine serves as NuVasive's exclusive distributor for the entire state of North Carolina, Jones' and Kormanis' non-competition and non-solicitation obligations are limited to those counties and customers within their former InoSpine sales territories. Finally, the last two factors weigh in favor of a finding of reasonableness as the nature of NuVasive's business is highly competitive and sales representatives function as the "face" of their employer to its customers. (**Exhibit 1**, at ¶ 3; D.E. 1, Compl. ¶ 8; **Exhibit 2**, at ¶ 4).

### B. The restrictive covenants are supported by valuable consideration.

The facts also establish that the restrictive covenants are supported by valuable consideration as Jones' Independent Contractor Agreement and Kormanis' Employment Agreement contain recitals acknowledging the receipt and sufficiency of consideration, including without limitation, their relationships (be it as an independent contractor or an employee) with InoSpine, as support for the restrictive covenants. (**Exhibit 1**, at ¶ 3; D.E. 1, Compl. at Ex. A, § 13(A), Ex. B § 13(A)). *Precision Walls, Inc. v. Servie*, 568 S.E.2d 267, 272 (N.C. Ct. App. 2002) (new employment is sufficient consideration). Further, as additional consideration supporting Jones' restrictive covenants, InoSpine significantly reduced their geographic restrictions from those in the restrictive covenants that Novus assigned to InoSpine (and that were in place under Jones' independent contractor agreement with Novus) until he signed his Independent Contractor Agreement with InoSpine. (**Exhibit 1**, at ¶¶ 4-11).

### C. The restrictive covenants are not against public policy.

Finally, the restrictive covenants do not violate North Carolina's public policy as they are no wider in scope than necessary to protect InoSpine's (and NuVasive's) legitimate business interests. *Superior Performers*, 2014 U.S. Dist. LEXIS 50302, at *18 (citing *Med. Staffing Network, Inc. v. Ridgway*, 670 S.E.2d 321, 327 (N.C. Ct. App. 2009)). Indeed, Jones' and Kormanis' restrictive covenants are reasonably tailored to protect InoSpine's (and NuVasive's) legitimate business interests. *Id.* at *41.

Under North Carolina law, the "protection of customer relationships and goodwill against misappropriation by departing employees is well recognized as a legitimate protectable interest of the employer." *Id.* at *18, 41 (quoting *Kennedy*, 584 S.E.2d at 335)). "The greater the employee's opportunity to engage in personal contact with the employer's customer, the greater

726289.3/020180373

9

Case 1:18-cv-00282-CCE-LPA   Document 9   Filed 04/24/18   Page 9 of 14

the need for the employer to protect these customer relationships." *United Labs, Inc. v. Kyukendall*, 370 S.E.2d 375, 381 (N.C. 1988).

Here, InoSpine's (and NuVasive's) legitimate protectable interest is obvious. Their sales representatives – be they direct employees or exclusive sales agents – are their "face" to the surgeon-customers within their respective sales territories. (**Exhibit 2**, at ¶ 4). Since Jones' and Kormanis' non-solicitation and non-competition covenants are closely tailored to their former InoSpine sales territories, they are no broader than necessary to protect NuVasive's legitimate business interest, and, therefore, they are not against the public policy of North Carolina.

### II. NuVasive will suffer irreparable harm unless the injunction issues.

The facts also satisfy the second element of obtaining injunctive relief as Jones' and Kormanis' violations of their contractual non-solicitation and non-competition obligations caused and continue to cause NuVasive to suffer irreparable harm. Irreparable harm is present – and warrants a preliminary injunction – when monetary damages are difficult to ascertain or are inadequate. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551-52 (4th Cir. 1994). Under North Carolina law, "when the failure to grant preliminary relief creates a permanent loss of customers to a competitor or the loss of goodwill (or the likelihood of such losses), the irreparable injury prong is satisfied." *Lab Corp.*, 84 F. Supp. 3d at 463 (citing *Multi-Channel TV*, 22 F.3d at 552).

Here, as in *Lab Corp.*, the facts establish that NuVasive has lost at least some sales of its biologics and one surgeon-customer – who may never return – because of Kormanis' and Jones' actions. *Id.* Absent the issuance of a preliminary injunction, Jones and Kormanis will likely continue to solicit and convert the business of NuVasive's surgeon-customers to its competitors. Finally, both Jones and Kormanis expressly acknowledged that irreparable injury will result from

violations of, among others, the restrictive covenants in their respective Agreements.[4] (**Exhibit 1**, at ¶ 3; D.E. 1, p. 21, Compl. Ex. A, § 13; D.E. 1, p. 36, Compl. Ex. B, § 13). Therefore, irreparable harm exists in this matter warranting preliminary injunctive relief.

### III. The balance of equities tips in NuVasive's favor.

The third element – the balance of equities clearly weighs in NuVasive's favor. Once more, *Lab Corp.* is instructive in this regard as the issuance of a preliminary injunction will not prohibit Jones and Kormanis from gainful employment in North Carolina, but will simply enjoin them "from doing that which [they] promised not to do" in a handful of counties they agreed were off limits. 84 F. Supp. 3d at 464 (citing *Kuykendall*, 370 S.E.2d at 380). Indeed – other than refraining from competing and soliciting within their former InoSpine sales territories, they are free to compete with InoSpine and NuVasive provided that they do not disclose confidential and proprietary information while doing so.

### IV. Issuing the injunction is in the public interest.

Lastly, the issuance of a preliminary injunction will benefit the public interest. Jones' and Kormanis' restrictive covenants are not against the public policy of the state of North Carolina and under North Carolina law, "the enforcement of valid restrictive covenants is in the public interest." *Lab Corp.*, 84 F. Supp. 3d at 464 (citing *Kuykendall*, 370 S.E.2d at 380). Neither Jones nor Kormanis can identify any countervailing reason why the public interest would be better served by declining to enjoin them from violating their contractual obligations, and, therefore, this factor is satisfied and a preliminary injunction should issue.

---

[4] NuVasive acknowledges that while not determinative, district courts "give weight to parties' contractual statements regarding the nature of harm and attendant remedies that will arise as a result of a breach of contract." *Nat'l League of Junior Cotillions, Inc. v. Porter*, Case No. 3:06-cv-508-RJC, 2007 U.S. Dist. LEXIS 58117, at *10 n.9 (W.D.N.C. Aug. 9, 2007) (citing *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1259 (10th Cir. 2004)). Accordingly, these contractual provisions coupled with Jones' and Kormanis' conversion of NuVasive's customers easily satisfies this prong.

## CONCLUSION

NuVasive respectfully requests that the Court enter an Order preliminarily enjoining Jones and Kormanis from further violations of the contractual non-competition and non-solicitation obligations they owe to NuVasive and InoSpine. Further, NuVasive submits that minimal security is necessary in this matter as neither Jones nor Kormanis will sustain damages by being ordered to comply with their valid, non-solicitation and non-competition obligations.

Respectfully submitted,

**/s/ Paul A. Capua**
Paul A. Capua / N.C. State Bar No. 40239
CAPUA LAW FIRM, PA
164 South Depot Street
Boone, NC 28607
Telephone: (828) 264-0260
Fax: (828) 378-0236
pcapua@capualawfirm.com


**/s/ M. Thomas McFarland**
Christopher W. Cardwell, Esq. (Local Civil Rule 83.1 Counsel) (Tennessee Bar No. 19751)
M. Thomas McFarland, Esq. (Local Civil Rule 83.1 Counsel) (Tennessee Bar No. 033432)
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiff NuVasive*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that the foregoing Memorandum of law contains approximately 3,569 words, which is less than the total words permitted by Local Rule 7.3(d)(1). Counsel relies on the word count of the computer program used to prepare this document.

/s/ M. Thomas McFarland

# CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served via the methods indicated below. Parties may access this filing through the Court's electronic filing system. The party or parties served are as follows:

*Via U.S. Mail and personal service:*

| | |
|---|---|
| Michael Jones | Kenneth Kormanis |
| 20530 Bethelwood Lane | 5938 Bostonian Drive E. |
| Cornelius, NC 28031 | Greensboro, NC 27455 |

*Via email:*

| | |
|---|---|
| Jared E. Gardner / N.C. State Bar No. 28275 | Mathew E. Flatow / N.C. State Bar No. 35282 |
| Tyler B. Peacock / N.C. State Bar No. 48659 | SeiferFlatow, PLLC |
| 505 East Boulevard | 2391 Crescent Avenue |
| Charlotte, NC 28203 | Charlotte, NC 28207 |
| Telephone: (704) 335-0350 | Telephone: (704) 512-0606 |
| Facsimile: (704) 390-7029 | Mathew@seiferflatow.com |
| jared@gardnerskelton.com | |
| tyler@gardnerskelton.com | |

/s/ M. Thomas McFarland