# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

Civil Action No. 1:18-cv-00282

NUVASIVE, INC.                          )
                                        )
        Plaintiff,              )
                                        )
v.                                      )          **JUDGE EAGLES**
                                        )          **MAGISTRATE JUDGE AULD**
MICHAEL JONES, and KENNETH              )
KORMANIS,                               )
        Defendants.             )
_____ )

## DECLARATION OF JARRETT CLAY

Under penalty of perjury and pursuant to 28 U.S.C. Section 1746, Declarant, Jarrett Clay, M.D., states that:

      1.    My name is Jarrett Clay. I am above the age of 18 and am fully competent to give the testimony contained in this Declaration, all of which is based on my personal knowledge.

      2.    I am the sole member of InoSpine, LLC ("InoSpine"), which is an exclusive distributor of NuVasive's products.

      3.    I have read NuVasive's Complaint for Injunctive Relief and Damages. After reviewing that Complaint, I can and do verify the allegations contained in paragraphs 3-4, 7-9, 11-44,[1] 47-48, 51-52, 56-57, 61-62, and 66-67.

      4.    **Exhibit A** to this Declaration is the March 1, 2012, Independent Contractor Agreement (the "Novus Agreement") between Novus Technologies, Inc. ("Novus) and Quinn Michael, Inc. ("QMI"), which is solely owned by Defendant Michael Jones ("Jones").

---

[1] With regard to paragraph 39 in NuVasive's Complaint for Injunctive Relief and Damages, I verify that the referenced communication was a telephone call rather than a voicemail.

726859.1/020180373

**EXHIBIT**

**1**

5.     Sections 6, 7, and 8 of the Novus Agreement impose reasonable non-compete, non-solicit, and confidentiality restrictions on QMI and Jones. As evidenced on Exhibit A to the Novus Agreement, QMI's and Jones' non-compete territory include 23 counties in Western and Central North Carolina.

6.     Section 12 of the Novus Agreement provides that NuVasive is a third party beneficiary of the Novus Agreement.

7.     Section 17 of the Novus Agreement recognizes Novus' ability to assign its rights in the Novus Agreement, including, without limitation, the right to assign the rights granted in Sections 6, 7, and 8.

8.     In or around December 2013, Novus offered to sell and assign to InoSpine certain of its exclusive NuVasive territories including, among other territories, territories in Western and Central North Carolina in which QMI and Jones worked (the "Assigned Territories").

9.     Novus assigned its rights in the Novus Agreement to InoSpine in early 2014, when InoSpine purchased the Assigned Territories. A portion of this transaction is reflected in the January 29, 2014, Territory Transition Agreement (the "Transition Agreement"), which is attached to this Declaration as **Exhibit B**. Section 4 of the Transition Agreement notes the assignment of the Novus Agreement (and other agreements) to InoSpine.

10.     Section 5 of the Transition Agreement requires Novus to assist with an orderly transfer of its business to InoSpine, and requires Novus to allow InoSpine to hire its sales representatives, such as QMI and Jones.

11.     During the transition period, which occurred around January 2014, I explained to Jones and other Novus sales representatives in the Assigned Territories the conditions of the transition, such as that Novus would be assigning a portion of its territory to InoSpine, that Jones

Case 1:18-cv-00282-CCE-LPA   Document 9-1   Filed 04/24/18   Page 2 of 30

and the other representatives in the Assignment Territories would be working in a similar manner, in similar territories, and on similar terms as they worked for Novus, and that Jones and the others would be required to sign restrictive covenant agreements.

12. The sale was effectuated in late-January, early-February.

13. **Exhibit C** to this Declaration is the February 1, 2014, Independent Contractor Agreement between InoSpine, LLC and Michael Jones (the "InoSpine Agreement").

14. Like the Novus Agreement, the InoSpine Agreement imposes reasonable non-compete, non-solicitation, and confidentiality obligations on Jones. However, as shown on Schedule A to the InoSpine Agreement, due to the fact that the execution of the InoSpine Agreement terminated the Novus Agreement: (a) the InoSpine Agreement's non-compete provision reduced Jones' non-compete territory from 23 to 10 counties in North Carolina; and (b) the InoSpine Agreement's non-solicitation provision reduced Jones' non-solicit territory by removing Section 7(a)(iii)'s one year prohibition against soliciting "[A]ny person or entity about whom or which Contractor, through Jones, had access to or acquired confidential and/or proprietary information during the twelve-month period prior to the last day on which Contractor through Jones provided services to Novus."

15. InoSpine first paid commissions to Jones (through QMI) on February 28, 2014.

16. InoSpine's direct employees are typically subject to two year non-compete/non-solicit periods and its independent contractors are typically subject to one year restrictions.

Further, this Declarant sayeth not.

I declare under penalty of perjury the foregoing is true and correct.

Date: 4/27/2018          Jarrett Clay

# INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement") is made by and between Novus Technologies, Inc. ("Novus" or the "Company") and Quinn Michael, Inc. ("Contractor") on *March 1*, 2012.

## RECITALS

A.    Novus is engaged in the sale of orthopedic, neurosurgical, spinal and other medical products. Novus is appointed Independent Sales Representatives for NuVasive, Inc.

B.    Contractor will act for Novus in maintaining, improving, developing, and servicing Company's customers and referral sources, and both parties to the Agreement have recognized and do recognize that Contractor will be in a position of trust and confidence in which a high, fiduciary duty of loyalty on the part of Contractor to Novus is created.

C.    Michael Elliott Jones is the sole owner of Contractor and, as such, will receive substantial financial benefit as a result of this Agreement and will have access to proprietary and confidential information of Novus and to its customers.

D.    In providing such services to Novus, Contractor will have access to, and contact with, the confidential information of Novus, including information about NuVasive and its customers.

## AGREEMENT

In consideration of the compensation payable to Contractor as set forth on Exhibit A attached hereto and incorporated herein, as well as, Contractor's access to Novus's confidential information, and customers, and other good and valuable consideration, it is mutually agreed as follows:

1.    For purposes of this Agreement, the following terms will be defined as follows:

(a)    **"Confidential Information"** shall mean any valuable, confidential, and proprietary business, financial, technical, economic, sales, and/or other types of proprietary business information relating to Novus and/or NuVasive, in whatever form, whether oral, written or electronic, to which Contractor has, or is given (or has had or been given) access as a result of the performance of services for Novus. The Contractor and Novus agree that Confidential Information is confidential and proprietary to Novus because such Confidential Information encompasses technical know-how, trade secrets, or technical, financial, organizational, sales, or other valuable aspects of Novus's business and trade, including without limitation technologies, products, processes, plans, clients, personnel, operations and business activities.

(b)    **"Designated Consultant"** shall mean that employee of Contractor identified in Exhibit A hereto, and who will provide services to Novus. The individual to be named as the Designated Consultant on the execution of this Agreement shall be Michael Elliott



Jones ("Jones"). The Designated Consultant cannot be changed without the written consent of Novus, which consent may be withheld by Novus in its sole and absolute discretion.

(c)     Territory shall mean the cities, counties, and/or towns listed on Exhibit A attached hereto and made a part hereof. Contractor understands and agrees that Novus may, from time to time and upon 30-day written notice to Contractor, change the territory.

2.     Contractor acknowledges and agrees that:

(a)     Contractor shall provide to Novus, and Novus shall engage Contractor to provide the services, as set forth in Exhibit A, through Jones, under the terms and conditions contained herein. Contractor will invoice Novus for services performed in accordance with Exhibits A and B.

(b)     Contractor, through Jones will use its best efforts to perform the services as set forth on Exhibit A and otherwise agreed to between Contractor and Novus. In so doing, Contractor will be acting in pursuance of Contractor's own, independently established business or trade. Contractor expressly agrees that Jones shall not be an employee of Novus, nor shall Contractor and/or Jones receive such benefits as are ordinarily provided by Novus to its employees.

(c)     In the performance of its contractual duties, Contractor and Jones shall observe the general rules and regulations of Novus, including Novus's sales policies and procedures. Contractor and Jones further agree to complete all sales/service certification programs and/or training required by the manufacturers and/or distributors whose products and/or services will be sold and/or provided by Contractor, including NuVasive.

(d)     Novus acknowledges and agrees that Contractor has been retained in reliance upon Jones' particular skills, training and experience. Contractor and Jones acknowledge that Novus would not enter into this Agreement if Jones was not Contractor's Designated Consultant and that Jones will receive substantial financial benefit as a result of Novus entering into this Agreement, which is consideration for Jones' promises herein.

(e)     Contractor shall obtain any business license required by the laws of the jurisdictions where it does business.

3.     Throughout the performance of the contractual duties specified in Exhibit A, Contractor and Jones shall be free from the direction and control of Novus. Further, Contractor shall be free to determine the methods, means and work schedule of Contractor's performance but shall, at all times, remain accountable for the proper and timely completion of the contractual services specified herein and as may be further agreed upon from time to time. Novus will not reimburse Contractor for expenses incurred in the performance of Contractor's duties.

4.     Contractor and Jones hereby acknowledge and undertake a duty of good faith and fair dealing to Novus in the performance of this Agreement and Jones promise to devote their best efforts, experience and talents to the performance of the services required herein.

2

Contractor and Jones agree to give proper time and attention to furthering Novus's business and goodwill and further agree to refrain from taking advantage for it or himself or others, of any corporate opportunities of Novus.

5.    It is expressly understood that Contractor and Jones shall be free to engage in other business activities not prohibited by Sections 6 and 7 of this Agreement during the performance of this Agreement. Any activities that may be subject to Sections 6 and 7 must be consented to in writing by Novus, which consent may be withdrawn at any time that Novus believes, in its sole discretion, that it is necessary to do so. It is further agreed that since Contractor has been retained because of Contractor's and Jones' particular skills, expertise training, experience and relationship with Novus, neither Contractor nor Jones shall sub-contract, assign or delegate the duties or services set forth in this Agreement without Novus's prior written consent.

6.    Contractor acknowledges that during the time Contractor and Jones provide services to Novus, it and he will acquire Confidential Information about Novus's business, including but not limited to, its customers, manufacturers, suppliers, and other proprietary, confidential information and/or that Contractor may be responsible for contacting and developing relationships with NuVasive's customers. In order to protect Novus's critical interest in these relationships and information, Contractor and Jones covenant and agree as follows:

   (a)    That during the term of this Agreement and, for a period of twelve (12) months following the last day on which Contractor through Jones provides services to Novus, Contractor and/or Jones will not compete with Novus in the Territory by, in a competitive capacity:

      (i)    Selling, providing, and/or promoting products and/or services that compete with the products and/or services that Contractor through Jones provided, promoted, and/or sold on behalf of Novus during the twelve-month period prior to the last day on which Contractor and/or Jones provided services to Novus;

      (ii)    Providing competing services directly to or on behalf of NuVasive or by being employed or engaged for compensation in a competitive capacity by NuVasive, Inc.

   (b)    If any provision of this Section 6 relating to the time period, geographic area or scope of the restrictive covenants shall be declared by a court of competent jurisdiction to exceed the maximum time period, geographic area or scope, as applicable, that such court deems reasonable and enforceable, said time period, geographic area or scope shall be deemed to be, and thereafter shall become, the maximum time period, scope or largest geographic area that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

7.    In addition to the covenant not to compete set forth in Section 6 of this Agreement, Contractor and Jones, further covenant and agree as follows:

3

(a)     Contractor and Jones agree that for a period of twelve (12) months following the last day on which Contractor through Jones provides services to Novus, Contractor and/or Jones will not compete with Novus by, in a competitive capacity, soliciting or accepting business competitive to Novus from, or providing competing services and/or products to:

(i)     Any person or entity from whom or which Contractor through Jones solicited and/or accepted business on behalf of Novus or to whom or which Contractor through Jones provided products and/or services on behalf of Novus during the one-year period prior to the last day on which Contractor through Jones provided services to Novus;

(ii)     Any person or entity from whom or which Contractor, through Jones, solicited business on behalf of Novus during the three month period immediately prior to the last day on which Contractor through Jones provided services to Novus; or

(iii)     Any person or entity about whom or which Contractor, through Jones, had access to or acquired confidential and/or proprietary information during the twelve-month period prior to the last day on which Contractor through Jones provided services to Novus.

(b)     If any provision of this Section 7 relating to the time period or scope of the restrictive covenants shall be declared by a court of competent jurisdiction to exceed the maximum time period or scope, as applicable, that such court deems reasonable and enforceable, said time period or scope shall be deemed to be, and thereafter shall become, the maximum time period or greatest scope that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

8.     (a)     Contractor and Jones agree to hold in strict confidence and safeguard any information of or about Novus gained by Contractor and/or Jones in any manner or from any source during and through the course of time that Contractor and/or Jones provide services to Novus. Contractor shall not, without the prior written consent of Novus, misappropriate, disclose, use or make available to anyone for use outside Novus's organization at any time, either during the time Contractor and/or Jones provide services to Novus or subsequent to the last date on which Contractor provides services to Novus, any information, data, trade secrets and/or proprietary information, in whatever form, whether oral, written or electronic, about Novus, its customers or NuVasive, whether or not such information was developed by Contractor and/or Jones, except Novus as required in the performance of Contractor's duties for Novus.

(b)     Contractor and Jones understand and agree that any information, data and/or trade secrets about Novus or its respective customers is the property of Novus and is essential to the protection of their goodwill and to the maintenance of Novus's competitive position and accordingly should be kept secret. In any case where doubt arises, Contractor shall obtain written permission from Novus before using or divulging the information in question.

4

(c)     Contractor agrees to take all actions reasonably necessary to prevent unauthorized disclosure of the Confidential Information by its principals, employees, independent contractors and/or agents, including Jones.

9.     Contractor and Jones agree that during the time that Contractor and/or Jones provide services to Novus and for a period of one year following the last day on which Contractor through Jones provides such services, Contractor and/or Jones shall not, directly or indirectly, solicit or induce, or attempt to solicit or induce, any employee, independent contractor, and/or designated consultant to stop providing services to Novus for any reason whatsoever or contract with or assist in contracting with any individual who was an Independent Contractor or designated consultant of Novus within the 6-month period prior to the last day that Contractor through Jones provided services to Novus for purposes of having such individual provide the same or similar products and/or services that such individual sold and/or provided for Novus.

10.     (a)     Contractor and Jones acknowledge that the remedies at law for any breach of the restrictive covenants contained in Paragraphs 6, 7, 8, and 9 of this Agreement will be inadequate and that Novus shall be entitled to injunctive relief against Contractor and/or Jones in addition to any other remedy and damages available.  Contractor and Jones acknowledge that the restrictions contained herein are reasonable and not unduly harsh upon them, but agree that if a court holds such restrictions unreasonable as to time, activities, or otherwise, such restrictions shall be deemed to be reduced to the extent necessary in the opinion of such court to make them reasonable.

(b)     Contractor and Jones agree that the non-competition obligation contained herein shall be extended by the length of time which Contractor and/or Jones shall have been in breach of said provision.  Contractor recognize that the time period included in the restrictive covenants contained herein shall begin on the date a court enters an order enjoining him or them from violating such provision unless good cause can be shown as to why the period described should not begin at that time.

11.     The restrictive covenants of Contractor and Jones are of the essence of this Agreement; they shall be construed as independent of any other provision in this Agreement and the existence of any claim or cause of action of Contractor and/or Jones against Novus, whether predicated on this Agreement or not, shall not constitute defense to enforcement by Novus of the restrictive covenants herein.

12.     The parties understand and agree that Novus is a distributor of products manufactured and/or marketed by NuVasive, Inc. and that NuVasive, Inc. has a substantial legitimate business interest in protecting its customer, employment, and other business relationships.  The parties further understand and agree that NuVasive, Inc., and its successors and assigns, are intended to be and hereby are third-party beneficiaries of this Agreement with full contractual and other rights to directly enforce the provisions set forth in Sections 6, 7, 8, and 9 herein.

12.     In any action brought by Novus to enforce any term of this Agreement, Contractor and/or Jones shall pay, indemnify, and hold Novus harmless against all costs and expenses (including any reasonable attorneys' fees) incurred by Novus with respect to such action.

13.     Nothing in this Agreement is intended to, or hereby does, create the relationship of employer/employee between Novus and Contractor or Jones. Contractor shall:

(a)     Comply with, and be responsible for any and all income, payroll, unemployment and other taxes of Jones, none of which shall be the responsibility of Novus;

(b)     Not be covered, nor will its Jones, by workers' compensation, unemployment compensation or any policy of insurance maintained by Novus;

(c)     Be responsible to provide at Contractor's expense, Contractor's own office supplies, equipment and employees in the performance of this Agreement; and

(d)     Indemnify Novus from and against all claims, damages, losses and expense relating to any obligation imposed by law on Novus to pay any income, social security, Medicare, unemployment, and other taxes in connection with compensation paid to Contractor and/or its Designated Consultant.

14.     This Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision hereof shall be prohibited or invalid under any such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating or nullifying the remainder of such provision or any other provisions of this Agreement. If any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, such provision shall be construed by limiting and reducing it so as to be enforceable to the maximum extent permitted by applicable law.

15.     No amendment or waiver of this Agreement or any provision hereof shall be binding upon the party against whom enforcement of such amendment or waiver is sought unless it is made in writing and signed by or on behalf of such party. The waiver by any party of a breach of any provision of this Agreement by the other party shall not operate and be construed as a waiver or a continuing waiver by that party of the same or any subsequent breach of any provision of this Agreement by any other party.

16.     (a)     Novus shall have no right to and shall not attempt to direct, discipline, or discharge Jones or other employees of Contractor. Any communication regarding unsatisfactory performance of contract duties shall be made only to Contractor.

(b)     This Agreement may be terminated by any party hereto upon thirty (30) days advance written notice of such termination.

(c)     If at any time Jones shall cease to be principal of Contractor holding a majority interest in the ownership of Contractor, Novus shall have the sole and absolute

6

discretion to immediately terminate this Agreement, and Novus shall have no obligation to pay any further amounts to Contractor after the date thereof under this Agreement.

        (d)     This Agreement may be terminated immediately by Novus for "cause." Cause shall include: (i) Contractor's or Jones' material breach of this Agreement; (ii) Contractor or Jones' gross negligence in the performance of Services for Novus or intentional nonperformance or mis-performance of such services; (iii) willful dishonesty, fraud, or misconduct by Contractor and/or Jones with respect to the business or affairs of Novus and that in the reasonable judgment of Novus materially and adversely affects the operations or reputation of Novus; (iv) conviction of Jones of a felony or other crime involving moral turpitude; (v) the failure of Jones to complete any sales certification required by NuVasive or any other manufacturer within the limits established by Novus; (vi) refusal by any customers and/or service or product recipients of Novus to work with Jones; or (vii) Jones loss of hospital privileges.

      17.     The obligations of Contractor and Jones under Paragraphs 6, 7, 8, and 9 of this Agreement shall continue after the last day on which Contractor through Jones provides services to Novus and shall be binding on Contractor's and/or Jones, heirs, executors, legal representatives and assigns. Such obligations shall inure to the benefit of any successors or assigns of Novus. Contractor specifically acknowledges that in the event of a sale of all or substantially all of the assets or stock of Novus, or any other event or transaction resulting in a change of ownership or control of Novus's business, the rights and obligations of the parties hereunder shall inure to the benefit of any transferee, purchaser, or future owner of Novus's business. This Agreement may be assigned only by Novus.

      18.     This Agreement shall be governed by and construed under the laws of the State of North Carolina and constitutes the final and entire agreement of the parties with respect to the matters covered hereby and replaces and supersedes all other agreements and understandings relating hereto.

      19.     Contractor and Jones hereby irrevocably submits to the jurisdiction of the Federal or State courts in Wake County, North Carolina, in any action or proceeding arising out of, or relating to, this Agreement, and Contractor and Jones hereby irrevocably agrees that all claims in respect of any such action or proceeding shall be heard and determined in such Court. Contractor agrees that a final judgment in any action or proceeding shall, to the extent permitted by applicable law, be conclusive and may be enforced in other jurisdictions by suit on the judgment, or in any other manner provided by applicable law related to the enforcement of judgments.

      20.     This Agreement may be executed in any number of counterparts, and with counterpart signature pages, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

      IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the date first above written.

Case 1:18-cv-00282-CCE-LPA   Document 9-1   Filed 04/24/18   Page 10 of 30

CONTRACTOR

_2/21/12_
Date

By _(signature)_

DESIGNATED CONSULTANT

Print Name: _MICHAEL E. JONES_

11546247_3.DOC

NOVUS TECHNOLOGIES, INC.

_2/21/12_
Date

By _(signature)_
Mike T. Malloy
Novus Technologies, Inc.

8

# EXHIBIT A

Designated Consultant:    Michael Elliott Jones

Territory:

Davidson                    Gaston
Mecklenburg                 Cleveland
Union                       Burke
Anson                       Caldwell
Stanley                     Wilkes
Cabarrus                    Hatwood
Rowan                       Buncombe
Davie                       Henderson
Iredell                     McDowell
Alexander                   Rutherford
Catawba                     Watauga
Lincoln

Contractual Duties:

Commissions:  As compensation for the services rendered by Contractor during the term of this Agreement, Novus shall pay Contractor, within _30_ days of receipt of an invoice from Contractor compensation based on Novus' commission policy in effect at such time. Such commission will be paid to Contractor in accordance with Novus' normal compensation practices. Notwithstanding the foregoing, during the first twelve (12) months that Contractor provides services to Novus, unless this Agreement is sooner terminated pursuant to Section 16 of this Agreement or Contractor and Novus agree that Contractor will be paid on a strict commission basis prior to the completion of the first twelve (12) months, Contractor will receive a monthly guaranteed compensation of $58,333. *(For example, if Contractor invoices $50,000 in commissions in the first month of this Agreement, Novus will pay Contractor an additional $8,333 for a one month total of $58,333. However, following the first twelve (12) months of this Agreement, if Contractor invoices $50,000 in commissions in one month, Contractor's compensation will total $50,000 for such month.)*

The agreed-upon terms listed on this Exhibit may be modified by Novus, Inc. with thirty (30) days prior written notice to Contractor.

9

# Territory Transition Agreement

This Territory Transition Agreement (the "**Transition Agreement**"), is entered into as of January 29, 2014 and effective as of December 31, 2013 (the "**Effective Date**"), by and between Novus Technologies, Inc., a Virginia corporation with a principal place of business at 600 Bowden Road, Chapel Hill, North Carolina 27516 (on behalf of itself, its affiliated entities and its employees, officers, agents and representatives, "**Distributor**") and NuVasive, Inc., a Delaware corporation with principal offices at 7475 Lusk Boulevard, San Diego, California 92121 ("**NuVasive**"). Distributor and NuVasive are referred to herein individually as a "**Party**" and collectively as the "**Parties**".

**WHEREAS**, the Parties have entered into that certain Exclusive Sales Representative Agreement dated January 1, 2011, as amended (the "**Prior Sales Agreement**"); and

**WHEREAS**, the Parties wish to enter into a new Exclusive Sales Representative Agreement effective as of January 1, 2014 (the "**New Sales Agreement**") and simultaneously reduce the Territory (as defined in the Prior Sales Agreement) in certain respects pursuant to this Transition Agreement.

**NOW, THEREFORE**, in consideration of good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each of the Parties hereto, NuVasive and Distributor agree as follows.

1. **Definitions:** Capitalized terms not otherwise defined in this Transition Agreement shall have the meanings given to them in the Prior Sales Agreement.

2. **Territory Reduction:** Upon the Effective Date, Distributor shall (i) cease to employ the individuals listed on <u>Schedule A</u> (the "**Reduced Sales Representatives**") and (ii) transition the business conducted by Distributor in the territory set forth on <u>Schedule B</u> (the "**Reduced Territory**") to Inospine, LLC, a distributor of NuVasive ("**Inospine**" ), effective January 1, 2014.

3. **Termination and Release:** The Parties agree that, as of the Effective Date, "Exhibit B, Territory" set forth in the Prior Sales Agreement, shall be amended and restated as set forth on <u>Schedule C</u> attached hereto and will also be attached as Exhibit B to the New Sales Agreement. Additionally, Distributor (for itself and all affiliated persons and entities) fully and forever releases and discharges NuVasive with respect to any and all claims, liabilities and causes of action, of every nature (known or unknown), which have arisen, occurred or existed at any time prior to the Effective Date relating to the Reduced Territory. The release made by Distributor herein shall not apply to any third-party claims, liabilities, or causes of action and Distributor expressly waives any and all rights and benefits conferred by Section 1542 of the Civil Code of the State of California, which states as follows:

   "**A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**"

4. **Assignment:** Distributor hereby assigns all Compliance Agreements for the Reduced Sales Representatives listed on <u>Schedule A</u> hereto to Inospine.

5. **Transition Activities:** Distributor agrees that from the Effective Date through March 1, 2014, it will provide all reasonable assistance to NuVasive with respect to (and will not directly or indirectly interfere with) the transition of the Reduced Territory to NuVasive's chosen representatives. Specifically, Distributor agrees to share with NuVasive all information reasonably necessary for a smooth transition of the Reduced Territory, including (without limitation) surgery schedules, contact persons at the various accounts, product inventories, order histories and plans, etc. During the Payment Period (as defined below), Distributor also agrees that it will not attempt to convince any such doctors or hospitals to cease using NuVasive products and will allow Inospine to hire the Reduced Sales

1.



EXHIBIT

B

Representatives, and any of its other current or former employees assigned to the Reduced Territory (including the Reduced Sales Representatives, the "*Employees*"). Distributor agrees to provide NuVasive with any applicable current and historical compensation information for the Employees, including their respective terms of employment and standing. Distributor hereby releases (i) the Employees from any agreements (employment or otherwise) that restrict such individuals from being lawfully employed by Inospine in the capacity contemplated by NuVasive and (ii) Inospine from any claims, liabilities and causes of action, of every nature, relating to or arising from Inospine hiring of the Employees.

6. **Compensation:**

    (a) Distributor will be paid 3.3% on Net Sales of Products made in the Reduced Territory, regardless of whether Distributor procured orders for such Net Sales of Products, from January 1, 2014 through December 31, 2016 (the "*Payment Period*"); provided that, Distributor adequately performs the transition activities set forth in Section 5.

    (b) In the event that NuVasive undergoes a Change of Control (as defined in the New Sales Agreement), Distributor shall be entitled to the Accelerated Payment promptly following the closing of the Change of Control; provided, that Distributor is not in breach of a material provision of the New Sales Agreement or this Transition Agreement. The "*Accelerated Payment*" shall be equal to $1,503,674 less all payments previously made to Distributor under Section 6(a) during the Payment Period. For example, if NuVasive undergoes a Change of Control on January 1, 2015 and Distributor has been paid $500,000 as of such date pursuant to Section 6(a), the Accelerated Payment shall equal 1,003,674.

7. **Miscellaneous:** This Transition Agreement is effective as of the Effective Date and shall be governed, construed and enforced in all respects solely and exclusively under the laws of the State of California, without giving effect to any law which would result in the application of a different body of law. Any and all suits hereunder shall be brought and resolved solely and exclusively in, and the Parties hereby irrevocably consent to the exclusive jurisdiction and proper venue of, the state and federal courts located in the County of San Diego, State of California, and waive any objections thereto based on any ground including improper venue or Forum Non-Conveniens.

8. **Third-Party Beneficiary:** This Transition Agreement confers rights and remedies upon Inospine as set forth herein and Inospine is an intended third-party beneficiary of this Transition Agreement.

9. Except as expressly modified herein, the terms of the Prior Sales Agreement and the New Sales Agreement will remain in full force and effect. For the avoidance of doubt, Distributor is not in Poor Standing under the New Sales Agreement as of the Effective Date of this Transition Agreement.

*[Signature page to follow]*

2.

This Transition Agreement is entered into and binding upon the Parties as of the Effective Date:

**NuVasive, Inc.**                                  **Novus Technologies, Inc.**

By: _____                By: _____

Name: Matt Link                                     Name: Michael Malloy

Title: Executive Vice President, U.S. Sales    Title: President

*[Signature Page to Territory Transition Agreement]*

## Schedule A

**Reduced Sales Representatives**

- Mike Jones
- Todd Alessi
- Ian Custer
- Natasha McCray
- Matt Palmer (SA)
- Jimmy West (SA)
- Alissa Beaudway (SA)

A-1.

## SCHEDULE B

### Reduced Territory

**The following shall constitute the Reduced Territory:**

The State of West Virginia excluding the cities of Morgantown and Wheeling and the counties of Greenbrier and Berkeley.

The following Counties in the State of North Carolina:

| | | |
|---|---|---|
| Alexander | Gaston | Randolph |
| Alleghany | Graham | Richmond |
| Anson | Guilford | Rockingham |
| Ashe | Haywood | Rowan |
| Avery | Henderson | Rutherford |
| Buncombe | Iredell | Scotland |
| Burke | Jackson | Stanly |
| Cabarrus | Lincoln | Stokes |
| Caldwell | Macon | Surry |
| Catawba | Madison | Swain |
| Cherokee | Mcdowell | Transylvania |
| Clay | Mecklenburg | Union |
| Cleveland | Mitchell | Watauga |
| Davidson | Montgomery | Wilkes |
| Davie | Moore | Yadkin |
| Forsyth | Polk | Yancey |

B-1.

## SCHEDULE C

The content of this Schedule C is incorporated by reference into and completely amends and restates the content set forth in Exhibit B to the Prior Sales Agreement and shall be attached as Exhibit B to the New Sales Agreement.

"EXHIBIT B
TERRITORY

This Exhibit is incorporated by reference into and made a part of the Exclusive Sales Representative Agreement (the "Agreement") between the Company and Representative (as defined in the Agreement). Any capitalized terms not defined in this Exhibit shall have the meaning set forth in the Agreement. Should a conflict arise between this Exhibit and the Agreement, the provisions of this Exhibit shall control.

**Territory:**

The following counties within the State of North Carolina:

| | | | | |
|---|---|---|---|---|
| Alamance | Craven | Halifax | New Hanover | Sampson |
| Beaufort | Cumberland | Harnett | Northampton | Tyrrell |
| Bertie | Currituck | Hertford | Onslow | Vance |
| Bladen | Dare | Hoke | Orange | Wake |
| Brunswick | Duplin | Hyde | Pamlico | Warren |
| Camden | Durham | Johnston | Pasquotank | Washington |
| Carteret | Edgecombe | Jones | Pender | Wayne |
| Caswell | Franklin | Lee | Perquimans | Wilson |
| Chatham | Gates | Lenoir | Person | |
| Chowan | Granville | Martin | Pitt | |
| Columbus | Greene | Nash | Robeson | |

Within the State of Virginia the following Counties: James City County, York County and the Isle of Wight County

Within the State of Virginia the following Cities: Hampton, Newport News, Poquoson, Williamsburg, Chesapeake, Norfolk, Portsmouth, Suffolk and Virginia Beach"

C-1.

# INDEPENDENT CONTRACTOR AGREEMENT

This Independent Contractor Agreement ("Agreement"), is entered into this 1 day of February, 2014 by and between inoSpine, LLC A North Carolina Limited Liability Company authorized to do business, and doing business, in North Carolina ("Employer"); and Michael Jones, an Independent Sales Contractor doing business in North Carolina ("Contractor").

WHEREAS, Employer is engaged in the sale of orthopedic, neurosurgical, spinal and other medical products; and

WHEREAS, Contractor will act for Employer in maintaining, improving, developing, and servicing Employer's vendors, customers and referral sources, and both parties to the Agreement have recognized and do recognize that Contractor will be employed in a position of trust and confidence in which a high, fiduciary duty of loyalty on the part of Contractor to Employer is created; and

WHEREAS, it is anticipated that, in the performance of his duties, Contractor will come in contact with Employer's customers, referral sources, vendors and certain proprietary and confidential information which has significant economic value, is not readily available to the public, which is of great importance to Employer in dealing with its clientele, and which is carefully protected by Employer as secret and confidential information.

WHEREAS, Employer wishes to hire Contractor, and Contractor wishes to perform servies for Employer, upon and subject to the terms and conditions set forth herein; and

NOW, THEREFORE, in consideration of the Employer's employment of Contractor (which includes compensation paid for services performed in the course of such employment), and Contractor's access to Employer's confidential information and customers, along with other good and valuable consideration, the receipt and sufficiency of which each party acknowledges, the parties agree as follows:

1. **Employment.**

    A.    <u>Employment/Territory</u>.  Employer hereby agrees to hire Contractor "at will," and Contractor hereby accepts employment with Employer, to engage in the sale of orthopedic, spinal and other medical products for and on behalf of Employer, in the cities and/or counties listed on <u>Schedule A</u> (as it may be amended from time to time by Employer with thirty (30) days' notice to Contractor) attached hereto and incorporated by reference herein ("Contractor's Territory").  Contractor agrees to devote all necessary professional time, skill labor and attention to the sale of the aforementioned products in Contractor's Territory, together with such administrative and other duties as Employer may require (reasonable periods of illness excepted).  Contractor further agrees that in all such aspects of such work, Contractor shall comply with the policies, standards, regulations of the Employer from time to time established, and shall perform the duties assigned faithfully, intelligently, to the best of his/her/ability, and in the best interest of the Employer.

    B.    <u>Contractor Warranties</u>.  As a condition of Employer's willingness to employ Contractor, Contractor represents and warrants to Employer:



(1)    That accepting employment or continuing employment with Employer shall not breach any contract or violate any covenant or other duty between Contractor and any third party;

(2)    That there are no pending or threatened claims of breach of contract against Contractor and, to the best of Contractor's knowledge, no events or conduct that may give rise to such a claim;

(3)    That Contractor is familiar with, and will comply with all applicable federal, state and local laws, regulations and ordinances, including, without limitation, (a) the Social Security Act; (b) HIPAA, (c) all federal and state health care anti-fraud, anti-kickback and abuse laws; and (d) all rules and regulations of the FDA and the Center for Medicare and Medicaid Services (CMS). Without limiting the generality of the foregoing, except to the extent allowed by applicable law, Contractor will make no offer, payment or other inducement, whether directly or indirectly, to induce the referral of business, the purchase, lease or order of any item or service, or the recommending of the purchase, lease or order of any item or service. Contractor will comply with all operating and compliance policies of Employer and Employer's manufacturers and suppliers (including but not limited to the Code of Conduct, Code of Ethics, and Insider Trading Policy of NuVasive, Inc., copies of which have been provided to Contractor), as such policies may be updated from time to time;

(4)    That Contractor's performance under this Agreement and the terms of Contractor's employment with Employer does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by Contractor in confidence or in trust prior to Contractor's employment with Employer, and Contractor agrees not to disclose to Employer or NuVasive, Inc. any confidential or proprietary information or material belonging to any previous employers or other entities to whom Contractor has provided services; and.

(5)    That Contractor does not currently represent or promote, directly or indirectly, within a fifty (50) mile radius of the city or county limits of any city or county in which Contractor expects to perform sales duties on behalf of Employer, any products (i) that are competitive with products sold by Employer or (ii) for use in spine surgery that are not marketed, promoted or sold by NuVasive, Inc.

C.    <u>Indemnification</u>. If any third party asserts or threatens to assert a claim against Employer which, if true, would render any of the foregoing representations false or would establish that Contractor has breached any of the foregoing warranties, Contractor shall immediately defend, indemnify and hold harmless Employer from and against any and all such claims including, without limitation, all costs, damages, and expenses, including attorneys' fees, related thereto and, upon written demand by Employer, shall defend Employer against all such claims at Contractor's sole expense.

D.    <u>Duties</u>. Contractor's duties shall include, without limitation, promoting and selling products offered by Employer, including sales support functions, providing services to healthcare providers to whom such products are sold, and such other duties as may be assigned by Employer from time-to-time.

2

E.  Exclusivity. During the term of this Agreement, Contractor shall not be employed by or serve as an independent contractor to any other person or entity without the prior written approval of Employer, to ensure that said employment will not negatively impact Employer's business interest and reputation.

2.  **Term**. The term of Contractor's employment under this Agreement shall begin the 1 day of February, 2014, and shall continue thereafter, unless terminated as provided in Paragraph 6. herein.

3.  **Compensation and Expenses**. As compensation while employed hereunder, Contractor shall be entitled to compensation from Employer as set forth in Schedule B, attached hereto and made a part hereof. Such compensation may be changed from time to time as provided for on Schedule B. Contractor will also be reimbursed for all properly documented necessary and reasonable business expenses, as determined by Employer, incurred by him in connection with his services here under. However, compensation paid pursuant to this Agreement shall not be subject to the customary withholding of income taxes and other employment taxes. Contractor shall be solely responsible for reporting and paying any such taxes. Employer shall not provide Contractor with any coverage or participation in the Employer's accident and health insurance, life insurance, disability income insurance, medical expense reimbursement, wage continuation plans, or other fringe benefits provided to regular employees.

4.  **Independent Contractor Status.** Contractor acknowledges that he/she is an independent contractor and is not an agent, partner, joint venturer nor employee of Employer. Contractor shall have no authority to bind or otherwise obligate Employer in any manner nor shall Contractor represent to anyone that he/she has a right to do so. Contractor further agrees that in the event Employer suffers any loss or damage as a result of a violation of this provision, Contractor shall indemnify and hold harmless the Employer from any such loss or damage.

5.  **Assignment.** Contractor shall not assign any of his/her rights under this Agreement or delegate the performance of any of his/her duties hereunder, without the prior written consent of the Employer.

6.  **Termination.**

A.  Notwithstanding the Term of this Agreement, this Agreement shall be deemed to be terminated and the business relationship between Contractor and Employer shall be deemed severed upon the occurrence of either of the following:

(1)  Termination Without Cause Either Contractor or Employer may terminate Contractor's employment hereunder at any time, without cause, by giving the other party not less than thirty (30) days prior written notice of such termination. Employer reserves the right to require Contractor not to work during the notice period. However, if Employer has terminated Contractor's employment by giving thirty (30) days' notice pursuant to this subpart 6A(1), Employer shall be obligated to pay Contractor a pro rata part of one half (1/12) of the average commission earned by Contractor over the twelve-month period preceding the last day

3

of Contractor's employment for any part of the notice period not worked by Contractor and any commissions or incentive bonuses earned as of the last day of employment.

(2) <u>Termination With Cause</u>. Employer shall have the right to terminate Contractor's employment hereunder at any time with "Cause" (as defined herein) upon written notice to Contractor to such effect, with such termination effective immediately upon delivery of such notice to Contractor. For purposes of this Agreement, "Cause" shall mean: (i) fraud or material misappropriation by Contractor with respect to the business or assets of Employer; (ii) Contractor's continued non-performance of Contractor's duties after having received notice from Employer specifying the act or acts alleged to constitute the non-performance; (iii) Contractor's gross negligence or recklessness; (iv) conduct that constitutes disloyalty to Employer, or that materially harms or has the potential to cause material harm to Employer; (v) the conviction of Contractor of a felony or of any crime involving moral turpitude under state or federal law; (vi) the use, possession or sale of illegal drugs or controlled substances by Contractor; (vii) a breach by Contractor of Contractor's representations, warranties, or obligations under <u>Paragraphs 1B, 7, 8, or 9</u> of this Agreement; or (viii) a determination by Employer that Contractor acted in a discriminatory or retaliatory manner toward any employee or other independent contractor of Employers, or that Contractor has violated Employer's harassment policy, or committed any employment-related tort.

B. <u>Payment of Commissions Due</u>. Upon the termination of Contractor's employment and this Agreement pursuant to <u>Paragraph 6.A.</u>, above, Contractor shall be entitled to receive Contractor's commissions earned through the last day of Contractor's employment, payable in full within forty-five (45) days after the last day of Contractor's employment. Employer shall have no further liability to Contractor except as specifically outlined in this Agreement.

C. <u>Survival of Terms</u>. Notwithstanding the termination of Contractor's employment and this Agreement, Employer shall have the right to enforce all terms and conditions in this Agreement, including but not limited to <u>Paragraph 7 (Employer's Records), Paragraph 8 (Non-Competition), Paragraph 9 (Non-Solicitation), Paragraph 10 (NuVasive, Inc.), Paragraph 11(Confidential Information Disclosure Prohibition), Paragraph 12 (Handling of Confidential Information) and Paragraph 13 (Injunctive Relief)</u>, which terms and conditions shall survive the termination of this Agreement and Contractor's employment hereunder and shall remain in full force and effect; furthermore, the parties shall be required to carry out any provisions of this Agreement which contemplate performance by them subsequent to such termination.

7. **Employer's Records**. Contractor understands and agrees that all records, materials and information relating to Employer's business, whether in possession of Employer or Contractor, are the exclusive property of Employer. Upon the last day of Contractor's employment, Contractor shall immediately and without demand return to Employer all such records, materials and information, and all copies thereof, in whatever form, in Contractor's possession and immediately thereafter Contractor shall have no further right of access to or any right to obtain any of such records and materials or copies thereof, or any information contained therein, except as may be required by law and then only at the sole cost and expense of Contractor.

4

8. **Non-Competition**. Contractor acknowledges that during Contractor's employment Contractor will acquire confidential information about Employer's business, including but not limited to, its customers, manufacturers, suppliers and other proprietary, confidential information and/or that Contractor may be responsible for contacting and developing relationships with Employer's customers. In order to protect Employer's critical interest in these relationships and information, Contractor covenants and agrees as follows:

A. During the term of this Agreement and for a period of one (1) year following Contractor's last day of employment, Contractor will not compete with Employer in Contractor's Territory, as defined on Schedule A as it may be amended from time to time by Employer, by:

(1) Selling and/or promoting any products that are competitive with any products sold and/or promoted by Employer on the last day of Contractor's employment and which Contractor sold and/or promoted while employed by Employer; or

(2) Providing competing services directly to or on behalf of NuVasive, Inc., or by being employed in a competitive capacity by NuVasive, Inc.

B. Contractor agrees that competition shall include engaging in competitive activity as set forth in Paragraph 8(A) above, whether on his own behalf, or as a director, shareholder, officer, partner, or joint venturer with any other person or entity, or as an Contractor, agent, or representative of any other person or entity. Notwithstanding the foregoing, ownership of five (5%) percent or less of any class of securities of an entity shall not constitute competition against Employer.

C. If any provision of this Paragraph 8 relating to the time period, geographic area or scope of the restrictive covenants shall be declared by a court of competent jurisdiction to exceed the maximum time period, geographic area or scope, as applicable, that such court deems reasonable and enforceable, said time period, geographic area or scope shall be deemed to be, and thereafter shall become, the maximum time period, scope or largest geographic area that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

9. **Non-Solicitation**. In addition to the covenant not to compete set forth in Paragraph 8 above, Contractor further covenants and agrees as follows:

A. For a period of one (1) year following the last day of Contractor's employment, Contractor will not compete with Employer by, in a competitive capacity:

(1) Soliciting or accepting business competitive to Employer from, or providing competing products and/or services to, any person or entity, from whom or which Contractor accepted business on behalf of Employer or to whom or which Contractor provided products and/or services on behalf of Employer during the one-year period preceding the last day of Contractor's employment; or

(2) Soliciting or accepting competing business from or providing competing products and/or services to, any person or entity from whom or which Contractor

5

personally solicited business on behalf of Employer during the three (3) month period immediately preceding the last day of Contractor's employment.

B.      It is the specific intent of the parties that Contractor shall be restricted from soliciting or accepting competing business regarding the same or similar products and/or services as Contractor sold or provided while employed by Employer or products or services that compete with the products and/or services as Contractor sold and/or provided while employed by Employer.

C.      If any provision of this <u>Paragraph 9</u> relating to the time period or scope of the restrictive covenants shall be declared by a court of competent jurisdiction to exceed the maximum time period or scope, as applicable, that such court deems reasonable and enforceable, said time period or scope shall be deemed to be, and thereafter shall become, the maximum time period or greatest scope that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

D.      <u>Covenant Not to Solicit or Hire Employer's Contractors</u>.   Contractor agrees that during Contractor's employment with Employer and for a period of one (1) year following the last day of Contractor's employment, Contractor shall not, directly or indirectly, solicit or induce, or attempt to solicit or induce, any individual employed by Employer at any time during the three-month period preceding Contractor's last day of employment to leave Employer for any reason whatsoever or employ or otherwise hire any such Contractor for any reason whatsoever for Contractor's or another's account.

E.      <u>Covenant Not to Solicit Manufacturers</u>.   Contractor further covenants and agrees that Contractor will not enter into any agreement with any manufacturer or supplier of Employer that supplied products for sale and/or promotion to Employer during the one-year period prior to Contractor's last day of employment (including NuVasive, Inc.), to sell and/or promote any products either sold by Contractor on behalf of Employer or products competing with any products sold by Contractor on behalf of Employer, other than as an Contractor of Employer, within a fifty (50) mile radius of the city or county limits of any city or county in which Employer engaged in sales/promotion or management activities within the one-year period prior to Contractor's last day of employment.

10.      **NuVasive, Inc**.   The parties understand and agree the Employer is a distributor of products manufactured and/or marketed by NuVasive, Inc. and that NuVasive, Inc. has a substantial, legitimate business interest in protecting its customer, employment, and other business relationships.  The parties further understand and agree that NuVasive, Inc., and its successors and assigns, are intended to be and hereby are third party beneficiaries of this Agreement with full contractual and other rights to directly enforce the provisions set forth in <u>Paragraphs 7, 8, 9, 10, 11, and 13</u> herein.

11.      **<u>Confidential Information Disclosure Prohibition</u>.**   Contractor acknowledges that, in the course of performing Contractor's duties, Contractor shall become acquainted and entrusted with certain confidential information and/or proprietary information of Employer and NuVasive, Inc., including, but not limited to, customer lists and information, financial data,

Case 1:18-cv-00282-CCE-LPA   Document 9-1   Filed 04/24/18   Page 24 of 30

referral source information, product information and marketing programs (the "Confidential Information"). Contractor agrees to treat all Confidential Information entrusted to Contractor as fiduciary, and accepts and undertakes all the obligations of a fiduciary, including good faith, trust, confidence and candor, to maintain protect and develop Confidential Information for the benefit of the Company. Contractor will not cause or allow such Confidential Information to be exposed to unauthorized persons and that Contractor will not, without the prior written consent of Employer or NuVasive, Inc., as applicable, disclose, divulge, or make any use of such Confidential Information during Contractor's employment or at any time after the last day of Contractor's employment, except as directed by Employer in connection with Contractor's duties pursuant to this Agreement and as may be required by law. Contractor further agrees to notify Employer or NuVasive, Inc., as applicable, immediately of any third party whom Contractor knows or discovers to be in possession of such Confidential Information.

12.   **Handling of Confidential Information.**

     A.   <u>Customer List</u>. Contractor shall, at the time of and during employment furnish a complete list of all of the correct names and places of businesses of all its customers, immediately notify Employer of the name and address of any new customer and report all changes in location of old customers so that upon the termination of employment, Employer will have a complete list of the correct names and addresses of customers with whom Contractor had dealt.

     B.   <u>Development of Intellectual Property</u>. Contractor may make, discover or develop inventions, ideas, trade secrets, financial materials, computer programs, discoveries, developmental improvements, know how, processes and devices related to or used in the conduct of Contractor's performance of services for an on behalf of Employer ("Developments") Contractor agrees to disclose fully and promptly to Employer any of said Developments. Further, Contractor agrees that Employer is the sole and exclusive owner of said Developments; the Contractor retains no ownership in said Developments; and said Developments become part of the Employer's Confidential Information for purposes of this Agreement. Employer and Contractor agree that if the Developments or any portion thereof are copyrightable, it shall be deemed "work for hire" as such term is defined in the U.S. Copyright Act. Contractor shall execute and deliver to Employer any and all licenses, applications, assignments and other documents and take any and all actions that Employer may deem necessary or desirable to protect Employer rights in said Developments.

13.   **Injunctive Relief.**

     A.   Employer and Contractor agree that irreparable injury will result to Employer in the event Contractor violates any restrictive covenant or affirmative obligation contained in <u>Paragraphs 7, 8, 9, 10, 11, and 12</u> of this Agreement, and Contractor acknowledges that the remedies at law for any breach by Contractor of such provisions will be inadequate and that Employer shall be entitled to injunctive relief against Contractor, in addition to any other remedy that is available, at law or in equity.

     B.   Contractor agrees that the non-competition, non-disclosure, and non-solicitation obligations contained herein shall be extended by the length of time which

7

Contractor shall have been in breach of any of said provisions. Accordingly, Contractor recognizes that the time periods included in the restrictive covenants contained herein shall begin on the date a court of competent jurisdiction enters an order enjoining Contractor from violating such provisions unless good cause can be shown as to why the periods described should not begin at that time.

14. **Indemnity.** Contractor shall indemnify and hold harmless Employer, its successors and assigns, from and against any and all liabilities, costs, damages, expenses and attorneys' fees resulting from or attributable to any and all negligent or intentional acts and omissions of Contractor; provided, however, that to the extent that any such liabilities, costs, damages, expenses and attorneys' fees are covered by insurance maintained by Employer, Contractor shall be required to reimburse Employer only for any uncovered loss or damages Employer incurs including, without limitation, any deductible charged to Employer.

15. **Termination of Prior Agreements**. This Agreement constitutes the entire agreement between the parties and supersedes all prior or contemporaneous agreements, representations and understandings of every kind between the parties hereto, all of which are hereby terminated.

16. **Effect of Agreement.** This Agreement shall be binding on and inure to the respective benefit of Contractor and his personal representatives and Employer and its successors and assigns.

17. **Modification**. No provision of this Agreement, including the provisions of this paragraph, may be modified, deleted or amended in any manner except by an agreement in writing executed by the parties hereto.

18. **Succession and Assignment**. The obligations of Contractor under this Agreement shall continue after the last day of Contractor's employment and shall be binding on Contractor's heirs, executors, legal representatives and assigns. Such obligations shall inure to the benefit of any successors or assigns of Employer. Contractor specifically acknowledges that in the event of a sale of all or substantially all of the assets of Employer, or any other event or transaction resulting in a change of ownership or control of Employer's business, the rights and obligations of the parties hereunder shall inure to the benefit of any transferee, purchaser, or future owner of Employer's business. This Agreement may be assigned only by Employer.

19. **Interpretation**. If any part of any covenant or provision contained in this Agreement is determined by a court of competent jurisdiction to be invalid, illegal, overbroad, or incapable of being enforced, then the court so deciding shall interpret such provision(s) in a manner so as to enforce them to the fullest extent of the law. In particular, the parties expressly agree that any court may deem "Contractor's Territory" to mean the broadest territory described in Schedule A that is legally enforceable.

20. **Severability.** Each of the paragraphs and subsections contained in this Agreement shall be enforceable independently of every other paragraph and subsection in this Agreement, and the invalidity or non-enforceability of any paragraph or subsection shall not invalidate or render nonenforceable any other paragraph or subsection contained herein. If any paragraph or subsection is found invalid or unenforceable, it is the intent of the parties that a

8

court of competent jurisdiction shall reform the paragraph or subsection to produce its nearest enforceable economic equivalent. Without limiting the foregoing, in the event the restrictions on competition or solicitation as set forth in Paragraphs 8 or 9 are determined to be invalid, overbroad, or unenforceable, the parties expressly agree that the provisions in these Paragraphs shall be deemed severable, and the invalidity or unenforceability of any provision (or part thereof) shall in no way effect the validity or enforceability of any other provision (or remaining part thereof).

21. **Restrictive Covenants of the Essence**. The restrictive covenants upon the Contractor set forth herein are of the essence of this Agreement; they shall be construed as independent of any other provision in this Agreement. The existence of any claim or cause of action of the Contractor against Employer, whether predicated on this Agreement or not, shall not constitute a defense to the enforcement by Employer of the restrictive covenants contained herein. Contractor acknowledges and agrees that the restrictive covenants are reasonably necessary for the protection of Employer and that such restrictive covenants are reasonably limited with respect to the activities prohibited, the duration thereof, the geographical area thereof, the scope thereof and the effect on Contractor and the general public. Contractor further acknowledges and agrees that the purpose and effect of such restrictive covenants is solely to protect Employer for a limited period of time from unfair competition by Contractor, and that the initiation of employment of Contractor as described in this Agreement is conditioned upon Contractor agreeing to abide by and be bound by all of the restrictive covenants and provisions contained in this Agreement.

22. **Attorneys Fees**. In the event Employer is caused to injunctive or any other form of equitable relief and is successful in its attempts, and/or Employer is caused to file a lawsuit in order to enforce the terms of this Agreement and Employer obtains a final judgment from a court of competent jurisdiction pursuant to which Contractor is determined to have breached his/her obligations under this Agreement, Employer shall be entitled to recover, in addition to any award of damages, its reasonable attorneys fees, costs, and expenses incurred in obtaining such equitable relief and/or final judgment. The parties agree that the provision of this paragraph are reasonable and necessary.

23. **Applicable Law**. Questions with respect to the construction, performance, and enforceability of this Agreement and the rights and liabilities of the parties hereunder shall be determined in accordance with the laws of the State of North Carolina, without regard to its conflict of laws provisions. The parties hereto submit to the jurisdiction of the courts of North Carolina with respect to this Agreement and all matters arising hereunder, and they agree that the venue for resolution of any dispute arising hereunder shall be the appropriate state or federal courts within North Carolina.

24. **Notice**. All notices, requests, demands, and other communications required or that may be given hereunder shall be in writing and shall be deemed to have been duly given when received, if delivered in person, or sent by certified mail, postage prepaid, return receipt requested or sent by nationally recognized overnight courier service, and addressed to the last known address of the parties hereto.

Case 1:18-cv-00282-CCE-LPA   Document 9-1   Filed 04/24/18   Page 27 of 30

25.  **No Waiver**.  The failure of either party to this Agreement to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions of this Agreement, shall not be construed as subsequently waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

26.  **Original Copies**.  This Agreement may be executed in more than one counterpart, each of which shall be deemed an original.

27.  **Headings**.  The underlined headings herein are for convenience of reference only and shall not affect the interpretation of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

EMPLOYER:

InoSpine, LLC

By: _____
Jarrett Clay, Member/Manager

CONTRACTOR:

By: _____
Michael Jones

10

<u>**SCHEDULE A**</u>
<u>**CONTRACTOR'S TERRITORY**</u>

      A.     Contractor shall perform duties in the following listed cities and/or counties (as may be amended from time to time), in North Carolina and such other cities and/or counties in North Carolina as Contractor may be assigned, or may actually perform duties, during the term of this Agreement or Contractor's employment with Employer ("Contractor's Territory"):

Counties:

Mecklenburg
Catawba
Haywood
Iredell
Cabarrus
Rowan
Gaston
Rutherford
Caldwell
Burke

11

## SCHEDULE B (COMMISSION)

       Contractor shall be compensated on a pure commission basis.  Employer shall determine the commission rate for each pay period, and said determination shall be in the sole and absolute discretion of Employer.

Case 1:18-cv-00282-CCE-LPA   Document 9-1   Filed 04/24/18   Page 30 of 30