**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
CIVIL ACTION NO. 1:18-cv-00282**

| | |
|---|---|
| **NuVasive, Inc.,** | |
| **Plaintiff,** | |
| **v.** | **Memorandum in Opposition to Plaintiff's Motion for Injunctive Relief** |
| **Michael Jones** | |
| **and** | |
| **Kenneth Kormanis,** | |
| **Defendants.** | |

COMES NOW Defendant Kenneth Kormanis, by and through the undersigned counsel, and submits this Memorandum in Opposition to the Plaintiff's Motion for a Preliminary Injunction.

**Nature of the Matter**

Defendant Kenneth Kormanis ("Kormanis"), a former employee of InoSpine, LLC ("InoSpine") objects to the present Motion by Plaintiff NuVasive, Inc. ("NuVasive"), because NuVasive lacks standing to seek injunctive relief and because the relief NuVasive requests would impose void and unenforceable restrictions on Kormanis. Kormanis respectfully requests the Court deny NuVasive's Motion for a Preliminary Injunction.

## Standing

As a threshold issue, NuVasive's Motion for Preliminary Injunction should be denied because NuVasive lacks standing to seek the relief it requests. NuVasive is not a party to the Employment Agreement between Kormanis and InoSpine, but rather seeks relief as an alleged third party beneficiary. (Document No. 1, p. 7 ¶ 29.) North Carolina courts do not recognize the right of any party other than an employer or the employer's successor in interest to enforce restrictive covenants, given that enforceability depends in large part on how closely tailored the restrictions are to the legitimate business interests of the employer. (*See, generally Philips Elec. North America Corp. v. Hope*, 631 F.Supp.2d 705 (M.D.N.C. 2009). NuVasive has provided the Court with no legal basis for the significant extension of state law required to endow third party beneficiaries to employment contracts the right to enforce restrictive covenants.

## Facts as Asserted in Plaintiff's Complaint

Defendant Kenneth Kormanis ("Kormanis") became an employee of InoSpine, LLC ("InoSpine"), which is not a party to this action, on or about February 17, 2014, and signed an Employment Agreement with InoSpine. (Document No. 1, ¶ 14.) Nowhere in the Complaint does NuVasive allege that Kormanis engaged in promoting or selling NuVasive products during his employment with InoSpine, which ended when Kormanis resigned on March 3, 2018. (Document No. 1, ¶ 35.) Subsequently, Kormanis changed his LinkedIn profile to state "he is a 'Team Leader' for ReAlign Spine." (Document No. 1, ¶ 40.) Kormanis's LinkedIn profile lists his location as "the Greensboro/ Winston-Salem area." (*Id.*) Neither Kormanis's LinkedIn profile, nor the North Carolina Secretary of State registration for ReAlign Spine indicate any corporate affiliation, yet NuVasive's Complaint concludes Kormanis is now in league with Alphatec, which NuVasive deems a competitor. (Document No. 1, ¶ 39.) NuVasive's

Complaint alleges Kormanis is "promoting and/or selling Alphatec's competitive products within [his] former InoSpine territories" (Document No. 1, ¶ 3), but provides no facts indicating what products Kormanis is allegedly "promoting and/or selling," no facts indicating why those products are competitive, and no facts indicating where Kormanis has allegedly been soliciting.

Neither NuVasive's Complaint nor its Memorandum include affidavits attesting to firsthand knowledge of an alleged breach by Kormanis, rather the Complaint alludes to an encounter between "…one of NuVasive's surgeon-customers in Kormanis's [former] …sales territory" and an unidentified InoSpine employee. (Document No. 1, ¶¶ 42-44.) During this alleged encounter, NuVasive claims the surgeon-customer mentioned he knew "for some time" about Kormanis' leaving InoSpine for Alphatec, and the surgeon-customer expressed some interest in "giv[ing] Ken [Kormanis]'s stuff a try." (Document No. 1, ¶ 42.) NuVasive's Complaint seems to attach much significance to its allegation that, during the unidentified InoSpine employee's visit to the unnamed surgeon-customer, the InoSpine employee noticed a hospital calendar with Kormanis's name on it. (*Id.*) Although the Complaint alleges, "th[e] surgeon-customer utilizes Alphatec products promoted by Kormanis" (Document No. 1, ¶ 44), nowhere does the Complaint claim that Kormanis solicited the surgeon-customer or was in any way responsible for the surgeon-customer's alleged use of Alphatec products, nor does the Complaint allege that the surgeon-customer has decreased his use of NuVasive products in favor of Alphatec products or that the surgeon-customer's relationship with NuVasive suffered any harm.

## Legal Standard

A preliminary injunction is an extraordinary remedy that pre-emptively awards a party the relief it would otherwise not receive unless it prevailed on the merits at trial. *Campbell Sales Grp., Inc. v. Gramercy Park Design, LLC*, No. 1:10-CV-55 (M.D.N.C. October 6, 2010). Courts should grant preliminary injunctions only "sparingly and in limited circumstances." *Sun Microsystems, Inc. v. Microsoft Corp.*, 333 F.3d 517, 526 (4th Cir. 2003) (*quoting MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001)). A preliminary injunction preserves the *status quo* between the parties "in order to prevent irreparable injury to the moving party and in order to preserve the ability of the court to render complete relief." *Fed. Leasing, Inc. v. Underwriters at Lloyd's,* 650 F.2d 495, 499 (4th Cir. 1981).

To obtain a preliminary injunction, the moving party has the burden of establishing a) a clear showing that its claim is likely to succeed on the merits, b) a clear showing that it is likely to suffer irreparable harm absent preliminary relief, c) that the "balance of equities tips in its favor," and d) that "injunctive relief would be in the public interest. *North Carolina Democratic Party, v. Berger,* No. 1:17-CV-1113 (M.D.N.C. January 31, 2018). (*citing Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). No party can obtain a preliminary injunction without giving "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Although the amount of the bond remains in the court's discretion, the requirement of security "is mandatory and unambiguous." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d. 411 (4th Cir. 1999) (*quoting District 17, UMWA v. A & M Trucking, Inc.* 991 F.2d 108, 110 (4th Cir. 1993)).

## A.    Standing

As a threshold matter, a party must have standing in order to obtain relief in the courts. *Warth v. Seldin*, 422 US 490, 498-99 (1975). Although the legal or equitable relief sought may benefit other parties collaterally, the federal courts have jurisdiction "only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action.'" *Warth v. Seldin*, 422 US 490, 498-99 (1975) (*quoting Linda R. S. v. Richard D.,* 410 U. S. 614, 617 (1973)).   A third party beneficiary has standing to sue "for breach of a contract executed for his benefit" if he can prove a valid enforceable contract existed between two parties and it was the intention of both parties for the contract to be for the third party's "direct, and not incidental, benefit."  *Hoisington v. ZT-Winston-Salem Associates*, 516 S.E.2d 176, 180-181 (N.C. Ct. App. 1999) (*citations omitted*)).   The court is not limited to the four corners of the contract at issue when determining the intention of the two parties, rather it should consider the "terms of the contract as a whole, construed in the light of the circumstances under which it was made and the apparent purpose that the parties [were] trying to accomplish. *Hoisington,* 516 S.E.2d at 180-181.  When considering whether a third party can enforce a contract between two other parties, the court must strictly construe the terms of the contract "against the party seeking enforcement." *Raritan River Steel Co. v. Cherry*, 407 S.E.2d 178, 182 (N.C. 1991) (*citations omitted*)).

North Carolina law prohibits contracts in restraint of trade, but does permit restrictive covenants between employers and employees, provided the restrictions meet certain requirements and are designed to protect the legitimate business interests of the employer. *VisionAIR, Inc. v James*, 606 S.E.2d 359, 362 (N.C. Ct. App. 2004) (*quoting Manpower of Guilford County, Inc. v. Hedgecock* 257 S.E.2d 109, 114 (N.C. Ct. App. 1979)).   Because restrictive covenants "facilitate and protect" an employer's investment in its business, they can

be assigned or transferred like any other asset to a successor in interest upon the sale of the business. *Reynolds v. Tart*, 955 F.Supp. 547, 557 (W.D.N.C. 1997).

## B.  Substantial Likelihood of Success on the Merits

A party seeking a preliminary injunction must first "demonstrate by 'a clear showing' that…it is likely to succeed on the merits at trial." *The Real Truth about Obama v. Fed. Election Comm'n.*, 575 F.3d 342, 345-46 (4th Cir. 2009) (*overruled on other grounds*). To demonstrate a clear showing, the moving party "…must provide the court with a sufficient factual record to evaluate [the moving party's] likelihood of success on the merits." *Capital Associated Indus., Inc. v. Cooper*, 129 F.Supp.3d 281, 293 (M.D.N.C. 2015). To succeed on a claim for breach of contract, a plaintiff must prove existence of a valid contract and breach of that contract. *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000). Therefore, when an employer seeks injunctive relief to enforce an employment agreement, the employer must not only demonstrate that the employment agreement itself is valid and enforceable, but must also allege facts sufficient to indicate a claim for breach. *Milner Airco, Inc. of Charlotte, NC v. Morris*, 433 S.E.2d 811, 813 (N.C. Ct. App. 1993) (*citing Triangle Leasing Co. v. McMahon*, 393 S.E.2d 854, 856 (N.C. 1990)).

Employers seeking to prove the validity and enforceability of restrictive covenants in North Carolina face a high bar, as such restrictions are disfavored under modern law. *VisionAIR, Inc. v. James*, 606 S.E.2d 359, 362 (N.C. Ct. App. 2004). Courts scrutinize restrictive covenants closely, and will strictly construe any ambiguity against the drafting party. *Washburn v. Yadkin Valley Bank & Trust*, 660 S.E. 2d. 577, 584 (*citing Reichhold Chem., Inc. v. Goel*, 555 S.E.2d 281 (2001)). To withstand this scrutiny, North Carolina courts require that restrictive covenants be in writing, 1) part of a valid employment agreement, 2) supported by consideration, 3)

reasonable as to time and territory, and 4) restrictive of no more conduct than necessary to protect the employer's legitimate business interests. *Philips Elec. North America Corp. v. Hope*, 631 F. Supp.2d 705, 715 (M.D.N.C. 2009) (*citing A.E.P. Indus., Inc. v. McClure*, 302 S.E.2d 754, 760 (N.C. 1983)).

      1. A restrictive covenant must be part of a valid employment agreement. North Carolina courts will not enforce a restrictive covenant that "appears to be the main purpose of the contract, and not subordinate thereto." *Wilmar, Inc. v. Liles*, 185 S.E.2d 278, 280 (N.C.App 1971) (*cert. denied* January 28, 1972) (*quoting* 54 Am.Jur.2d, *Monopolies, Sec*. 514, p. 961).

      2. A restrictive covenant must be supported by valid consideration. An offer of new employment can serve as consideration for restrictive covenants contained in an employment agreement. *Superior Performers, Inc. d/b/a National Agents Alliance v. Meaike,* No. 1:13-CV-1149 (M.D.N.C. April 11, 2014) (*quoting Hejl v. Hood, Hargett & Assocs., Inc.* 674 S.E.2d 425, 428 (2009) (*citation omitted*)). Restrictive covenants independent of an initial employment contract, however, require additional consideration. *Milner Airco, Inc. v. Morris*, 433 S.E.2d 811, 813 (N.C. Ct. App. 1993) (*citation omitted*).

      3. A restrictive covenant must be reasonable as to time and territory. With respect to time and territory, courts determine reasonableness by balancing the duration of the restriction with its breadth, such that a broad-ranging restriction on territory will only be reasonable for a short period of time and a long-lasting restriction will only be considered reasonable if it applies to a small geographic area. *Philips Elec. North America Corp. v. Hope*, 631 F. Supp.2d 705, 715 (M.D.N.C. 2009) (*citing Kinesis Adver., Inc. v. Hill*, 652 S.E.2d 284, 294 (N.C. Ct. App. 2007).) Furthermore, "the scope of the geographic restriction must not be any wider than is necessary to protect the employer's reasonable business interests." *Okuma America Corp. v. Bowers,* 638 SE

2d 617, 620 (N.C. Ct. App.2007) (*quoting Precision Walls, Inc. v. Servie*, 568 S.E.2d 267, 273 (N.C. Ct. App. 2002)) Therefore, to demonstrate the reasonableness of a geographic restriction, "an employer must first show where its customers are located and that the geographic scope of the covenant is necessary to maintain those customer relationships." *Hejl v. Hood, Hargett & Assocs., Inc.*, 674 SE 2d 425, 429-30 (N.C. Ct. App. 2009) (*quoting Hartman v. W.H. Odell & Assocs., Inc.* 450 S.E.2d 912, 917 (N.C. Ct. App. 1994))

    4.  A restrictive covenant may forbid no more conduct than is necessary to protect the employer's legitimate business interests.  A restrictive covenant that is more broad than necessary to reasonably protect the employer's business violates the public interest and will not be enforced. *Asheboro Paper and Packaging, Inc. v. Dickinson*, 599 F.Supp.2d 664, 674 (M.D.N.C. 2009) (*citing Whittaker Gen. Med. Corp. v. Daniel*, 379 S.E.2d 824, 828 (N.C. 1989)). North Carolina courts will not rewrite an overly broad restrictive covenant, even if the document expressly permits such amendment, however if the restrictive covenant "sets out both reasonable and unreasonable restricted territories," the court may strike out, or "blue pencil" the unreasonable portions. *Beverage Systems of the Carolinas, LLC v. Associated Beverage Repair, LLC* 784 S.E.2d 457, 461-62 (N.C. 2016) (*citing Welcome Wagon Int'l, Inc. v. Pender*, 120 S.E.2d 739, 742 (N.C. 1961)).

**C.    A Clear Showing of Irreparable Harm that is Actual and Imminent**

    To justify the court's grant of a preliminary injunction, the moving party "must do more than merely allege that irreparable injury will occur; [it] is required to set forth with particularity facts supporting such statements so the court can decide for itself if irreparable injury will occur. *DaimlerChrysler Corp. v. Kirkhart*, 561 S.E.2d 276, 286 (N.C. Ct. App. 2002) (*quoting Telephone Co. v. Plastics, Inc.*, 214 S.E.2d 51, 52 (N.C. 1975). ". . . It is not enough for the

plaintiff to allege simply that the commission or continuance of the act will cause him injury, or serious injury, or irreparable injury; but he should allege the facts, from which the court may determine whether or not such injury will result." *United Tel. Co. v. Universal Plastics, Inc.*, 214 S.E. 2d 49 (N.C. 1975). Irreparable injury will only occur "when monetary damages are difficult to ascertain or are inadequate." *Laboratory Corp. of America Holdings v. Kearns*, 84 F.Supp.3d 447, 463 (M.D.N.C. 2015) (*quoting Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.* 22 F.3d 546, 551-52 (4th Cir.1994)). The moving party must demonstrate that irreparable injury is "neither remote nor speculative, but actual and imminent." *Manning v. Hunt*, 119 F.3d. 254, 264 (4th Cir. 1997) (*citation omitted*).

**D.     That the balance of equities tips in its favor.**

The "balance of equities" refers to the Court's consideration of the harm caused to the moving party by denying the injunction balanced against the harm caused to the non-moving party by granting the injunction. *Sirona Dental, Inc. v. Smithson*, No. 3:14-cv-714 (W.D.N.C. January 20, 2015) (*quoting Amoco Product. Co. v. Gambell,* 480 U.S. 531, 542 (2008)). The Court will only grant a preliminary injunction if, in addition to satisfying all the other requirements for a preliminary injunction, the moving party can demonstrate it has more to lose if the court denies the injunction than the non-moving party has to lose if the court grants injunctive relief. *Sirona Dental,* No. 3:14-CV-714 (W.D.N.C. January 20, 2015).

**E.     That injunctive relief would be in the public interest.**

The enforcement of valid contracts intended to protect legitimate interests is in the public interest, but no more so than the abrogation of oppressive and unreasonable restraints on trade. *United Laboratories, Inc. v. Kuykendall*, 370 S.E.2d 375, 380 (N.C. 1988). Whether injunctive

relief serves the public interest depends on the whether the restrictions at issue comply with North Carolina public policy. *Sirona Dental,* No. 3:14- CV-714 (W.D.N.C. January 20, 2015).

**Legal Argument**

NuVasive does not have standing to seek relief requested, nor has it met its burden of establishing any of the four elements necessary to justify injunctive relief, and therefore NuVasive's motion for a preliminary injunction should be denied.

**A.      NuVasive lacks standing to enforce the restrictive covenants because it is a third party to the Employment Agreement at issue**

As a third party beneficiary to the Employment Agreement, NuVasive lacks standing to enforce the restrictive covenants because the restrictions can only be enforced with respect to the legitimate business interests of InoSpine or its successor in interest.

As a general rule, intended third party beneficiaries can file suit to enforce contracts intended to benefit them. *Raritan River Steel Co. v. Cherry,* 407 S.E.2d 178, 181 (N.C. 1991). That general rule does not extend to the enforcement of restrictive covenants under North Carolina law and public policy. North Carolina courts will only enforce restrictive covenants tailored to protect the employer's legitimate business interests, and have only allowed enforcement by employers or their successors in interest. *See, e.g. Reynolds v. Tart,* 995 F.Supp.547, 552-53 (W.D.N.C. 1997). Although NuVasive purports to share some legitimate business interests with InoSpine, NuVasive is not a successor in interest; the interests of the two companies are not the same. For example, InoSpine limits NuVasive's enforcement ability to certain contract provisions (Document No. 1, p. 35, ¶ 10.) Other provisions of Kormanis's Employment Agreement inure to InoSpine's benefit and to the detriment of NuVasive. (*See, e.g.* Document No. 1, p. 33, ¶8(A)(2), "[Employee is restricted from] providing competing services

directly to or on behalf of NuVasive, Inc., or being employed in a competitive capacity by NuVasive, Inc.") InoSpine's interests differ from NuVasive's in that InoSpine distributes products made by companies other than NuVasive.  (*See* Document No. 1, p. 28, ¶ B(5)(i)-(ii).) In fact, NuVasive has not even plead facts indicating Kormanis sold or distributed NuVasive products during his time with InoSpine.  Because NuVasive does not have a legally protected interest at stake in this matter, NuVasive lacks standing to enforce the restrictive covenants.

**B.** **NuVasive has failed to make a clear showing that it is likely to succeed on the merits of its claim for breach of contract**

The first element a moving party must establish to justify a preliminary injunction is the likelihood of success on the merits.  *The Real Truth about Obama*, 575 F.3d at 346.  NuVasive fails to establish the validity and enforceability of the restrictive covenants and has provided no factual basis from which the court could reasonably conclude breach.[1]

1.      The Restrictive Covenants are Void and Unenforceable as a Matter of Law

The restrictive covenants at issue are not valid under North Carolina law because they are:  1) Not part of an employment agreement, 2) Not supported by valid consideration, 3) Not reasonable as to time and territory, and 4) Far more restrictive than necessary to protect InoSpine's legitimate business interests.  Because the restrictive covenants at issue are unenforceable, NuVasive's claim cannot succeed on the merits, and therefore its Motion for a Preliminary Injunction should be denied.

First, the restrictive covenants at issue are unenforceable because they are not part of an employment agreement as contemplated by the case law. *See, e.g. Wilmar, Incorporated v. Liles*,

---

[1]  NuVasive's Complaint directs two causes of action at Kormanis: Count IV, for "Breach of Contract at Termination," and Count V, for "Breach of Contract Post Termination" (Document No. 1, pp. 11-12). NuVasive seeks injunctive relief with respect to Count V only, which relates to the purported Restrictive Covenants (Document No. 9, p. 1), and therefore this Memorandum addresses only Count V.

185 S.E.2d 278 (N.C. Ct. App.1971); *see also AEP Indus., Inc. v. McClure,* 302 S.E. 2d 754, 761

(N.C. 1983). Although the restrictive covenants at issue appear in the same document as

Kormanis's Employment Agreement, by their very terms, the restrictive covenants separate

themselves from the rest of the Employment Agreement. Section 21 of Kormanis's Employment

Agreement states as follows:

> The restrictive covenants upon the Employee set forth herein are of the essence of this Agreement; **they shall be construed as independent of any other provision in this Agreement.** The existence of any claim or cause of action of the Employee against Employer, whether predicated on this Agreement or not, shall not constitute a defense to the enforcement by Employer of the restrictive covenants contained herein.

(Document No. 1, ¶ 38, emphasis added.)

An offer of new employment will serve as consideration for "an otherwise valid covenant

not to compete contained in [an] initial employment contract," but to impose restrictive

covenants independent of the employment contract on an employee, the employer must offer

additional consideration. *See, e.g. Young v. Mastrom, Inc.* 392 S.E.2d 446, 448 (*disc. rev.*

*denied*, 397 S.E.2d 239 (1990)); *Superior Performers, Inc. v. Meaike*, No. 1:13-CV-1149

(M.D.N.C. April 11, 2014) (*quoting Hejl v. Hood, Hargett & Assocs., Inc.* 674 S.E.2d 425, 428

(N.C. Ct. App. 2009)). Kormanis entered into the Employment Agreement around the time he

began employment, and therefore InoSpine's offer of employment could theoretically serve as

consideration for the Employment Agreement itself.[2] The restrictive covenants, however,

according to Section 21, declare themselves independent of the Employment Agreement, and

therefore must be supported by independent consideration from InoSpine in order for them to be

enforceable by InoSpine. NuVasive offered Kormanis no consideration to support the restrictive

covenants it now seeks to enforce.

---

[2] Kormanis does not concede that InoSpine's offer of employment constituted adequate consideration to support the restrictive covenants.

It is a basic principle of contract law that if one party to a contract commits a material breach, the other party is excused from its obligation to perform further under the contract. *See, e.g. Millis Const. Co. V. Fairfield Sapphire Val., Inc.* 358 S.E.2d. 566, 570 (N.C. Ct. App.1987); see also *Boss Urgent Care, PLLC, v. Urgent Care Works, LLC.* No. 7:11-CV-00071 (E.D.N.C. May 18, 2012) (*quoting McClure Lumber Co. v. Helmsman Const., Inc.,* 585 S.E.2d 234, 239 (2003) (*citations omitted*)). Courts will decline to enforce even restrictive covenants which by their terms are severable, "if the party seeking to enforce them has engaged in a breach which is material and [which] goes to the heart of the contract." *Combined Ins. Co. v. McDonald*, 243 S.E.2d 817, 819 (N.C. Ct. App. 1978). According to the terms of Section 21 of the Employment Agreement, however, even a complete and total breach by InoSpine of every other term of the Employment Agreement would not relieve Kormanis of his obligation to abide by the restrictive covenants, nor would a material breach by InoSpine prevent NuVasive from seeking to enforce the restrictions. Such a result defies principles of law and equity. If the restrictive covenants would endure despite a material breach of the Employment Agreement, then the restrictive covenants are not a part of the Employment Agreement, and therefore cannot be enforced.

Second, the restrictive covenants at issue are not valid or enforceable because they are not supported by valid consideration. Even if the restrictive covenants were considered part of Kormanis's Employment Agreement, the Agreement itself is not supported by adequate consideration. An offer of at-will employment can serve as consideration for an employee's entering into a restricted covenant, *Farr Assoc. v. Baskin*, 530 S.E.2d 878, 881 (N.C. Ct. App. 2000), but in this case, InoSpine's offer was illusory. InoSpine did not guarantee Kormanis a salary or even a fixed rate of commission. (Document No. 1, ¶¶ 27-41.) The Employment Agreement allowed InoSpine to amend or reduce Kormanis's territory at any time. (*Id*.) Under

Page 13 of 22

the terms of the agreement, even the purported notice period was meaningless, because InoSpine could take away all of Kormanis's territory or reduce his commission rate to 0% without notice, which would effectively terminate Kormanis's "employment."

In *Wilmar v. Liles*, an employer offered its existing employees a "profit sharing plan" as consideration for their signing a restrictive covenant. *Wilmar v. Liles*, 185 S.E.2d 278 (N.C. Ct. App. 1971), *cert. denied*, 186 S.E.2d 178 (N.C. 1972). When the employer tried to enforce the restrictive covenant, the Court of Appeals refused, holding that because the profit sharing plan allowed the employer to reduce or even eliminate its rate of contribution at any time, it did not actually bind the employer to any obligation and could not serve as consideration for the restrictive covenant. (*Id.*) Without consideration, the restrictive covenant was void and unenforceable. (*Id.*) InoSpine's offer of "employment" is much like the profit sharing plan in *Wilmar*. The Employment Agreement imposed no obligations on InoSpine; InoSpine was not obligated to pay Kormanis anything or allow him access to any sales territory. Although the Employment Agreement does recite language about granting Kormanis access to proprietary and confidential information, NuVasive's Complaint contains no facts indicating that Kormanis received any such confidential information. Courts have consistently declined to enforce restrictive covenants based on illusory consideration for legal and equitable reasons, as the court in *Milner Airco* reflected:

> Without guaranteeing to the [employees] one day's work, without the obligation of the [employer] to employ them or pay them anything, ... the [employees] are induced to sign a paper which, while it has the general appearance of a contract, but keeps the promise to the ear while it breaks it to the hope. Such a contract, wanting in mutuality, presenting no equitable considerations, a court of equity will not enforce.

*Milner Airco, Inc. v. Morris*, 433 S.E.2d 811, 814 (1993) (*quoting Wilmar*, 185 S.E.2d 278 (*quoting SuperMaid Cook-Ware Corporation v. Hamil*, 50 F.2d 830 (5th Cir.1931)).

Third, the restrictive covenants at issue are so vague that they are unenforceable, or in the alternative, they are not reasonable as to time and territory. Because the restrictive covenants at issue fail to define the restricted territory, they are unduly vague and therefore unenforceable. The Employment Agreement purports to limit Employee's post-employment activities only in "Employee's Territory," but provides no clarity as to whether the restricted territory is Employee's Territory at the time of hire, Employee's Territory at some point during employment, or Employee's Territory at the termination of employment. The Employment Agreement contemplates the amendment of Employee's Territory at least three (3) times, the first permitting amendment "upon mutual agreement of the parties" (Document No. 1, p. 27, ¶ 1(A)), the second "by Employer" (Document No. 1, p. 33, ¶ 8(A)), and the third time without reference to who may amend Employee's Territory (Document No. 1, p. 40). Not only does the Employment Agreement fail to clarify how changes to the Employee's Territory can be made, but it also fails to clarify which iteration of Employee's Territory constitutes the restricted territory for post-employment purposes. Because the Employment Agreement does not sufficiently define the territorial restriction, it is unduly vague and therefore unenforceable.

In the alternative, the restrictive covenants are unenforceable because the territorial restriction is overly broad. To demonstrate that a geographic restriction is reasonable, "an employer must first show where its customers are located and that the geographic scope of the covenant is necessary to maintain those customer relationships." *Hartman v. Odell*, 450 S.E.2d 912, 917 (N.C. Ct. App. 1994). NuVasive has not identified the location of a single one of InoSpine's customers, nor has it given any indication of why the geographic scope of the restrictive covenants is necessary to maintain InoSpine's relationships. Furthermore, NuVasive

has no legal precedent for enforcing restrictions that protect the business interests of a third party to a restrictive covenant in North Carolina.

In particular, the "non-solicitation" provision of the Employment Agreement is overly broad, functioning as a non-compete without geographic or temporal limitation.

> It is the specific intent of the parties that Employee shall be restricted from soliciting or accepting competing business regarding the same or similar products and/or services as Employee sold or provided while employed by Employer or products or services that compete with the products and/or services as Employee sold and/or provided while employed by Employer.

(Document No.1, p. 34, ¶ 8(B).)  This provision incorporates neither the two-year temporal restriction nor the "Employee's Territory" purported geographic restriction.  By including a prohibition on "accepting" competing business, InoSpine transforms the foregoing provision from a non-solicit to a non-compete, which by its terms would prohibit Kormanis from accepting business from a competitor of InoSpine's anywhere in the world at any time in the future. NuVasive has not alleged in its Complaint nor has it presented by affidavit any facts justifying such a broad geographic and temporal scope.

Furthermore, NuVasive's attempt to prohibit Kormanis from accepting competing business impinges on the rights of individuals who are not parties to the Employment Agreement, in violation of North Carolina law prohibiting monopolies and restraints of trade. *See* N.C. Gen. Stat. §75-1 *et seq.*  In the context of the present Employment Agreement, such a restriction would prevent surgeon-customers located in "Employee's Territory" from exercising their professional judgment in determining which brand of medical device is best for their patients, if that brand were anything other than the brand sold by InoSpine.

The restrictive covenants' overbreadth cannot be saved by the judicial revision referred to in Sections 8(C) and 9(C).

If any provision of this Section 8 relating to the time period, geographic area, or scope of the restrictive covenants shall be declared by a court of competent jurisdiction to exceed the maximum time period, geographic area, or scope, as applicable, that such court deems reasonable and enforceable, said time period, geographic area, or scope shall be deemed to be, and thereafter shall become, the maximum time period, scope, or largest geographic area that such court deems reasonable and enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

(Document No. 1, p. 33, ¶8(C).)[3]  In 2016, the North Carolina Supreme Court rejected this type of provision in restrictive covenants, holding that parties to a contract cannot "assign...their drafting duties...to the court." *Beverage Sys. of the Carolinas,* 784 S.E.2d at 463.   Territorial limits in a restrictive covenant will be "enforced as written or not at all, for courts will not carve out reasonable subdivisions of an otherwise overbroad territory." (*Id.*)

    2.     Plaintiff has not stated a claim for relief with respect to breach of contract

Even if the restrictive covenants at issue were valid and enforceable, NuVasive cannot demonstrate a likelihood of success on the merits of its claim for breach of contract because it has failed to allege facts indicating breach.  NuVasive's Complaint alleges that Kormanis is "promoting and/or selling Alphatec's competitive products within his former InoSpine territory" (Document No. 1, ¶¶ 67-68), but provides no facts to support that allegation.

NuVasive's Complaint states that an unnamed "surgeon-customer" of InoSpine's "utilizes Alphatec products promoted by Kormanis," (Document No. 1, ¶ 44) but provides no factual basis for its conclusion that Kormanis solicited the unnamed surgeon-customer or any other surgeon in the restricted territory.   NuVasive's Complaint claims that an InoSpine employee saw Kormanis's name on a calendar (Document No. 1, ¶ 42), but NuVasive fails to explain how the calendar implicates Kormanis in any way.  NuVasive's Complaint concludes that Kormanis is violating his restrictive covenants (Document No. 1, ¶ 40) but has not provided

---

[3] Paragraph 9(C) is substantially similar, omitting only the words "geographic area."

any facts that logically support that conclusion.  Because NuVasive's Complaint fails to provide a sufficient factual record from which the Court can evaluate NuVasive's likelihood of success on the merits, NuVasive cannot satisfy the first requirement for a preliminary injunction, and therefore its request for a preliminary injunction should be denied.

**C.    NuVasive has failed to make a clear showing that it is likely to suffer irreparable harm absent preliminary relief**

NuVasive's Complaint sets forth no facts indicating the likelihood of imminent irreparable harm, and therefore fails to satisfy the second element required to justify a preliminary injunction.   Harm is considered irreparable "when money alone cannot compensate for it."  *iEntertainment Network, Inc. v. Hammett, et al.*, No. 5:14-CV-157 (E.D.N.C, August 6, 2014) (*quoting Board of Light & Water Comm'rs v. Parkwood Sanitary District*, 271 S.E.2d 402, 404 (N.C. Ct. App. 1980)).  To satisfy the requirement of imminent irreparable injury, the moving party must set forth with particularity the facts supporting its claim of irreparable injury such that the court can make findings of fact based on competent evidence of the irreparable harm faced by the moving party.  *Nalle Clinic Co. v. Parker,* 399 S.E.2d 276, 286 (N.C. Ct. App. 2002).

NuVasive's Complaint fails to allege facts sufficient to indicate the likelihood of any harm, much less irreparable harm, should the court deny NuVasive a preliminary injunction.  NuVasive's conclusion that "Kormanis [is] now affiliated with Alphatec and...[is] promoting and/or selling Alphatec's competitive products within [Kormanis's] former InoSpine territor[y]"  (Document No. 1, ¶ 39) has no factual support in the Complaint.   The Complaint does not allege that any surgeon-customer used Alphatec products *instead of* InoSpine products, nor does it allege that any surgeon-customer purchased Alphatec products from Kormanis or as a

result of Kormanis's solicitation. NuVasive pleads no facts indicating that it lost any surgeon-customer's business or suffered any injury as a result of one surgeon-customer's allegedly using Alphatec products.

To demonstrate irreparable harm in this context, NuVasive would need to prove by affidavit or otherwise, that surgeon-customers choose which medical device to implant into a patient based not on which device best serves the patient's medical needs, but based on which brand their favorite salesperson currently represents. NuVasive has not presented, and is not expected to present, the affidavit of any physician attesting to the fact that he or she decided not to use a NuVasive device and used an Alphatec device instead based on a personal relationship with Kormanis and not on which device was best indicated for the patient's medical needs.

Furthermore, NuVasive's Complaint fails to state any facts supporting a finding that monetary relief would not be appropriate. Courts have found monetary relief inappropriate when the non-moving party takes advantage of its "intimate knowledge of the business operations or personal association with customers" in order to "gain an unfair advantage" (*Q.S.P., Inc. v. Hair*, 566 S.E.2d 851, 854 (2002) (*citations omitted*)) or when the non-moving party stands poised to "publicly disclose...confidential and proprietary information to...competitors." *Sirota Dental,* No. 3:14-CV-714 (W.D.N.C. January 20, 2015). In the present case, however, NuVasive's Complaint does not allege that Kormanis possesses any intimate knowledge of the business or confidential or proprietary information,[4] nor does it allege any personal association between Kormanis and any customer that would lead to an unfair advantage. Any alleged harm NuVasive might suffer would be quantifiable by examining relevant sales records.

---

[4] In Exhibit 2 to NuVasive's Memorandum, the "Declaration of Jim Hens," the Vice President of Sales-Atlantic for NuVasive avers that "NuVasive grants its sales force access to and knowledge of its trade secrets and proprietary information so that they are able to favorably represent NuVasive to its customers…These sales agents are the 'face' of NuVasive to its customers…" (Document No. 9-2, ¶¶ 3-4.) The affidavit provides no specific facts relevant to NuVasive's claim for injunctive relief as to Defendant Kormanis.

NuVasive's claims of imminent and irreparable harm lack a factual basis, and therefore NuVasive fails the second requirement for a preliminary injunction, that it demonstrate the likelihood of immediate, irreparable harm.

**D.    Plaintiff has failed to demonstrate that the "balance of equities tips in its favor**

When ruling on a Motion for a Preliminary Injunction, the court only considers the balance of the equities if the moving party has demonstrated by clear proof that it is likely to succeed on the merits and that it will suffer irreparable harm without the injunction. *The Real Truth about Obama*, 575 F.3d 342, 347 (4th Cir. 2009). NuVasive has provided no facts indicating it will face a hardship without an injunction. In fact, the Complaint alleges that Kormanis's departure from InoSpine "left NuVasive with insufficient sales personnel to fully service its business in [Kormanis's] sales territory." (Document No. 1, p. 8, ¶ 35.) Without sales personnel, NuVasive could not service the restricted territory even if Kormanis were enjoined from doing so, which would leave surgeon-customers in the restricted territory without the ability to obtain medically necessary devices.

Furthermore, when a party seeks equitable relief, such as a preliminary injunction, that party must approach the court with clean hands. *Combined Ins. Co. v. McDonald*, 243 S.E.2d 817 (N.C. Ct. App. 1978). In the present case, NuVasive seeks to impose restrictions on Kormanis that violate North Carolina law and public policy, as they restrict far more conduct than is necessary to protect InoSpine's legitimate business interests.

**E.    Plaintiff has failed to demonstrate that "injunctive relief would be in the public interest.**

Fourth and finally, NuVasive has failed to demonstrate that granting injunctive relief in this case serves the public interest. NuVasive has failed to demonstrate that the restrictions are

reasonably necessary to protect its legitimate business interests, and therefore to impose the restrictions on Kormanis would act as an unlawful restraint on trade, in violation of North Carolina public policy. Because enforcement of the restrictions would violate North Carolina's strong public policy against unlawful restraints on trade, it is in the public interest for the Court to deny NuVasive's motion for a preliminary injunction against Kormanis.

<u>Conclusion</u>

For the reasons set forth herein, Defendant Kenneth Kormanis respectfully requests the Court deny Plaintiff NuVasive's Motion for a Preliminary Injunction against him.

---

**CERTIFICATE OF WORD COUNT**

The undersigned hereby certifies that this Memorandum complies with Local Rule 7.3(d)(1), and the total word count is 6,144. In making this certification, the undersigned relies on Microsoft Word's word count feature.

---

THIS THE 10TH DAY OF MAY, 2018.

**SEIFERFLATOW, PLLC**

**By:** **S/ MATHEW E. FLATOW_____**
MATHEW E. FLATOW
**NC State Bar No. 35282**
**Counsel for Defendant Kenneth Kormanis**
**2319 Crescent Avenue**
**Charlotte, North Carolina 28207**
**(704) 512 0606**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on May 10, 2018 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties indicated on the electronic filing receipt.

**Christopher W. Cardwell**
**Marshall T. McFarland**
Gullett, Sanford, Robinson & Martin, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
ccardwell@gsrm.com
tmcfarland@gsrm.com
*Counsel for Plaintiff*

**Jared E. Gardner**
**Tyler B. Peacock**
Gardner Skelton, PLLC
505 East Boulevard
Charlotte, NC 28203
jared@gardnerskelton.com
tyler@gardnerskelton.com
*Counsel for Defendant Michael Jones*

**Paul A. Capua**
Capua Law Firm, PA
164 Depot Street
Boone, NC 28607
service@capualawfirm.com
*Counsel for Plaintiff*

THIS THE 10TH DAY OF MAY, 2018.

SEIFERFLATOW, PLLC

By:      S/ MATHEW E. FLATOW