# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION
### CIVIL ACTION NO. 1:18-cv-00282

| | |
|---|---|
| **NuVasive, Inc.,** | |
| | |
| **Plaintiff,** | |
| | **Memorandum of Law in Support of** |
| **v.** | **Defendant Kenneth Kormanis's** |
| | **Motion to Dismiss for** |
| **Michael Jones** | **Failure to State a Claim** |
| **and** | |
| **Kenneth Kormanis,** | |
| | |
| **Defendants.** | |

COMES NOW Defendant Kenneth Kormanis ("Kormanis"), by and through the undersigned counsel, and submits this Memorandum of Law in Support of his Motion to Dismiss Plaintiff's Complaint for failure to state a claim on which relief can be granted.

## Nature of the Matter

Plaintiff NuVasive, Inc. ("NuVasive") manufactures medical devices sold by Defendant Kormanis's former employer InoSpine, LLC ("InoSpine"). (Document No. 1, ¶ 7.) Kormanis signed an employment agreement (the "Employment Agreement") with InoSpine (who is not a party to this action), but NuVasive brings the present suit, claiming it has the right to enforce certain terms of Kormanis's Employment Agreement

Case 1:18-cv-00282-CCE-LPA   Document 18   Filed 05/16/18   Page 1 of 23

as a "third party beneficiary."  (Document No. 1, ¶ 29.)  Because NuVasive has no legal authority to enforce the terms of his Employment Agreement with InoSpine and because NuVasive has failed to state a claim on which relief can be granted, Kormanis respectfully requests the Court grant his Motion to Dismiss.

## Standing

As a threshold issue, NuVasive's Motion for Preliminary Injunction should be denied because NuVasive lacks standing to seek the relief it requests.  NuVasive is not a party to the Employment Agreement between Kormanis and InoSpine, but rather seeks relief as an alleged third party beneficiary.  (Document No. 1, p. 7 ¶ 29.)  North Carolina courts do not recognize the right of any party other than an employer or the employer's successor in interest to enforce restrictive covenants, given that enforceability depends in large part on how closely tailored the restrictions are to the legitimate business interests of the employer.  (*See, e.g. Manpower of Guilford County, Inc. v. Hedgecock* 257 S.E.2d 109, 114 (N.C. Ct. App. 1979), *see also Philips Elec. North America Corp. v. Hope*, 631 F. Supp. 2d 705 (M.D.N.C. 2009).  NuVasive has provided the Court with no legal basis for the significant extension of state law required to endow third party beneficiaries to employment contracts the right to enforce restrictive covenants.

## Background

NuVasive's Complaint alleges the facts set forth herein, which are accepted as true for purposes of this Motion only.  Defendant Kenneth Kormanis ("Kormanis") became an employee of InoSpine, LLC ("InoSpine"), on or about February 17, 2014, and signed an

Employment Agreement with InoSpine. (Document No. 1, ¶ 14.) Kormanis resigned from InoSpine on March 3, 2018 (Document No. 1, ¶ 35), and NuVasive now alleges Kormanis is in violation of non-competition and non-solicitation obligations ("the restrictive covenants") contained in Kormanis's Employment Agreement with InoSpine. (Document No. 1, ¶ 40.)

The Complaint alleges on or about March 7, 2018, an unnamed InoSpine representative witnessed an unidentified "surgeon-customer" of NuVasive's mention he had known "for some time" about Kormanis' leaving InoSpine for Alphatec, and the surgeon-customer expressed interest in "giv[ing] Ken [Kormanis]'s stuff a try."[1] (Document No. 1, ¶ 42.) NuVasive also alleges on that same day, March 7, four (4) days after Kormanis terminated his employment, "the hospital calendar where the [surgeon-customer] operate[d] continued to reflect that Kormanis was responsible for providing the products the surgeon would utilize." (Document No. 1, ¶ 42.)

## Legal Standard

**Motion to Dismiss**

A motion to dismiss for failure to state a claim "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (*citing Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (4th Cir. 2006). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949

---

[1] In its Complaint and Memorandum, NuVasive seems to assume "Ken's stuff" refers to Alphatec products sold by Kormanis. For purposes of this Memorandum only, Kormanis does not dispute that assumption.

(2009) (*quoting Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955 (2007)). Although well-plead allegations will be accepted as true for purposes of deciding a motion to dismiss, the court "must disregard conclusory statements unsupported by factual allegations." *Performance Sales & Marketing, LLC v. Lowe's Companies, Inc.* No. 5:07-CV-140 (W.D.N.C. June 4, 2010). "[I]f no law exists to support the claim made, if sufficient facts to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim," the claim will be dismissed. *Claggett v. Wake Forest Univ.*, 486 S.E.2d 443, 446 (1997) (*quoting Burgess v. Your House of Raleigh, Inc.,* 388 S.E.2d 134, 136 (1990)).

## I.      Standing

As a threshold matter, a party must have standing in order to obtain relief in the courts. *Warth v. Seldin*, 422 US 490, 498-99 (1975). The purported plaintiff must be a "proper party to bring the suit." *McBurney v. Cuccinelli*, 616 F. 3d 393, 402 (N.C. Ct. App. 2010) (*quoting White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 460 (4th Cir. 2005)). A third party beneficiary has standing to sue "for breach of a contract executed for [its] benefit" if it can prove a valid enforceable contract existed between two parties and both parties intended the contract would "direct[ly], and not incidental[ly], benefit" the third party beneficiary. *Hoisington v. ZT-Winston-Salem Associates,* 516 S.E.2d 176, 180-181 (N.C. Ct. App. 1999) (*citations omitted*)). When considering whether a third party can enforce a contract between two other parties, the court must strictly construe the terms of

the contract "against the party seeking enforcement." *Raritan River Steel Co. v. Cherry*, 407 S.E.2d 178, 182 (N.C. 1991) (*citations omitted*)).

North Carolina law prohibits contracts in restraint of trade, but does permit restrictive covenants between employers and employees, provided the restrictions meet certain requirements and are designed to protect the legitimate business interests of the employer. *VisionAIR, Inc. v James*, 606 S.E.2d 359, 362 (N.C. Ct. App. 2004) (*quoting Manpower of Guilford County, Inc. v. Hedgecock* 257 S.E.2d 109, 114 (N.C. Ct. App. 1979)). Because restrictive covenants "facilitate and protect" an employer's investment in its business, they can be assigned or transferred like any other asset to a successor in interest upon the sale of the business. *Reynolds v. Tart*, 955 F. Supp. 547, 557 (W.D.N.C. 1997).

## II.   Breach of Contract

To state a claim for breach of contract, the plaintiff must allege facts indicating a) the existence of a valid, enforceable contract between the parties, b) a breach of that contract by defendant. *Poor v. Hill*, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000) (*citation omitted*). A breach is only actionable if it is material, that is, if it "goes to the very heart of the agreement, or can be characterized as a substantial failure to perform." *Static Control Components, Inc. v. Intelligent Office Products, Inc.* No. 1:07-CV-00281 (M.D.N.C., July 1, 2008) (*quoting Long v. Long*, 588 S.E.2d. 1 (2003) (*further citations omitted*)).

A.    Existence of a Valid, Enforceable Contract

Employers seeking to prove the validity and enforceability of restrictive covenants in North Carolina face a high bar, as such restrictions are disfavored under modern law. *VisionAIR, Inc. v. James*, 606 S.E.2d 359, 362 (N.C. Ct. App. 2004).  Courts scrutinize restrictive covenants closely, and will strictly construe any ambiguity against the drafting party.  *Washburn v. Yadkin Valley Bank & Trust*, 660 S.E.2d. 577, 584 (N.C. Ct. App. 2008) (*citing Reichhold Chem., Inc. v. Goel*, 555 S.E.2d 281 (2001)). To withstand this scrutiny, restrictive covenants must be in writing, 1) part of a valid employment agreement, 2) supported by consideration, 3) reasonable as to time and territory, and 4) restrictive of no more conduct than necessary to protect the employer's legitimate business interests.  *Philips Elec. North America Corp. v. Hope*, 631 F. Supp. 2d 705, 715 (M.D.N.C. 2009) (*citing A.E.P. Indus., Inc. v. McClure*, 302 S.E.2d 754, 760 (N.C. 1983)).

1.    A restrictive covenant must be part of a valid employment agreement. North Carolina courts will not enforce a restrictive covenant that "appears to be the main purpose of the contract, and not subordinate thereto."  *Collier Cobb Associates, Inc. v. Leak*, 300 S.E.2d 583, 585 (N.C. Ct. App. 1983) (*quoting Wilmar, Inc. v. Liles*, 185 S.E.2d 278, 280 (N.C. Ct. App 1971) (*cert. denied* January 28, 1972).

2.    A restrictive covenant must be supported by valid consideration.  An offer of new employment can serve as consideration for restrictive covenants contained in an employment agreement.  *Superior Performers, Inc. d/b/a National Agents Alliance v.*

*Meaike,* No. 1:13-CV-1149 (M.D.N.C. April 11, 2014) (*quoting Hejl v. Hood, Hargett & Assocs., Inc.* 674 S.E.2d 425, 428 (2009) (*citation omitted*)). Restrictive covenants independent of an initial employment contract, however, require additional consideration. *Milner Airco, Inc. v. Morris*, 433 S.E.2d 811, 813 (N.C. Ct. App. 1993) (*citation omitted*). If an employer retains discretion as to whether to provide the purported consideration, then such consideration is illusory and will not support a restrictive covenant. *Young v. Mastrom, Inc.*, 392 S.E.2d 446, 449 (N.C. Ct. App. 1990) (*citing Whittaker General Medical Corp. v. Daniel*, 379 S.E.2d 824 (1989)).

3.   A restrictive covenant must be reasonable as to time and territory. With respect to time and territory, courts determine reasonableness by balancing the duration of the restriction with its breadth, such that a broad-ranging restriction on territory will only be reasonable for a short period of time and a long-lasting restriction will only be considered reasonable if it applies to a small geographic area. *Philips Elec. North America Corp. v. Hope*, 631 F. Supp.2d 705, 715 (M.D.N.C. 2009) (*citing Kinesis Adver., Inc. v. Hill*, 652 S.E.2d 284, 294 (N.C. Ct. App. 2007).) Furthermore, "the scope of the geographic restriction must not be any wider than is necessary to protect the employer's reasonable business interests." *Okuma America Corp. v. Bowers,* 638 SE 2d 617, 620 (N.C. Ct. App.2007) (*quoting Precision Walls, Inc. v. Servie*, 568 S.E.2d 267, 273 (N.C. Ct. App. 2002)) Therefore, to demonstrate the reasonableness of a geographic restriction, "an employer must first show where its customers are located and that the geographic scope of the covenant is necessary to maintain those customer relationships."

*Hejl v. Hood, Hargett & Assocs., Inc.*, 674 SE 2d 425, 429-30 (N.C. Ct. App. 2009) (*quoting Hartman v. W.H. Odell & Assocs., Inc.* 450 S.E.2d 912, 917 (N.C. Ct. App. 1994))

    4.    A restrictive covenant may forbid no more conduct than is necessary to protect the employer's legitimate business interests.  A restrictive covenant that is broader than necessary to reasonably protect the employer's business violates the public interest and will not be enforced.  *Asheboro Paper and Packaging, Inc. v. Dickinson*, 599 F. Supp. 2d 664, 674 (M.D.N.C. 2009) (*citing Whittaker Gen. Med. Corp. v. Daniel*, 379 S.E.2d 824, 828 (N.C. 1989)).  North Carolina courts will not rewrite an overly broad restrictive covenant, even if the document expressly permits such amendment, however if the restrictive covenant "sets out both reasonable and unreasonable restricted territories," the court may strike out, or "blue pencil" the unreasonable portions.  *Beverage Systems of the Carolinas, LLC v. Associated Beverage Repair, LLC* 784 S.E.2d 457, 461-62 (N.C. 2016) (*citing Welcome Wagon Int'l, Inc. v. Pender*, 120 S.E.2d 739, 742 (N.C. 1961)).

    B.    Breach of Contract

    "[F]or a breach of contract to be actionable, it must be a material breach, one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform."  *Long v. Long,* 588 S.E.2d 1, 4 (2003) (*citation omitted*).

# Legal Argument

Because NuVasive has failed to state a plausible claim for relief against Kormanis, its Complaint as to Kormanis should be dismissed.

## I.     Standing

As a third party beneficiary to the Employment Agreement, NuVasive lacks standing to enforce the restrictive covenants. North Carolina does not recognize the right of any party other than an employer or the employer's successor in interest to enforce restrictive covenants, as restrictive covenants are only enforceable to the extent they protect the legitimate business interests of the employer.

North Carolina courts will only enforce restrictive covenants to the extent they protect the employer's legitimate business interests, and therefore have only allowed enforcement by employers or their successors in interest. *See, e.g. Reynolds v. Tart*, 995 F. Supp. 547, 552-53 (W.D.N.C. 1997). Although NuVasive purports to share some legitimate business interests with InoSpine, NuVasive is not a successor in interest because the interests of the two companies with respect to Kormanis's Employment Agreement are not one in the same. For example, InoSpine only purports to grant NuVasive the right to enforce five (5) of the nineteen (19) provisions in Kormanis's Employment Agreement. (Document No. 1, p. 35, ¶ 10.) Other provisions of Kormanis's Employment Agreement inure to InoSpine's benefit and to the detriment of NuVasive. (*See, e.g.* Document No. 1, p. 33, ¶8(A)(2), "[Employee is restricted from] providing competing services directly to or on behalf of NuVasive, Inc., or being employed in a

competitive capacity by NuVasive, Inc."). InoSpine's interests differ from NuVasive's in that InoSpine distributes products made by companies other than NuVasive. (*See* Document No. 1, p. 28, ¶ B(5)(i)-(ii).) In fact, NuVasive's Complaint contains no facts indicating Kormanis sold or distributed NuVasive products during his time with InoSpine.

Because restrictive covenants can protect and enhance the assets of a business, they are assignable in conjunction with a sale of business. *Reynolds and Reynolds Company v. Tart*, 955 F. Supp. 547, 558 (W.D.N.C. 1997). An employer's successor in interest by definition assumes the employer's business interests, and therefore assumes the legal right to enforce restrictive covenants intended to protect those legitimate business interests. (*Id.*) A third party beneficiary cannot claim it has the same business interests as the employer, especially not when, as in the present case, the Employment Agreement at issue recites diverging interests between the employer and the third party beneficiary.

North Carolina courts have no precedent for allowing third party beneficiaries to enforce restrictive covenants that protect interests other than those of the employer. *See Manpower of Guilford County, Inc. v. Hedgecock*, 257 S.E.2d 109 (1979) (refusing to express an opinion as to whether a restrictive covenant would be enforceable to protect the interests of a third party beneficiary and noting in dicta, that it reserved the question of whether third party beneficiaries can enforce restrictive covenants until the issue "properly is brought before this Court"). Because NuVasive, as a third party beneficiary,

cannot legally enforce the restrictive covenants at issue as to Kormanis, NuVasive's Complaint fails to state a claim for relief and should be dismissed.

## II.     Breach of Contract

NuVasive alleges two claims for breach of contract, the first concerns the notice provision of the Employment Agreement, and the second concerns the restrictive covenants. (Document No. 1, pp. 11-12.) In both cases, NuVasive has failed to state a claim for which relief can be granted.

A.     NuVasive has no legal right to enforce the notice period and a breach of the notice period is not material.

NuVasive first claims Kormanis breached his Employment Agreement by "…failing to provide the requisite thirty days' notice" prior to his resignation. (Document No. 1, ¶¶ 60-64.) This allegation fails to state a claim for relief for at least two reasons. First and foremost, the "third party beneficiary" contract provision under which NuVasive claims the right to bring this action does not permit NuVasive to seek relief for breach of the notice period, and second, the alleged failure to provide notice does not constitute a material breach sufficient to state a claim for relief.

First, NuVasive does not have standing to enforce the notice period. NuVasive claims third party beneficiary status pursuant to Section 10 of Kormanis's Employment Agreement, which purports to bestow "full contractual and other rights to directly [sic] enforce the provisions set forth in Sections 8, 9, 10, 11, and 13 herein." (Document No. 1, p. 35, ¶ 10.) Section 6 contains the requirement that a party give thirty days' notice

prior to terminating the Employment Agreement. (Document No. 1, pp. 30-32, ¶ 6.) Even if NuVasive established its status as a lawful third party beneficiary with standing to seek relief, the Court could not grant NuVasive the right to enforce more of the Employment Agreement than the terms of the document allow. Because the Employment Agreement only permits NuVasive to enforce the provisions in Sections 8, 9, 10, 11, and 13, and the notice period falls in Section 6, NuVasive has no legal right to enforce the notice period.

Second, even if NuVasive established its right to enforce the notice period provision, Kormanis's alleged failure to give thirty days' notice does not constitute a material breach because it does not defeat the entire purpose of the Employment Agreement. *See Combined Insurance Company of America v. McDonald*, 243 S.E.2d 817, 821 (N.C. Ct. App. 1978) (Where contract at issue contained a severability clause and specified that the restrictive covenants were "of the essence" but the notice period was not of the essence, failure to abide by the notice period will not constitute a material breach such that it would prevent the party who failed to give notice from seeking relief in a court of equity.) North Carolina courts have held that an employer's failure to honor a notice period in terminating an employee does not constitute a material breach does not as a matter of law. *Combined Insurance Company of America v. McDonald*, 243 S.E.2d 817, 821 (1978). If an employer's failure to provide notice does not constitute a material breach, it logically follows that an employee's failure to do the same will likewise be considered immaterial. Furthermore, certain terms of Kormanis's Employment

Agreement are termed "of the essence," and the notice period is not among them. *See Combined Insurance Company of America v. McDonald*, 243 S.E.2d 817, 821 (N.C. Ct. App. 1978). Because Kormanis's lack of notice to InoSpine was not a material breach of the Employment Agreement, NuVasive has failed to state a claim for relief with respect to breach of the notice provision.

B.     NuVasive's Complaint fails to state a claim for relief on its face because the Restrictive Covenants are Void and Unenforceable as a Matter of Law

The restrictive covenants at issue are unenforceable under North Carolina law because they are: 1) Not part of an employment agreement, 2) Not supported by valid consideration, 3) Not reasonable as to time and territory, and 4) Far more restrictive than necessary to protect InoSpine's legitimate business interests. Because the restrictive covenants at issue are unenforceable, NuVasive has failed to state a claim on which relief can be granted.

First, the restrictive covenants at issue are unenforceable because they are not part of an employment agreement as contemplated by the case law. *See, e.g. Wilmar, Incorporated v. Liles*, 185 S.E.2d 278 (N.C. Ct. App.1971); *see also AEP Indus., Inc. v. McClure,* 302 S.E.2d 754, 761 (N.C. 1983). Although the restrictive covenants at issue appear in the same document as Kormanis's Employment Agreement, by their very terms, the restrictive covenants separate themselves from the rest of the Employment Agreement. Section 21 of Kormanis's Employment Agreement states as follows:

The restrictive covenants upon the Employee set forth herein are of the essence of this Agreement; **they shall be construed as independent of any other provision in this Agreement.** The existence of any claim or cause of action of the Employee against Employer, whether predicated on this Agreement or not, shall not constitute a defense to the enforcement by Employer of the restrictive covenants contained herein.

(Document No. 1, ¶ 38, emphasis added.)

An offer of new employment will serve as consideration for "an otherwise valid covenant not to compete contained in [an] initial employment contract," but to impose restrictive covenants independent of the employment contract on an employee, the employer must offer additional consideration. *See, e.g. Young v. Mastrom, Inc.* 392 S.E.2d 446, 448 (*disc. rev. denied*, 397 S.E.2d 239 (1990)); *Superior Performers, Inc. v. Meaike*, No. 1:13-CV-1149 (M.D.N.C. April 11, 2014) (*quoting Hejl v. Hood, Hargett & Assocs., Inc.* 674 S.E.2d 425, 428 (N.C. Ct. App. 2009)). Kormanis entered into the Employment Agreement around the time he began employment, and therefore InoSpine's offer of employment could theoretically serve as consideration for the Employment Agreement itself.[2] The restrictive covenants, however, according to Section 21, declare themselves independent of the Employment Agreement, and therefore must be supported by independent consideration from InoSpine. Neither InoSpine nor NuVasive offered Kormanis consideration to support the restrictive covenants it now seeks to enforce.

It is a basic principle of contract law that if one party to a contract commits a material breach, the other party is excused from its obligation to perform further under

---

[2] Kormanis does not concede that InoSpine's offer of employment constituted adequate consideration to support the restrictive covenants.

the contract. *See, e.g. Millis Const. Co. V. Fairfield Sapphire Val., Inc.* 358 S.E.2d. 566, 570 (N.C. Ct. App.1987); *see also Boss Urgent Care, PLLC, v. Urgent Care Works, LLC.* No. 7:11-CV-00071 (E.D.N.C. May 18, 2012) (*quoting McClure Lumber Co. v. Helmsman Const., Inc.,* 585 S.E.2d 234, 239 (2003) (*citations omitted*)). Courts will decline to enforce even restrictive covenants which by their terms are severable, "if the party seeking to enforce them has engaged in a breach which is material and [which] goes to the heart of the contract." *Combined Ins. Co. v. McDonald*, 243 S.E.2d 817, 819 (N.C. Ct. App. 1978). According to the terms of Section 21 of the Employment Agreement, however, even a complete and total breach by InoSpine of every other term of the Employment Agreement would not relieve Kormanis of his obligation to abide by the restrictive covenants, nor would a material breach by InoSpine prevent NuVasive from seeking to enforce the restrictions. Such a result defies principles of law and equity. If the restrictive covenants would endure despite a material breach of the Employment Agreement, then the restrictive covenants are not a part of the Employment Agreement, and therefore cannot be enforced.

Second, the restrictive covenants at issue are not valid or enforceable because they are not supported by valid consideration. Even if the restrictive covenants were considered part of Kormanis's Employment Agreement, the Agreement itself is not supported by adequate consideration. An offer of at-will employment can serve as consideration for an employee's entering into a restricted covenant, *Farr Assoc. v. Baskin*, 530 S.E.2d 878, 881 (N.C. Ct. App. 2000), but in this case, InoSpine's offer was

illusory. InoSpine did not guarantee Kormanis a salary or even a fixed rate of commission. (Document No. 1, ¶¶ 27-41.) The Employment Agreement allowed InoSpine to amend or reduce Kormanis's territory at any time. (*Id.*) Under the terms of the agreement, even the purported notice period was meaningless, because InoSpine could take away all of Kormanis's territory or reduce his commission rate to 0% without notice, which would effectively terminate Kormanis's "employment."

In *Wilmar v. Liles*, an employer offered its existing employees a "profit sharing plan" as consideration for their signing a restrictive covenant. *Wilmar v. Liles*, 185 S.E.2d 278 (N.C. Ct. App. 1971), *cert. denied*, 186 S.E.2d 178 (N.C. 1972). When the employer tried to enforce the restrictive covenant, the Court of Appeals refused, holding that because the profit sharing plan allowed the employer to reduce or even eliminate its rate of contribution at any time, it did not actually bind the employer to any obligation and could not serve as consideration for the restrictive covenant. (*Id.*) Without consideration, the restrictive covenant was void and unenforceable. (*Id.*) InoSpine's offer of "employment" is much like the profit sharing plan in *Wilmar*. The Employment Agreement imposed no obligations on InoSpine; InoSpine was not obligated to pay Kormanis anything or allow him access to any sales territory. Although the Employment Agreement does recite language about granting Kormanis access to proprietary and confidential information, NuVasive's Complaint contains no facts indicating that Kormanis received any such confidential information. Courts have consistently declined

to enforce restrictive covenants based on illusory consideration for legal and equitable reasons, as the court in *Milner Airco* reflected:

> Without guaranteeing to the [employees] one day's work, without the obligation of the [employer] to employ them or pay them anything, ... the [employees] are induced to sign a paper which, while it has the general appearance of a contract, but keeps the promise to the ear while it breaks it to the hope. Such a contract, wanting in mutuality, presenting no equitable considerations, a court of equity will not enforce.

*Milner Airco, Inc. v. Morris*, 433 S.E.2d 811, 814 (1993) (*quoting Wilmar*, 185 S.E.2d 278 (*quoting SuperMaid Cook-Ware Corporation v. Hamil*, 50 F.2d 830 (5th Cir. 1931)).

Third, the restrictive covenants at issue are so vague that they are unenforceable, or in the alternative, they are not reasonable as to time and territory. Because the restrictive covenants at issue fail to define the restricted territory, they are unduly vague and therefore unenforceable. The Employment Agreement purports to limit Employee's post-employment activities only in "Employee's Territory," but provides no clarity as to whether the restricted territory is Employee's Territory at the time of hire, Employee's Territory at some point during employment, or Employee's Territory at the termination of employment. The Employment Agreement contemplates the amendment of Employee's Territory at least three (3) times, the first permitting amendment "upon mutual agreement of the parties" (Document No. 1, p. 27, ¶ 1(A)), the second "by Employer" (Document No. 1, p. 33, ¶ 8(A)), and the third time without reference to who may amend Employee's Territory (Document No. 1, p. 40). Not only does the Employment Agreement fail to clarify how changes to the Employee's Territory can be made, but it also fails to clarify

which iteration of Employee's Territory constitutes the restricted territory for post-employment purposes. Because the Employment Agreement does not sufficiently define the territorial restriction, it is unduly vague and therefore unenforceable.

In the alternative, the restrictive covenants are unenforceable because the territorial restriction is overly broad. To demonstrate that a geographic restriction is reasonable, "an employer must first show where its customers are located and that the geographic scope of the covenant is necessary to maintain those customer relationships." *Hartman v. Odell*, 450 S.E.2d 912, 917 (N.C. Ct. App. 1994). NuVasive has not identified the location of a single one of InoSpine's customers, nor has it given any indication of why the geographic scope of the restrictive covenants is necessary to maintain InoSpine's relationships. NuVasive claims ownership of the customer relationships InoSpine employees have with surgeon-customers, but such ownership interest has not been recognized by North Carolina law.

Fourth, the restrictive covenants restrict far more conduct than necessary to protect InoSpine's legitimate business interests. In particular, the expansive scope of the "non-solicitation" provision actually functions not as a non-solicitation agreement, but as a worldwide ban on competition.

> It is the specific intent of the parties that Employee shall be restricted from soliciting or accepting competing business regarding the same or similar products and/or services as Employee sold or provided while employed by Employer or products or services that compete with the products and/or services as Employee sold and/or provided while employed by Employer.

(Document No.1, p. 34, ¶ 8(B).) This provision incorporates neither the two-year temporal restriction nor the "Employee's Territory" purported geographic restriction. By including a prohibition on "accepting" competing business, InoSpine transforms the foregoing provision from a non-solicit to a non-compete, which by its terms would prohibit Kormanis from accepting business from a competitor of InoSpine's anywhere in the world at any time in the future. NuVasive has not alleged in its facts justifying such a broad geographic and temporal scope.

Furthermore, NuVasive's attempt to prohibit Kormanis from accepting competing business impinges on the rights of individuals who are not parties to the Employment Agreement, in violation of North Carolina law prohibiting monopolies and restraints of trade. *See* N.C. Gen. Stat. §75-1 *et seq*. In the context of the present Employment Agreement, such a restriction would prevent surgeon-customers located in "Employee's Territory" from exercising their professional judgment in determining which brand of medical device is best for their patients, if that brand were anything other than the brand sold by InoSpine.

The restrictive covenants' overbreadth cannot be saved by the judicial revision referred to in Sections 8(C) and 9(C).

> If any provision of this Section 8 relating to the time period, geographic area, or scope of the restrictive covenants shall be declared by a court of competent jurisdiction to exceed the maximum time period, geographic area, or scope, as applicable, that such court deems reasonable and enforceable, said time period, geographic area, or scope shall be deemed to be, and thereafter shall become, the maximum time period, scope, or largest geographic area that such court deems reasonable and

enforceable and this Agreement shall automatically be considered to have been amended and revised to reflect such determination.

(Document No. 1, p. 33, ¶8(C).)[3]  In 2016, the North Carolina Supreme Court rejected this type of provision in restrictive covenants, holding that parties to a contract cannot "assign...their drafting duties...to the court." *Beverage Sys. of the Carolinas,* 784 S.E.2d at 463.  Territorial limits in a restrictive covenant will be "enforced as written or not at all, for courts will not carve out reasonable subdivisions of an otherwise overbroad territory." (*Id.*)

NuVasive has failed to allege facts indicating Kormanis breached the restrictive covenants.  NuVasive's Complaint alleges that Kormanis is "promoting and/or selling Alphatec's competitive products within his former InoSpine territory" (Document No. 1, ¶¶ 67-68), but provides no facts to support this conclusory allegation.

NuVasive's Complaint alleges that an unnamed "surgeon-customer" of InoSpine's "utilizes Alphatec products promoted by Kormanis," (Document No. 1, ¶ 44) but does not allege Kormanis solicited the unnamed surgeon-customer or is in any way responsible for that surgeon-customer's alleged use of Alphatec products.  NuVasive's Complaint claims an InoSpine employee noticed Kormanis's name remained on a hospital calendar four (4) days after Kormanis left InoSpine (Document No. 1, ¶ 42), but NuVasive fails to explain how the calendar implicates Kormanis in any way.  On the contrary, the surgeon-customer's contemporaneous comment, "I need to give [Kormanis's] stuff a try" (*Id.*),

_____

[3] Paragraph 9(C) is substantially similar, omitting only the words "geographic area."

indicates at that time, the surgeon-customer was not using Alphatec products sold by Kormanis.

NuVasive's Complaint concludes that Kormanis is violating his restrictive covenants (Document No. 1, ¶ 40) but pleads no facts in support of that conclusion. Such "naked assertions of wrongdoing" without well-pleaded facts fail to cross the threshold from possible into probable, and therefore fail to state a claim on which relief can be granted. *Francis v. Giacomelli* 588 F.3d 186, 193 (4th Cir. 2009) (*quoting Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) (*internal quotation marks omitted*)).

## Conclusion

For the reasons set forth herein, Defendant Kenneth Kormanis respectfully requests the Court grant his Motion to Dismiss Plaintiff's Complaint for failure to state a claim.

---

**CERTIFICATE OF WORD COUNT**

The undersigned hereby certifies that this Memorandum complies with Local Rule 7.3(d)(1), with a total word count of  5,092.  In making this certification, the undersigned relies on Microsoft Word's word count feature.

---

THIS THE 16TH DAY OF MAY, 2018.

SEIFERFLATOW, PLLC

By:     /S/ MATHEW E. FLATOW
        MATHEW E. FLATOW
        NC State Bar No. 35282
        Counsel for Defendant Kenneth
        Kormanis
        2319 Crescent Avenue
        Charlotte, North Carolina 28207
        (704) 512 0606


By:     /S/ ELIZABETH VENNUM
        ELIZABETH VENNUM
        NC State Bar No. 49747
        Counsel for Defendant Kenneth
        Kormanis
        2319 Crescent Avenue
        Charlotte, North Carolina 28207
        (704) 512 0606

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on May 16, 2018 with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties indicated on the electronic filing receipt.

**Christopher W. Cardwell**
**Marshall T. McFarland**
Gullett, Sanford, Robinson & Martin, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
ccardwell@gsrm.com
tmcfarland@gsrm.com
*Counsel for Plaintiff*

**Paul A. Capua**
Capua Law Firm, PA
164 Depot Street
Boone, NC 28607
service@capualawfirm.com
*Counsel for Plaintiff*

**Jared E. Gardner**
**Tyler B. Peacock**
Gardner Skelton, PLLC
505 East Boulevard
Charlotte, NC 28203
jared@gardnerskelton.com
tyler@gardnerskelton.com
*Counsel for Defendant Michael Jones*

THIS THE 16TH DAY OF MAY, 2018.

SEIFERFLATOW, PLLC

By:     /S/ Elizabeth Vennum