UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
CIVIL ACTION NO. 1:18-CV-00282

| | |
|---|---|
| NUVASIVE, INC. | ) |
|     Plaintiff | ) ) ) |
| v. | ) ) |
| KENNETH KORMANIS, | ) ) |
|     Defendant, | ) ) |

### NUVASIVE, INC.'S MOTION AND MEMORANDUM FOR THE IMPOSITION OF SANCTIONS FOR SPOLIATION OF EVIDENCE

Comes Plaintiff, NuVasive, Inc. ("NuVasive"), by and through its counsel of record and pursuant to this Court's October 18, 2018, Order (Doc. 71), Federal Rule of Civil Procedure 37(e), and the inherent powers of this Court, respectfully moves for the imposition of sanctions against Defendant Kenneth Kormanis ("Defendant") for his spoliation of evidence. In support of this Motion, NuVasive states:

### I.    INTRODUCTION

On April 11, 2018, NuVasive sued Defendant and former-party Michael Jones ("Jones") for, among other things, violations of their non-solicitation and non-competition obligations. (*See generally* Compl., Doc. 1).[1] Despite being on notice of his obligation to preserve documents and communications, Defendant willfully destroyed text messages and emails that are relevant to NuVasive's claims. The Court should therefore sanction Defendant by imposing an

---

[1] Defendant breached (and is breaching) non-competition and non-solicitation obligations owed to NuVasive by promoting and selling products manufactured and distributed by Alphatec Spine, Inc. ("Alphatec") within his former sales territory and soliciting the former surgeon-customers he serviced on NuVasive's behalf – both individually and through a third-party representative. (Am. Compl., Doc. 82, ¶¶ 60-66). Further, Defendant is tortiously interfering with the contractual obligations Jones owes to NuVasive, unfairly competing with NuVasive, and conspiring with others to do so. (Id. at ¶¶ 67-85).

1

adverse inference that the lost communications were unfavorable to Defendant, instruct the jury of this inference at any trial in this matter, and sanction Defendant in any other manner that the Court deems just and proper.

## II. RELEVANT FACTS AND PROCEDURE[2]

### A. NuVasive Commences This Suit When Defendant Began Breaching His Contractual Obligations.

On March 3, 2018, Defendant resigned from his employment with InoSpine, LLC ("InoSpine"), which is an exclusive distributor of NuVasive's products in the North Carolina market. (Am. Compl., Doc. 82, ¶¶ 33, 11). InoSpine immediately informed Defendant (through his counsel) of, among others, his obligation to preserve evidence relevant to any litigation involving his restrictive covenants vis-à-vis his new employment with Alphatec. NuVasive attaches a copy of this March 9, 2018, correspondence as **Exhibit A**.

NuVasive, as third-party beneficiary under Defendant's Employment Agreement with InoSpine (the "Employment Agreement"), filed suit against Defendant and Jones on April 11, 2018.[3] (Compl., Doc. 1). NuVasive served Defendant with its Complaint and summons on April 26, 2018. Counsel for Defendant entered his appearance before this Court on Defendant's behalf on April 25, 2018.[4] (Not. of Appearance, Doc. 10).

### B. The Discovery Process.

NuVasive served its First Set of Requests for Production of Documents on Defendant on July 18, 2018, seeking, among other things:

---

[2] The Court is well-versed on the facts and procedure underlying this matter. Accordingly, NuVasive endeavors to only detail those items necessary for consideration of this Motion.

[3] All claims asserted against or by Jones were dismissed with prejudice via a Stipulation of Dismissal entered September 7, 2018. (Doc. 59).

[4] NuVasive notes that counsel who entered his appearance is the same counsel to whom **Exhibit A** was directed.

2

> (i) communications Defendant exchanged with surgeons and/or medical facilities to whom he sold NuVasive products in 2017 and 2018;
>
> (ii) communications Defendant exchanged with Alphatec prior to resigning his InoSpine employment;
>
> (iii) communications Defendant exchanged with Alphatec after resigning his InoSpine employment that "reference or relate to NuVasive, InoSpine, or the surgeons and medical facilities to whom [Defendant] marketed NuVasive products in calendar years 2017 and 2018;"
>
> (iv) communications Defendant exchanged with Jones;
>
> (v) communications Defendant exchanged with two specific, former surgeon-customers from January 1, 2018, through the present;
>
> (vi) communications Defendant exchanged with three specific Alphatec representatives: Elizabeth Lukianov ("Lukianov"), Craig Hunsaker ("Hunsaker"), and Pat Miles ("Miles") from January 1, 2017, through the present; and
>
> (vii) communications Defendant exchanged with another former InoSpine sales representative who resigned her employment to join Alphatec after the lawsuit was initiated.

(Pl.'s 1st Req. Produc. Nos. 6, 9-13, 17-19, 25, attached as **Exhibit B**). Defendant responded to NuVasive's requests for production on September 4, 2018, stating with respect to the majority of the requests above:

> . . . As for text messages, due to a space limitation on his iPhone, Defendant Kormanis only is able to keep data on his device from the previous 30 days. In order to comply with the litigation hold letter, Defendant Kormanis backs up his iPhone to his MacBook Air so that all messages are preserved. However, at this time, Defendant Kormanis has not been able to retrieve said messages from his personal device. Once these communications are retrieved, they will be produced.

(Def.'s Resp. Req. Produc. Nos. 6, 9-13, 17-19, attached as **Exhibit C**). Defendant followed his responses with two document productions totaling roughly 1,600 pages on September 5, 2018. After reviewing Defendant's production and noticing several deficiencies – namely the complete lack of text message communications and any communications pre-dating his hire by Alphatec – counsel for NuVasive emailed counsel for Defendant to address these issues. (Declaration of C.

Cardwell, ¶ 3, Ex. 1, attached as **Exhibit D**). Defendant's counsel indicated that text messages were being retrieved from Defendant's devices and would be produced. (**Id.**)

C. <u>**Productions from Jones and Verizon Wireless.**</u>

Contemporaneous to requesting documents from Defendant, NuVasive sought documents from two sources relevant to this Motion: (i) former-party Jones; and (ii) Verizon Wireless ("Verizon"). Jones produced documents pursuant to written discovery served upon him that the parties agreed he would produce despite being dismissed from the litigation on September 7, 2018. (**Id.** at ¶ 5). Among Jones' document production were multiple iMessage "threads." (**Id.**) For example, one of these "threads" was amongst Jones, Defendant, Alphatec Senior Director Ali Shorooghi ("Shorooghi"), and Alphatec Regional Business Manager Ashley Warwick ("Warwick"). (**Id.**)

NuVasive also subpoenaed the cellular telephone records of Defendant and Jones from Verizon, which were produced on August 16, 2018. (**Id.** at ¶¶ 4, 6). The records Verizon produced regarding Defendant's text message communications were in the form of an Excel spreadsheet containing, among other information: (1) the date the text message was sent; (2) the date the message was received; (3) the originating (i.e., sender's) phone number; and (4) the destination (i.e., recipient's) phone number. (**Id.** at ¶ 6).[5] The Verizon records revealed that Defendant communicated via text message with:

(i) the surgeon-customer identified in NuVasive's Request for Production No. 12 multiple times following his resignation from InoSpine on March 3, 2018 (**Id.** at ¶ 7(a));

(ii) the surgeon-customer identified in NuVasive's Request for Production No. 13 on a near-daily basis since January 1, 2018, including following his resignation from InoSpine (**Id.** at ¶ 7(b));

---

[5] Verizon neither retains nor produces the content of SMS/text messages sent to or received by its subscribers.

4

(iii) one of the surgeon-customers encompassed by NuVasive's Request for Production No. 6 on March 24, March 27, April 28, and July 11, 2018 (**Id.** at ¶ 7(c));

(iv) Alphatec's president and chief operating officer, Terry Rich ("Rich") via text message on May 26, 2018 (**Id.** at ¶ 7(d));

(v) with Greg Rhinehart ("Rhinehart"), Alphatec's Area Vice President of Sales on January 26, March 1, March 18, and March 22, 2018 (**Id.** at ¶ 7(e)); and

(vi) with Shorooghi on April 18, April 19, May 3, and June 2, 2018 (**Id.** at ¶ 7(f)).

Notably, the Verizon records do not accurately reflect any of the iMessage "threads" referenced *supra*. (**Id.** at ¶ 8). Accordingly, the only method to receive: (i) the content of the messages detailed in the Verizon records; and/or (ii) the existence and content of any of Defendant's iMessage text "threads" is from Defendant himself. (**Id.**)

### D. <u>Defendant Destroys Relevant Communications.</u>

On October 5, 2018, Defendant finally produced text message communications. (**Id.** at ¶ 9). However, absent from the production were any text messages prior to August 5, 2018. (**Id.**) NuVasive's counsel informed Defendant's counsel of this fact via email and requested an opportunity to discuss this issue. (**Id.** at ¶ 10, Ex. 2). During a telephone conversation on October 8, 2018, counsel for Defendant informed counsel for NuVasive that:

(i) Defendant set his iPhone to automatically delete text messages after thirty (30) days;

(ii) Defendant believed his text messages were being backed up;

(iii) Defendant's text messages were not, in fact, being backed up in any form; and

(iv) Defendant was unable to recover any text message communications prior to August 5, 2018.

(**Id.** at ¶ 10).

In addition to the text message communications Defendant willfully destroyed or allowed to be destroyed, he deleted the entirety of his InoSpine email account at some point close in time to his resignation from InoSpine on March 3, 2018. (**Id.** at ¶ 12). NuVasive, through significant time and expense, was able to recover some of these email communications, but it cannot be certain if those recovered communications are complete until it deposes Defendant. (**Id.**)

### III. APPLICABLE LAW

#### A. Spoliation in General.

"Spoliation of evidence is 'the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). "The duty to preserve evidence arises 'not only *during* litigation but also extends to that period *before* litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Jenkins v. Woody,* Civil Action No. 3:15cv355, 2017 U.S. Dist. LEXIS 9581, at *30 (E.D. Va. Jan. 21, 2017) (quoting *Silvestri*, 271 F.3d at 591).

A court's power to sanction a party for spoliation of evidence derives from (1) Federal Rule of Civil Procedure 37(e) and (2) the court's "inherent power . . . to redress conduct 'which abuses the judicial process.'" *Silvestri,* 271 F.3d at 590 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)). District courts have broad discretion "to choose the appropriate sanction for a party's spoliation, but should use that discretion 'to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" *Jenkins*, 2017 U.S. Dist. LEXIS 9581, at *30 (quoting *Silvestri*, 271 F.3d at 590). In sanctioning a party, the court must be cognizant that "a sanction in response to spoliation should '(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3)

6

restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence.'" *Eshelman v. Puma Biotechnology, Inc*., No. 7:16-CV-18-D, 2017 U.S. Dist. LEXIS 87282, at *11-12 (E.D.N.C. June 7, 2017) (quoting *West v. Goodyear Tire & Rubber Co*., 167 F.3d 776, 779 (2d Cir. 1999)).

### B. Sanctioning Spoliation Pursuant to Rule 37(e).

Federal Rule of Civil Procedure 37(e) – which governs spoliation of electronically stored information ("ESI") – permits the district court to sanction a party who should have, but fails to, take reasonable steps to preserve ESI in the anticipation or conduct of litigation and that cannot be restored or replaced through additional discovery. Upon a finding of prejudice to another party, the court may order measures no greater than necessary to cure the prejudice. Fed. R. Civ. P. 37(e). If the district court finds the spoliator acted with intent to deprive another party of the use of the information, it may: (1) presume the lost information was unfavorable to the party; (2) instruct the jury that it may or must presume the information was unfavorable to the party; or (3) dismiss the action or enter a default judgment. Id. Prior to the imposition of sanctions under Rule 37(e), the moving party must make a threshold showing that: (1) ESI should have been preserved; (2) the ESI was lost; (3) the loss was due to a party's failure to preserve the ESI; and (4) the ESI cannot be restored or replaced though additional discovery. *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018).

### C. Sanctioning Spoliation Under the Inherent Powers of the Court.

Regardless of whether lost or destroyed evidence consists of ESI, district courts possess "the inherent power to impose sanctions 'for conduct which abuses the judicial process.'" *Superior Performers, Inc. v. Meaike*, No. 1:13CV1149, 2015 U.S. Dist. LEXIS 12937, at **6-7

7

(M.D.N.C. Feb. 4, 2015) (quoting *Chambers*, 501 U.S. at 44-45). In this context, the district court considers whether:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Id.* at *8 (quoting *Thompson v. U.S. Dep't of Housing and Urban Development*, 219 F.R.D. 93, 101 (D. Md. 2003)). Naturally, the sanctions provided for in Rule 37(e) are also available to the district court under its inherent powers, as are lesser sanctions such as the award of attorney's fees, costs, and punitive fines. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 534-37 (D. Md. 2010).

## IV. ARGUMENT

Defendant willfully caused the loss/destruction of relevant text messages and emails. Pursuant to Federal Rule of Civil Procedure 37(e) and/or its inherent authority, the Court should sanction Defendant by presuming that the lost evidence was unfavorable to him and instructing the jury as such.

### A. The Court Can, and Should, Sanction Defendant Pursuant to Rule 37(e).

This Court should sanction Defendant pursuant to Federal Rule of Civil Procedure 37(e) because NuVasive easily satisfies its threshold determination under the Rule 37(e) and Defendant intended to deprive NuVasive of the responsive communications that he was obligated to preserve. *Steves & Sons*, 327 F.R.D. at 104.

8

### i. Defendant's Text Messages and Emails Should Have Been Preserved.

A party has a duty to preserve ESI when he or she reasonably anticipates litigation and he or she reasonably should know that the deleted evidence might be relevant to litigation. *Id.* at 105. Defendant's obligation to preserve ESI arose when he reasonably expected litigation involving his resignation from InoSpine and subsequent employment with Alphatec. *See Silvestri*, 271 F.3d at 591. At the absolute latest, this occurred on March 9, 2018, when counsel for InoSpine transmitted correspondence to his counsel demanding that Defendant:

> [R]efrain from the destruction of relevant evidence, by not destroying, concealing or altering any paper or electronic files or data or other data generated or stored on any computer system, phone or other media [,]including but not limited to texts, emails, voicemails, internet use, and information on laptops and computer networks, and to take steps to preserve all such information, including information and data created preceding and subsequent to the date of this letter.

(**Ex. A**, at p. 2). This triggered Defendant's obligation to preserve all relevant ESI.[6] *See Steves & Sons*, 327 F.R.D. at 106 ("[C]ourts in the Fourth Circuit have found that the receipt of a demand letter, a request for evidence preservation, a threat of litigation, or a decision to pursue a claim will all trigger the duty to preserve evidence.") Additionally, the deleted evidence is relevant to this litigation as the communications identified and explained in Sections (II)(B)-(C), *supra*, are either with surgeon-customers expressly identified on **Exhibit A** or representatives of Alphatec, which **Exhibit A** references. *See E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 803 F. Supp. 2d 469, 496 (E.D. Va. 2011) (holding that a party is obligated to preserve "what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.")

---

[6] NuVasive contends that Defendant anticipated litigation long before March 9, 2018, hence, his retention of counsel prior to resigning from InoSpine. However, March 9, 2018, is the absolute latest date that this Court should consider.

9

### ii. Defendant's Text Messages and Emails Were Lost.

Evidence is lost, for purposes of spoliation, when it is "irretrievable from another source, including other custodians," and proving this factor is a "low bar." *Steves & Sons*, 327 F.R.D. at 107-08. Put simply, there are no other custodians of Defendant's text messages, and his counsel conceded to NuVasive's counsel that Defendant was unable to retrieve them. (**Ex. D**, ¶¶ 10-11). As to Defendant's emails, InoSpine was their custodian, but Defendant deleted them all either prior to or immediately after resigning his employment. (**Id.** at ¶ 12).

### iii. Defendant's Failure to Take Reasonable Steps to Preserve His Text Messages and Emails.

Generally, a party "must suspend its routine document retention/detention policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Steves & Sons*, 327 F.R.D. at 108. This does not mean that a party must "preserve every shred of paper, every e-mail or electronic document, and every back up tape." *Id.* (quoting *Jenkins*, 2017 U.S. LEXIS 9581, at *39). However, it does mean that a party must take "reasonable steps to preserve . . . uniquely relevant evidence." *Jenkins*, 2017 U.S. LEXIS 9581, at *39.

Here, Defendant failed to put even the most rudimentary litigation hold in place and allowed his iPhone to continue automatically deleting text messages after thirty (30) days. Further, for nearly seven (7) months, Defendant failed to confirm that his text messages were being backed up and relevant communications were lost.

### iv. Defendant's Text Messages and Emails Cannot Be Restored or Replaced.

While a party is not required to pursue every avenue for replacing lost ESI, NuVasive more than meets it burden of showing that Defendant's text messages cannot be restored or replaced. *Steves & Sons*, 327 F.R.D. at 109. Defendant has not accepted NuVasive's offer to conduct a separate forensic examination after Defendant's forensic examination determined that

10

the text messages were lost. (**Ex. D,** ¶¶ 10-11, Ex.3). NuVasive also subpoenaed Alphatec directly for communications exchanged with Defendant, but Alphatec declined to produce any records.[7] (Decl. of T. McFarland, ¶¶ 3-4, attached as **Exhibit E**). NuVasive filed a motion to compel Alphatec to respond to the subpoena in the United States District Court for the Southern District of California, which was denied. The district court held that Alphatec would not be in possession of text messages with Defendant. (**Id.** at ¶ 4, Ex. 3). Similarly, NuVasive conducted a forensic examination of Defendant's deleted email account, but it cannot confirm that the emails that it recovered are comprehensive. (**Ex. D**, ¶ 12). In short, the ESI that Defendant willfully allowed to be destroyed cannot be replicated or reproduced elsewhere.

### v. Defendant Acted Willfully to Deprive NuVasive of His Text Messages and Emails.

Having satisfied the threshold inquiry, NuVasive is entitled to a jury instruction of an adverse inference because Defendant willfully destroyed the text messages and emails. "Willfulness is equivalent to intentional, purposeful, or deliberate conduct." *Victor Stanley*, 269 F.R.D. at 530 (citing *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008)). The *Victor Stanley* court further explained:

> Conduct that is in bad faith must be willful, but conduct that is willful need not rise to bad faith actions. While bad faith requires "destruction for the purpose of depriving the adversary of the evidence," for willfulness, it is sufficient that the actor intended to destroy the evidence. Nevertheless, courts often combine their analysis of willfulness and bad faith.

*Id.* (citations omitted).

Here, there is no other explanation for Defendant's destruction of the ESI aside from willfully intending to deprive NuVasive of it. By affirmatively deleting the emails, Defendant certainly intended to destroy them. Likewise, by leaving his alleged thirty-day deletion policy in

---

[7] Of course, Alphatec would not possess any of the communications Defendant exchanged with the surgeon-customers.

place, Defendant intended that the text messages would be destroyed. Defendant's false representations that the ESI could be recovered – when it obviously could not – supports a finding that he acted in bad faith with the intent to deprive NuVasive of these communications.

### B. Additionally, or in the Alternative, the Court Can, and Should, Sanction Defendant Under Its Inherent Powers.

This Court's inherent powers provide an additional avenue to sanction Defendant for his willful spoliation of evidence. *E.g.*, *Superior Performers*, 2015 U.S. Dist. LEXIS 12937, at *6-7. Spoliation is "conduct which abuses the judicial process" when the spoliator: (1) had an obligation to preserve the evidence when it was destroyed or lost; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) a reasonable factfinder could conclude that the spoliated evidence was relevant to the claims or defenses of the party seeking it. *Id.*

#### i. Defendant Was Obligated to Preserve the Text Messages and Emails.

The obligation to preserve evidence generally is identical to the obligation that arises for ESI under Rule 37(e). *Compare Silvestri*, 271 F.3d at 591 *with Jenkins*, 2017 U.S. LEXIS 9581, at **35-37. As such, Defendant was obligated to preserve evidence under this prong for the same reasons set out in Section IV(A)(i), *supra*.

#### ii. Defendant Acted Willfully in Destroying the Text Messages and Emails.

Defendant willfully destroyed relevant evidence. "In the Fourth Circuit, for a court to impose some form of sanctions for spoliation, any fault - be it bad faith, willfulness, gross negligence, or ordinary negligence - is a sufficiently culpable mindset." *EEOC v. Womble Carlyle Sandridge & Rice, LLP*, No. 1:13CV46, 2014 U.S. Dist. LEXIS 793, at *12 (M.D.N.C.

Jan. 6, 2014) (quoting *Victor Stanley*, 269 F.R.D. at 529).[8]  Willful conduct is "intentional, purposeful, or deliberate conduct."  *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008).

As set forth in Section IV(A)(vi) *supra*, Defendant intentionally deleted the emails within his InoSpine email account.  (**Ex. D**, ¶ 12).  With regard to the text messages, Defendant willfully instituted a policy that allegedly automatically deleted his text messages after thirty (30) days.  (**Id.** at ¶ 10).  Rather than suspending that policy, as he was required to do, he kept it in place, and the text messages were lost.  (**Id.**)  Defendant's behavior is even more egregious since he acknowledges that "he mostly communicated by phone."  (**Id.** at Ex. 1).  At the very least, this is grossly negligent behavior that warrants sanctions.

### iii.    The Spoliated Evidence Was Relevant to NuVasive's Claims.

Because Defendant acted willfully in destroying his text messages and emails, their relevance is presumed.  *Victor Stanley*, 269 F.R.D. at 532.  However, even absent such a presumption, Sections II(B)-(C), *supra*, sufficiently detail the relevance of these communications – namely they are communications with individuals and entities directly related to NuVasive's claims.  *See id.* at 531 (holding evidence is relevant in the spoliation context "if a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.")

### C. <u>The Appropriate Sanction in this Matter is an Adverse Inference and Jury Instruction that the Lost Evidence Was Unfavorable to Defendant.</u>

The appropriate sanction this Court should impose is an adverse inference and jury instruction that the evidence Defendant destroyed was unfavorable to him because such a sanction will "serve the prophylactic, punitive, and remedial rationales underlying the spoliation

---

[8] "Negligence, or culpable carelessness, is [t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation[.]"  *Victor Stanley*, 269 F.R.D. at 529) (citations omitted). Negligence is contrasted with "conduct that is intentionally, wantonly, or willfully disregardful of others' rights." *Id.* (citations omitted).

13

doctrine." *Victor Stanley*, 269 F.R.D. at 533 (quoting *Silvestri*, 271 F.3d at 590). "Put another way, appropriate sanctions should (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Id.* at 533-34.

Respectfully, no alternative sanction will further these express goals aside from an adverse inference and jury instruction. Absent such a sanction, litigants in similar cases will be incentivized to: (i) wipe all potentially relevant documents, data, communications, etc. from any electronic devices at the time they resign from their current position; and (ii) purposefully fail to put an appropriate document retention policy in place with regard to their personal electronic devices. The only way to restore NuVasive to the position that it would have been in (i.e., in possession of the communications) is to assume those communications support NuVasive's claims and instruct the jury as such.

## V. CONCLUSION

For all of the reasons set forth herein, NuVasive respectfully requests that this Court:

(1) find that Defendant spoliated evidence when he deleted his InoSpine email account and willfully allowed his text messages to be deleted;

(2) sanction Defendant by the imposing an adverse inference and an appropriate jury instruction; and

(3) grant any other relief the Court deems just and proper.

14

Respectfully submitted,

Date: December 17, 2018          *s/Paul A. Capua*
                                 Paul A. Capua / N.C. State Bar No. 40239
                                 CAPUA LAW FIRM, PA
                                 164 South Depot Street
                                 Boone, NC 28607
                                 Telephone: (828) 264-0260
                                 Fax: (828) 378-0236
                                 pcapua@capualawfirm.com

                                 *s/M. Thomas McFarland*
                                 Christopher W. Cardwell, Esq. (Local Civil Rule 83.1
                                 Counsel) (Tennessee Bar No. 19751)
                                 M. Thomas McFarland, Esq. (Local Civil Rule 83.1
                                 Counsel) (Tennessee Bar No. 033432)
                                 GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
                                 150 Third Avenue South, Suite 1700
                                 Nashville, TN 37201
                                 (615) 244-4994 (Telephone)
                                 (615) 256-6339 (Facsimile)
                                 ccardwell@gsrm.com
                                 tmcfarland@gsrm.com

                                 *Attorneys for Plaintiff NuVasive, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served via U.S. Mail, postage prepaid. Parties may access this filing through the Court's electronic filing system. The party or parties served are as follows:

Mathew E. Flatow / N.C. State Bar No. 35282
Vincent J. Filliben, III/ N.C. State Bar No. 40247
SeiferFlatow, PLLC
2319 Crescent Avenue
Charlotte, NC 28207
Telephone: (704) 512-0606
Mathew@seiferflatow.com
James@seiferflatow.com

Arcangela M. Mazzariello / N.C. State Bar No. 23846
402 S. Broad Street
Gastonia, NC 28054-4304
Telephone: (704) 616-1981
arcmazzesq@gmail.com

*Attorneys for Kenneth Kormanis*

*s/M. Thomas McFarland*

16

Case 1:18-cv-00282-CCE-LPA   Document 85   Filed 12/17/18   Page 16 of 16