UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
CIVIL ACTION NO. 1:18-CV-00282

| | |
|---|---|
| NUVASIVE, INC. | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| KENNETH KORMANIS, | ) |
| | ) |
| Defendant, | ) |
| | ) |

## NUVASIVE, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR THE IMPOSITION OF SANCTIONS FOR SPOLIATION OF EVIDENCE

Plaintiff, NuVasive, Inc. ("NuVasive"), pursuant to this Court's October 18, 2018, Order (Doc. 71), and for its Reply in Support of its Motion for the Imposition of Sanctions for Spoliation of Evidence, states:

### I. Introduction.

This Court should impose spoliation sanctions including, without limitation, an adverse inference and jury instruction, because:

(i) Defendant concedes he destroyed communications despite being obligated to preserve them;

(ii) the affidavit Defendant submitted with his Response is directly contradictory to his previous sworn testimony and should be disregarded; and

(iii) Defendant did, in fact, willfully destroy relevant communications.

Defendant's response (the "Response") (Doc. 86) and his supporting affidavit should not sway this Court's determination of NuVasive's request for the imposition of sanctions as a result of Defendant's spoliation of relevant evidence. Defendant's statement that, after receiving the litigation hold letter on March 9, 2018, he, "began routinely backing up the contents of his

1

iPhone to his personal computer so that he would be in compliance with the letter and preserve any information should it be needed during later litigation" is simply untrue. (Def.'s Resp., Doc. 86, p. 3). If this were accurate, the instant Motion would be unnecessary as Defendant's communications would not have been destroyed and could be produced in the regular course of discovery.

## II.   Defendant concedes he was obligated to preserve text messages dating back to February 7, 2018, yet failed to do so.

Defendant's Response concedes that he was under an obligation to preserve text messages dating back to February 7, 2018, yet *failed to do so*. (Id. at p. 8). Defendant's attempts to conflate this obligation with the preservation/loss of documents dating back to January 1, 2017, are a red herring. (Def.'s Resp., Doc. 86, pp. 6-9). NuVasive's Motion is about the documents Defendant was obligated to preserve and admits he willfully destroyed.

## III.   Defendant's contradictory affidavit ignores prior testimony and should be disregarded.

When a litigant has a document retention or destruction policy, it "is obligated to suspend that policy and implement a litigation hold to ensure the preservation of relevant documents once the preservation duty has been triggered." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 524 (D. Md. 2010). In this case, Defendant failed this obligation. He: (i) activated his iPhone's 30-day text message deletion feature; (ii) was aware of it in March of 2018 when he received the litigation hold letter; (iii) willfully failed to suspend it; and (iv) should be sanctioned accordingly. This failure was compounded when Defendant – upon the discovery of his alleged unknowing activation the 30-day deletion feature in July of 2018 – did not elect to suspend his cell phone deletion policy, resulting in additional responsive documents being destroyed. (*See* Doc. 86-1, ¶¶ 15-17).

2

This Court should disregard the self-serving testimony contained in Defendant's affidavit as it contradicts his previous sworn positions.[1] Defendant's testimony – that he unknowingly activated his iPhone's feature that deleted text messages after thirty days – directly contradicts his prior responses to nine separate requests for production in which Defendant provided the following (or substantially similar), verified response:

> . . . As for text messages, due to a space limitation on his iPhone, Defendant Kormanis only is able to keep data on his device from the previous 30 days. In order to comply with the litigation hold letter, Defendant Kormanis backs up his iPhone to his MacBook Air so that all messages are preserved. However, at this time, Defendant Kormanis has not been able to retrieve said messages from his personal devices. Once these communications are retrieved, they will be produced.

(Def.'s Resp. Req. Prod. Doc. Nos. 6, 9-13, 17-19, Doc. 85-3). These responses contain no reference to Defendant's purportedly unknowing and/or accidental activation of an automatic deletion setting. Rather, the sworn responses state that the 30-day text retention policy was due to storage limitations with his device.

In addition to contradicting his verified request for production responses, Defendant's claim that he inadvertently activated his iPhone's thirty-day text deletion feature is incongruent with the number of affirmative steps that are required to activate this function. The default Message History setting for storage of text messages on Defendant's iPhone device is "Forever." (Decl. R. Clayton, ¶ 7, attached hereto as **Exhibit A**).[2] To change this setting from "Forever" to

---

[1] Although in the context of summary judgment, courts in the Fourth Circuit routinely disregard later, contradictory affidavits of a party attempting to create an issue of material fact. *E.g.*, *Grace v. Family Dollar Stores, Inc. (In re Family Dollar FLSA Litigation.)*, 637 F.3d 508, 512 (4th Cir. 2011) (disregarding a later-submitted affidavit that contradicted the non-moving party's deposition testimony). This reasoning is equally applicable *sub judice*. If a party – such as Defendant – were permitted to submit an affidavit contradicting previous sworn testimony stating nothing more than the spoliation was accidental, the Court's power to sanction such conduct would be severely diminished.

[2] Mr. Clayton is the President and CEO of Page One, LLC, a litigation technology and support and computer forensics firm located in Nashville, Tennessee. (**Ex. A**, ¶¶ 2-3). Mr. Clayton's testimony is being offered to refute

one of the other two options – "30 Days" or "1 Year" – an end-user must follow this four-step process:

> (i) select the Settings tab of the device;
>
> (ii) select the Messages option within the Settings screen;
>
> (iii) select the Keep Messages setting and select one of the three options; and
>
> (iv) finally, when an end-user changes the default of Forever to 30 Days, he or she is prompted with an alert message that reads, "Delete Older Messages? This will permanently delete all text messages and message attachments from your device that are older than 30 days. (Delete) or (Cancel)" and the end-user must select "Delete."

(**Id.** at ¶ 9). Respectfully, this testimony demonstrates the unlikelihood that Defendant "accidentally" or "unknowingly" altered this default storage feature on his iPhone device without his knowledge.

## IV. Defendant willfully destroyed communications.

Defendant misconstrues the level of culpability necessary for the imposition of an adverse inference and jury instruction arguing that these sanctions would only be appropriate if he "received the [litigation hold letter] and then promptly began a calculated effort to wipe his iPhone and personal computer of all potentially relevant emails and text messages." (Def.'s Resp., Doc. 86, p. 11). Defendant (incorrectly) argues that an adverse inference is only appropriate in circumstances where bad faith is present. As this Circuit holds, time and again, an adverse inference only "requires a showing that the party knew the evidence was relevant to some issue at trial and that his *willful conduct resulted in its loss or destruction*." *Buckley v. Mukasey*, 538 F.3d 306, 322 (4th Cir. 2008) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)) (emphasis supplied). There is no dispute that Defendant's conduct was

---

the new positions Defendant asserts in his Response. NuVasive will appropriately identify Mr. Clayton as an expert should the Court deem it necessary.

willful and resulted in destroyed communications. He intentionally deleted his email communications and allowed the 30-day text deletion policy to remain in place despite the statements in his verified discovery responses.

## V. <u>The destroyed communications are relevant to the merits of this litigation.</u>

The destroyed communications are certainly relevant to NuVasive's claims, and Defendant's arguments to the contrary entirely miss the mark.[3] The spoliated communications are relevant if "a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Victor Stanley*, 269 F.R.D. at 531 (citing *Thompson v. United States Department of Housing and Urban Development*, 219 F.R.D. 93, 101 (D. Md. 2003)) "The Fourth Circuit describes the test for relevant evidence necessary to impose sanctions as that evidence which would 'naturally have been introduced into evidence.'" *Sampson v. City of Cambridge*, 251 F.R.D. 172, 180 (D. Md. 2008) (quoting *Vodusek*, 71 F.3d at 156).

Defendant argues that "NuVasive [] devotes one sentence to make the claim that its own factual allegations in its Motion and Memorandum" detail the relevance of the lost communications claiming this is nothing more than NuVasive's "fertile imagination." (Def.'s Resp., Doc. 86, p. 12 (citing *Sampson*, 251 F.R.D. at 179)). What Defendant conveniently ignores, however, is that this "one sentence" refers back to three pages of facts within NuVasive's Motion that are supported either by: (i) Defendant's own sworn discovery responses; or (ii) the undisputed declaration of counsel, Christopher W. Cardwell. (Pl.'s Mot., Doc. 85, pp. 2-5, §§ II(B)-(C)). What these facts do – contrary to Defendant's assertion – is establish the existence of repeated communications between Defendant and Jones concerning his former

---

[3] NuVasive sufficiently details why it is entitled to a presumption of relevance in Sections IV(A)(v), -(B)(iii) of its initial Motion (Doc. 85) and Section IV *supra*. As such, this Section only addresses Defendant's remaining substantive argument as to relevance.

surgeon-customers; Defendant and his former surgeon-customers; and Defendant and representatives of Alphatec regarding his former surgeon-customers, all of which support NuVasive's position that Defendant breached his restrictive covenants and tortiously interfered with other contractual obligations owed to NuVasive. (Id. at pp. 4-5). This is precisely the "concrete evidence" that Defendant asserts is lacking. (Def.'s Resp., Doc. 86, p. 10). As such, the situation at bar is entirely dissimilar from that of *Sampson* in which the plaintiff seeking discovery sanctions failed to establish that many of the subject emails ever existed, much less that they were relevant. 251 F.R.D. at 183. Rather, a reasonable factfinder could easily conclude that these communications – especially communications Defendant exchanged with prohibited customers and Alphatec representatives prior to his InoSpine resignation – would have supported NuVasive's claims, and the relevance of these communications is evident.

## VI. NuVasive's efforts to secure communications through alternative means is sufficient.

Defendant contends that NuVasive has not "made a good-faith attempt to explore alternatives," yet completely ignores: (i) NuVasive's offer of further forensic examination; (ii) NuVasive seeking (and receiving) documents from Jones; and (ii) NuVasive's unsuccessful attempts to subpoena documents from the Alphatec nonparties. (Def.'s Resp., Doc. 86, pp. 13-14). The evidence establishes that NuVasive attempted to receive much of the destroyed evidence from others – including Defendant's new employer – but had no success. Respectfully, Defendant cannot delegate his obligation to retain relevant evidence to others, and the case law imputing sanctions for similar behavior creates no such requirement.

6

## VII. Conclusion.

In conclusion, for the reasons set forth in its initial Motion and herein, NuVasive respectfully requests the imposition of appropriate sanctions as a result of Defendant's willful destruction of material evidence.[4]

Respectfully submitted,

Date: January 7, 2018

*s/Paul A. Capua*
Paul A. Capua / N.C. State Bar No. 40239
CAPUA LAW FIRM, PA
164 South Depot Street
Boone, NC 28607
Telephone: (828) 264-0260
Fax: (828) 378-0236
pcapua@capualawfirm.com

*s/M. Thomas McFarland*
Christopher W. Cardwell, Esq. (Local Civil Rule 83.1 Counsel) (Tennessee Bar No. 19751)
M. Thomas McFarland, Esq. (Local Civil Rule 83.1 Counsel) (Tennessee Bar No. 033432)
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiff NuVasive, Inc.*

---

[4] NuVasive brought its Motion pursuant to the schedule set by the Court in its October 18, 2018, Order. (Doc. 71, ¶ 4). While the parties have conducted several discovery depositions, the deposition of Defendant has not yet occurred and is currently set for January 16, 2019. NuVasive recognizes that it may be appropriate for the Court to either hold an evidentiary hearing on this issue or reserve ruling on its Motion pending this further discovery. *See Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009) ("Before ruling on a spoliation motion, a court may have to hold a hearing, and if spoliation is found, consideration of an appropriate remedy can involve determinations that may end the litigation or severely alter its course . . . And, in deciding a spoliation motion, the court may order that additional discovery take place either to develop facts needed to rule on the motion or to afford the party deprived of relevant evidence an additional opportunity to develop it from other sources."). Defendant's destruction of relevant evidence – including his alleged attempts to preserve information – will be a focal point of his deposition. Accordingly, it may be appropriate to reserve ruling on this Motion until Defendant can be examined under oath, either via his deposition or during an evidentiary hearing.

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.3(d)(1), the undersigned certifies that the foregoing Reply contains 1,986 words, which is less than the total words permitted by Local Rule 7.3(d)(1). Counsel relies on the word count of the computer program used to prepare this document.

*s/M. Thomas McFarland*

## CERTIFICATE OF SERVICE

        I hereby certify that on January 7, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served via U.S. Mail, postage prepaid. Parties may access this filing through the Court's electronic filing system. The party or parties served are as follows:

Mathew E. Flatow / N.C. State Bar No. 35282
Vincent J. Filliben, III/ N.C. State Bar No. 40247
SeiferFlatow, PLLC
2319 Crescent Avenue
Charlotte, NC 28207
Telephone: (704) 512-0606
Mathew@seiferflatow.com
James@seiferflatow.com

Arcangela M. Mazzariello / N.C. State Bar No. 23846
402 S. Broad Street
Gastonia, NC 28054-4304
Telephone: (704) 616-1981
arcmazzesq@gmail.com

*Attorneys for Defendant Kenneth Kormanis*

                                          *s/M. Thomas McFarland*

9

Case 1:18-cv-00282-CCE-LPA    Document 88    Filed 01/07/19    Page 9 of 9