**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

NUVASIVE, INC.,                    )
                                   )
            Plaintiff,             )
                                   )
     v.                            )          1:18CV282
                                   )
KENNETH KORMANIS,                  )
                                   )
            Defendant.             )

**MEMORANDUM OPINION, ORDER, AND**
**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge on Plaintiff's Motion for Imposition of Sanctions for Spoliation of Evidence (Docket Entry 85). After reviewing all filings related thereto (see Docket Entries 85, 85-1, 85-2, 85-3, 85-4, 85-5, 86, 86-1, 86-2, 86-3, 86-4, 88, 88-1, 98, 99, 100, 100-1) and hearing argument (see Minute Entry dated Feb. 6, 2019),[1] the undersigned Magistrate Judge orally (A) granted in part the instant Motion, (B) imposed some sanctions, and (C) proposed deferral of questions about other sanctions until trial. This Memorandum Opinion memorializes and expounds upon that oral decision.

## I.  INTRODUCTION

The instant Motion "requests that this Court:  (1) find that Defendant [Kenneth Kormanis] spoliated evidence when he deleted his InoSpine email account and willfully allowed his text messages to

---

[1] The Clerk's Office made and maintains an audio recording of the hearing. (See Minute Entry dated Feb. 6, 2019.)

be deleted; (2) sanction Defendant [Kormanis] by the [sic] imposing an adverse inference and an appropriate jury instruction; and (3) grant any other relief the Court deems just and proper." (Docket Entry 85 at 14; see also id. at 1 (citing "Federal Rule of Civil Procedure 37(e)" and "inherent powers of this Court" as bases for instant Motion).) As pronounced at the hearing on February 6, 2019, the undersigned Magistrate Judge has concluded that:

A) the 2015 Amendment to Federal Rule of Civil Procedure 37(e) ("Rule 37(e)") "forecloses reliance on inherent authority . . . to determine when certain measures [including relief specifically sought in the instant Motion] should be used [to sanction spoliation of electronically stored information ('ESI')]," Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e);[2]

B) ESI, consisting of text messages to/from Defendant Kenneth Kormanis, "that should have been preserved in the anticipation or conduct of litigation [as of and after March 9, 2018, wa]s lost because [Defendant Kormanis] failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," Fed. R. Civ. P. 37(e);[3]

---

[2] Alternatively, if inherent authority remains available as an avenue for sanctioning conduct otherwise covered by Rule 37(e), the undersigned Magistrate Judge would decline to rely on such authority to reach any conclusions not also dictated by Rule 37(e).

[3] To the extent the instant Motion seeks relief for the loss of ESI in Defendant Kormanis's "InoSpine email account at some point close in time to his resignation from InoSpine on March 3,
(continued...)

C) "prejudice to [Plaintiff resulted] from loss of th[ose text messages]," Fed. R. Civ. P. 37(e)(1), warranting authorization of (and imposition on Defendant Kormanis of Plaintiff's reasonable expenses, including attorney's fees, for) a post-discovery-deadline deposition of Ashley Warrick, a witness who likely participated (or possessed knowledge of matters discussed) in the lost text messages, as an appropriate "measure[] no greater than necessary to cure [some of] the prejudice [to Plaintiff]," id.;

D) only when matters become clearer in the crucible of trial should the Court decide whether other "serious measures are necessary to cure prejudice [from the lost text messages], such as forbidding [Defendant Kormanis] . . . from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of [those text messages], or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions [that it may or must presume the lost text messages were unfavorable to Defendant Kormanis]," Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e)(1); see also id., subdiv. (e)(2) (explaining that, even absent a finding of intent to deprive a party of lost ESI, a court may "allow[] the parties to present evidence to the jury concerning the

---

³(...continued)
2018" (Docket Entry 85 at 6), Plaintiff has not shown that, at the moment of any such loss, such ESI "should have been preserved in the anticipation or conduct of litigation," Fed. R. Civ. P. 37(e), and/or that "it cannot be restored," id.

-3-

loss and likely relevance of [ESI] and instruct[] the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision"); and

E) the record would support (but would not compel) a "finding that [Defendant Kormanis] acted with the intent to deprive [Plaintiff] of the [text messages'] use in the litigation," Fed. R. Civ. P. 37(e)(2), and the Court therefore should "conclude that [any such] intent finding should be made by [the] jury, [with] the [C]ourt's instruction[s ] mak[ing] clear that the jury may infer from the loss of th[ose text messages] that [they were] unfavorable to [Defendant Kormanis] only if the jury first finds that [he] acted with the intent to deprive [Plaintiff] of th[eir] use in the litigation," Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e)(2); see also id. ("Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the [ESI].").

## II.  DISCUSSION

Regarding the five conclusions outlined in Section I, the undersigned Magistrate Judge reduces to writing and elaborates upon the remarks made at the hearing on February 6, 2019, as follows:

## A.  Inherent Authority

The instant Motion asserts that, alongside Rule 37(e), "[t]his Court's inherent powers provide an additional avenue to sanction Defendant [Kormanis] for his willful spoliation of [ESI]." (Docket

Entry 85 at 12.)  That contention conflicts with the plain language of the commentary to the 2015 Amendment to Rule 37(e) (quoted in Section I).  See, e.g., Snider v. Danfoss, LLC, No. 15CV4748, 2017 WL 2973464, at *3 & n.8 (N.D. Ill. July 12, 2017) (unpublished) ("After December 1, 2015, Rule 37(e) provides the specific – and sole – basis to sanction a party for failing to preserve [ESI]." (internal footnote omitted) (citing Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e))), recommendation adopted, 2017 WL 3268891 (N.D. Ill. Aug. 1, 2017) (unpublished).  The undersigned Magistrate Judge adopts the Advisory Committee's view that Rule 37(e) (as amended in 2015) displaced judicial inherent authority as a mechanism for sanctioning ESI spoliation, because, as the United States Supreme Court recognized within a decade of their initial adoption, "in ascertaining the[] meaning [of the Federal Rules of Civil Procedure] the construction given to them by the [Advisory] Committee is of weight," Mississippi Publ'g Corp. v. Murphee, 326 U.S. 438, 444 (1946); see also United States v. Vonn, 535 U.S. 55, 64 n.6 (2002) ("[T]he Advisory Committee Notes [to the Federal Rules of Criminal Procedure] provide a reliable source of insight into the meaning of a rule . . . .  Although the Notes are the product of the Advisory Committee, and not Congress, they are transmitted to Congress before the rule is enacted into law.").[4]

---

[4] Moreover, construing the 2015 Amendment to Rule 37(e) as "[r]emoving inherent authority from a federal court's quiver to
(continued...)

-5-

At the hearing, Plaintiff argued that, pursuant to Chambers v. NASCO, Inc., 501 U.S. 32 (1991), the 2015 Amendment to Rule 37(e) did not preclude reliance on inherent authority to sanction ESI spoliation. In Chambers, the Supreme Court did observe that "prior cases have indicated that the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." Id. at 49. However, the Chambers Court also reiterated that "the inherent power of lower federal courts can be limited by statute or rule . . . ." Id. at 47. Further, although it refused to "lightly assume that Congress has intended to [limit] . . . the scope of a [federal] court's inherent power," id. (internal quotation marks omitted), the Chambers Court looked directly to the "Advisory Committee's Notes on [an] Amendment to [a Federal Rule of Civil Procedure]" to gauge whether that rule "repeal[ed] or modif[ied] existing authority of federal courts to deal with abuses under [their] inherent power," id. at 48-49 (internal ellipsis and quotation marks omitted). In Chambers, the commentary revealed no such repeal or modification of inherent authority, see id., but here the commentary expressly confirms that Rule 37(e) "forecloses reliance on inherent authority . . . to determine when certain

_____

⁴(...continued)
sanction a party for failing to preserve ESI makes sense. The purpose of th[at] amendment was to address the 'significantly different standards' that the various federal courts were using. If federal courts could simply fall back onto their inherent authority, the goals of uniformity and standardization would be lost." Snider, 2017 WL 2973464, at *3 n.8.

measures [including relief requested in the instant Motion] should be used [to sanction ESI spoliation]," Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e). <u>Chambers</u> thus bolsters (not undermines) the conclusion that the Court should look exclusively to Rule 37(e) in resolving the instant Motion.[5]

> ## B. Rule 37(e)'s Predicate Elements – Unreasonable Loss of Irreplaceable ESI Contrary to Preservation Duty

As amended in 2015, Rule 37(e) states:

> If [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of the [ESI], may order measures no greater than necessary to cure the prejudice; or
>>
>> (2) only upon finding that the party acted with the intent to deprive another party of the [ESI's] use in the litigation may:
>>
>>> (A) presume that the lost [ESI] was unfavorable to the party;
>>>
>>> (B) instruct the jury that it may or must presume the [lost ESI] was unfavorable to the party; or
>>>
>>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

---

[5] As set forth in Footnote 2, in the alternative, the undersigned Magistrate Judge (like other courts) "declines to order sanctions under [judicial] inherent authority even assuming that such an action would be permissible. [This Memorandum Opinion] will therefore analyze the issue of whether sanctions should be imposed exclusively under the [provisions] of Rule 37(e)." <u>Worldpay, US, Inc. v. Haydon</u>, No. 17CV4179, 2018 WL 5977926, at *3 n.1 (N.D. Ill. Nov. 14, 2018) (unpublished).

Given the foregoing language:

> [The] Court must determine that <u>four predicate elements</u>
> are met under Rule 37(e) before turning to the
> sub-elements of (e)(1) and (e)(2): (a) the existence of
> ESI of a type that should have been preserved; (b) ESI is
> lost; (c) the loss results from a party's failure to take
> reasonable steps to preserve [ESI]; and (d) [the lost
> ESI] cannot be restored or replaced through additional
> discovery. . . . Only if all four [of those predicate]
> elements are established can the Court consider sanctions
> under subsection (e)(1) or subsection (e)(2).

<u>Konica Minolta Bus. Sols., U.S.A. Inc. v. Lowery Corp.</u>, No.
15CV11254, 2016 WL 4537847, at *2-3 (E.D. Mich. Aug. 31, 2016)
(unpublished) (emphasis added). The record here satisfies each of
the four predicate elements of Rule 37(e).

### i. Factual Background

According to the instant Motion, "[o]n March 3, 2018,
Defendant [Kormanis] resigned from his employment with InoSpine
. . ., which [wa]s an exclusive distributor of [Plaintiff's]
products in the North Carolina market." (Docket Entry 85 at 2.)
By letter dated March 9, 2018, InoSpine notified Defendant Kormanis
(through counsel) of its "concern[] that [his] new position with
Alphatech will lead to . . . violation[s] of his contractual
obligations with Ino[S]pine." (Docket Entry 85-1 at 1; <u>see also</u>
<u>id.</u> at 2 (warning that, "in the event Ino[S]pine becomes aware of
any breach . . ., it will . . . seek[] injunctive relief and [take]
justifiable legal action"), 3 (denoting Drs. Benjamin Ditty and
David Jones as "[s]urgeons . . . likely approached by [Defendant]
Kormanis in violation of [his InoSpine contract]").) That letter

also advised Defendant Kormanis "to refrain from the destruction of relevant evidence . . . including . . . texts . . . and to take steps to preserve all such information . . . ." (<u>Id.</u> at 2.)

Plaintiff thereafter instituted this action, alleging that "[Defendant] Kormanis has breached, and is breaching the terms of his [InoSpine contract] by . . . promoting and/or selling Alphatec's competitive products within his former InoSpine territory . . . ." (Docket Entry 1 at 12; <u>accord</u> Docket Entry 82 at 12.) In response to Plaintiff's production requests (served on July 18, 2018 (<u>see</u> Docket Entry 85-2 at 13)), seeking 2018 communications between Defendant Kormanis and certain surgeons (including Drs. Ditty and Jones), as well as Alphatec and some of its officials (<u>see</u> <u>id.</u> at 7-9), Defendant Kormanis wrote:

> As for text messages, <u>due to space limitations on his iPhone, Defendant Kormanis only is able to keep data on his device from the previous 30 days</u>. In order <u>to comply with the litigation hold letter, Defendant Kormanis backs up his iPhone to his MacBook Air so that all messages are preserved</u>. However, at this time, Defendant Kormanis has not been able to retrieve said messages from his personal devices. Once these communications are retrieved, they will be produced.

(Docket Entry 85-3 at 9-13 (emphasis added); <u>see also</u> <u>id.</u> at 17 (bearing Defendant Kormanis's signature, swearing (on September 4, 2018) to "have read the foregoing and know the contents thereof to be true, except for matters alleged upon information and belief").)

Plaintiff's counsel has averred that "Defendant [Kormanis then] produced text messages . . . on October 5, 2018. There were

no text messages within [that] production prior to August 5, 2018."
(Docket Entry 85-4 at 3 (emphasis added).)[6]  In e-mails on October
9, 2018, Defendant Kormanis's counsel (a) indicated that the vendor
he employed to retrieve earlier text messages from Defendant
Kormanis's devices could not do so, and (b) declined to allow
Plaintiff's vendor to examine the devices.  (See id. at 9-10.)

Subsequently, on December 21, 2018, Defendant Kormanis signed
an affidavit (see Docket Entry 86-1 at 3), making these statements:

1) "[a]fter receiving notice of [InoSpine's March 9, 2018]
Letter and its directive that [Defendant Kormanis] refrain from
destroying or altering any of the evidence it described, [he]
immediately began to take steps to ensure that evidence, with
particular attention to [ESI], would be preserved as instructed"
(id. at 2 (emphasis added));

2) "[m]ore specifically, after receiving the notice [Defendant
Kormanis] uploaded the contents of [his] mobile phone onto [his]
computer and began to keep backups of that data" (id. (emphasis
added); see also id. at 3 (referencing Defendant Kormanis's
"immediate efforts to backup and preserve any data that would be
relevant to . . . the present action"));

---

[6] For the above-cited document (and other such attachments to
the parties' filings that contain multiple items with independent
pagination), pin cites refer to the page number that appears in the
footer appended to the document when uploaded to the CM/ECF system.

3) "[a]t some point prior to [Defendant Kormanis's] receipt of [InoSpine's March 9, 2018] Letter, [he] unknowingly enabled a setting on [his] iPhone that automatically erases all text messages . . . after thirty (30) days of sending and/or receipt" (id. at 3);

4) Defendant Kormanis "was not aware that this setting was active during the course of this litigation until [he] went to turn over text messages requested by [Plaintiff]" (id.);

5) Defendant Kormanis "contracted with . . . a technology company . . . so that [his] iPhone and computer would be imaged and searched," but the company "was unable to recover the text messages in question and they are apparently lost forever" (id.).

Defendant Kormanis later sat for a deposition (on January 16, 2019 (see Docket Entry 100-1 at 1)), and gave this testimony:

1) "whenever [Defendant Kormanis] came to [his counsel's] office so that [said counsel] could download [Defendant Kormanis's] records, it appeared that the text messages prior to a certain date were not on [his] phone" (id. at 7);

2) "[a]fter investigating it, [Defendant Kormanis and his counsel] figured out that there was a setting activated on [Defendant Kormanis's] phone that only retained text messages for 30 days" (id.; see also id. at 8 ("[Defendant Kormanis] d[id]n't recall activating [that 30-day delete setting]. . . . [He] didn't even know about that setting actually prior to . . . finding out at [his counsel's] office. . . . [He] really d[id]n't know [that the

iPhone comes from the store with the factory setting to retain text messages forever].")); [7] and

3) "[t]he text messages that [Defendant Kormanis] no longer possess[es ] would include text messages with Dr. Ditty," (id. at 9), as well as "Dr. Jones" (id.) and "Alphatec personnel" (id.).

During the deposition, Plaintiff's counsel also showed Defendant Kormanis his previously-quoted affidavit (which, he confirmed, consisted of his own "words" (id. at 4; see also id. (swearing he "read it and signed it")), and this colloquy ensued:

> Q. Paragraph 10: After receiving notice of [InoSpine's March 9, 2018] letter and its directive that I refrain from destroying or altering any of the evidence it described, I immediately began to take steps to ensure that the evidence, with particular attention to [ESI], would be preserved as instructed.
>
> Do you see that?
>
> A.  I do.

---

[7] Later, after a break he requested (see Docket Entry 100-1 at 14), Defendant Kormanis announced that he "want[ed] to correct a couple things" (id.) and then stated:

> [I]n thinking about [the iPhone's default setting for permanent text message retention], I recall going to the Verizon store when I was having the issues of not being able to take pictures anymore.  And so I'm suspecting that a Verizon employee actually may have changed that or some other settings to . . . alleviate that issue for me, but I can't recall . . . the time frame on that.

(Id. at 14-15.)  When Plaintiff's counsel attempted to pin down details about that reported event, Defendant Kormanis could not say which Verizon store he visited, what year he made the visit, or which iPhone he then possessed.  (See id. at 17-18; see also id. at 19 (acknowledging that changing text message retention setting takes "[m]ultiple steps").)

-12-

Q.   Underline What steps did you take? (end underline)

A.   Underline Really none. (end underline)   Underline I didn't know that I needed to do anything (end underline).  So you know, Underline I just didn't delete e-mails (end underline).

Q.   Underline That was it (end underline)?

A.   Underline Yeah (end underline).   Underline I basically didn't delete anything from my phone (end underline).

Q.   Underline Do you ever back up your cell phone to an iPad or the cloud (end underline)?

A.   Underline I do (end underline). . . .  Underline I routinely do this . . . more so when I was a rep [for Plaintiff] (end underline).  I take a ton of pictures. . . .  I was routinely running out of space on my phone. And so the only way I could . . . get those pictures over and have a record of it was to back up my phone.

. . . Underline [W]henever I went to get my backups only the most recent backup I had on my computer was there.  So anything prior to that was gone. (end underline)  And so we enlisted this technical expert, who we were hopeful could recover the prior backups, and it wasn't successful.  So that was a huge bummer.

. . . .

Q.   Underline How do you go about uploading your contents of your iPhone to your computer (end underline)?

A.   Underline I just plug it in to the USB and let iTunes do its thing (end underline).

Q.   Underline How often do you do that (end underline)?

A.   . . . Underline I try to do it monthly (end underline). . . .  [S]ometimes I might be a little early, sometimes I might be a little late.  But Underline it's . . . a practice I try to maintain pretty regularly (end underline) because, again, I don't want to lose my photos that I've taken.  Or . . . it gets to the point where you can't take any more photos and that's a problem.

Q.   . . . Underline Since this case has been going, did you ever check to see if your text messages were actually being uploaded (end underline)?

A.  I have not.  I don't know how to do that.  I've also
tried to keep a more recent backup than the most recent
backup, and I've been unsuccessful in doing that. . . .
I can't find an option anywhere on iTunes or my phone to
keep more than one backup.  So I don't know what happens,
but I can only keep my most recent backup.

(Id. at 10-13 (emphasis added).)

        ii.  Predicate Elements One, Two, and Three

The material cited in Part II.B.i. establishes the first three

predicate elements under Rule 37(e), i.e., (1) ESI (in the form of

text messages[8] Defendant Kormanis exchanged with Drs. Ditty and

Jones, as well as Alphatec officials) "that should have been

preserved in the anticipation or conduct of litigation [beginning

March 9, 2018, (2) wa]s lost because [(3) Defendant Kormanis]

failed to take reasonable steps to preserve it," Fed. R. Civ. P.

37(e).  Indeed, as to loss of ESI that he should have preserved in

anticipation or conduct of litigation, his Response admits that:

It is uncontroverted that [Defendant] Kormanis received
notice of a duty to preserve evidence in a letter he
received from counsel for InoSpine on or around March 9,
2018.  Therefore, [Defendant] Kormanis was under a duty
to preserve evidence from that date forward.  The record
also shows that it is undisputed that a large number of
text messages were deleted from [his] iPhone as a result
of a thirty-day (30-day) automatic delete function.

(Docket Entry 86 at 8; see also Docket Entry 85 at 4-5 (summarizing

Verizon records showing Defendant Kormanis regularly communicated

via text message with Drs. Ditty and Jones, as well as Alphatec

_____

    [8] "[T]ext messages constitute ESI . . . ."  Keim v. ADF
Midatlantic, LLC, No. 12CV80577, 2016 WL 7048835, at *3 (S.D. Fla.
Dec. 5, 2016) (unpublished).

officials, from January through July 2018); Docket Entry 100-1 at 9 (documenting Defendant Kormanis's sworn agreement that "[t]he text messages that [he] no longer possess[es ] would include text messages with Dr. Ditty," "Dr. Jones," and "Alphatec personnel").)

Further, although (as noted in Defendant Kormanis's Response) "the exact quantity of the ESI lost is unknown" (Docket Entry 86 at 8), even accepting his (current[9]) position that, when (on or about March 9, 2018) he "receive[d] notice of his duty to preserve

---

[9] As the quotations in Part II.B.i. reflect, Defendant Kormanis has given inconsistent reports about his text messages. For example, in responding to Plaintiff's production requests, Defendant Kormanis indicated that, when he received InoSpine's letter on or about March 9, 2018, he knew that, "due to a space limitation," he "only [wa]s able to keep data on his [iPhone] from the previous 30 days," but that "to comply with the litigation hold letter, [he] backs up his iPhone to his MacBook Air so that all messages are preserved." (Docket Entry 85-3 at 9-13.) Conversely, Defendant Kormanis's affidavit and deposition testimony deny that he knew of the 30-day deletion setting on his iPhone until sometime after July 18, 2018, when he met with his counsel to respond to the production requests. (See Docket Entry 86-1 at 3; Docket Entry 100-1 at 7-8.) Likewise, Defendant Kormanis's affidavit and deposition testimony conflict as to when he started backing up text messages from his iPhone to his computer (i.e., after receiving (and to satisfy the demands of) the letter from InoSpine, or much earlier, pursuant to a standard procedure he adopted during his tenure marketing Plaintiff's products). (Compare Docket Entry 86-1 at 2 ("After receiving notice of [InoSpine's March 9, 2018] Letter . . ., I immediately began to take steps to ensure that evidence, with particular attention to [ESI], would be preserved as instructed. More specifically, after receiving the [letter from InoSpine,] I uploaded the contents of my mobile phone onto my computer and began to keep backups of that data." (emphasis added) (internal paragraph number omitted)), with Docket Entry 100-1 at 11 ("I routinely [back up my iPhone to my computer] . . . more so when I was a rep [for Plaintiff]." (emphasis added)), 13 ("I try to do it monthly. . . . [S]ometimes I might be a little early; sometimes I might be a little late. But it's . . . a practice I try to maintain pretty regularly . . . .").)

material evidence[, unbeknownst to him,] . . . th[e 30-day] automatic deletion function [already] had been enabled on his iPhone, [Defendant] Kormanis was [still] in possession of text messages [on his iPhone] as far back as February 7, 2018 as of the date of the letter from InoSpine[]" (id.). Moreover, if one credits Defendant Kormanis's deposition testimony that (long before he learned of InoSpine's letter) he downloaded the contents of his iPhone to his computer once a month (see Docket Entry 100-1 at 11, 13), then one also must conclude that, on or about March 9, 2018, Defendant Kormanis possessed (on his computer) at least one back-up file[10] containing text messages (likely dating back to January 2018). "In addition, [Defendant Kormanis's Response acknowledges] the delet[ion of his] text messages from March of 2018 through [a] date [after service of Plaintiff's] first discovery request [on July 18, 2018, albeit while maintaining that those text messages] were deleted only as a result of [Defendant] Kormanis being unaware of the automatic delete setting being activated on his iPhone during that period." (Docket Entry 86 at 11-12.)

Despite all this record evidence showing Defendant Kormanis's loss of text messages (a) that he exchanged with Drs. Ditty and Jones, as well as Alphatec officials, from January to July 2018,

_____

[10] According to Defendant Kormanis's deposition testimony, (a) each time he backed-up his iPhone to his computer, he lost the prior back-up file, and (b) he realized that fact only some time after he received Plaintiff's production requests (on or about July 18, 2018). (See Docket Entry 100-1 at 11, 13.)

and (b) that he possessed on and/or after March 9, 2018, the date he received an explicit demand to preserve text messages relevant to threatened litigation over his contact with Drs. Ditty and Jones on behalf of Alphatec, Defendant Kormanis has argued that "[t]he Court should deny [the instant] Motion because [Plaintiff] has failed to demonstrate that any of the allegedly spoliated text messages . . . would be relevant to this action." (Id. at 10.) The preservation duty recognized by Rule 37(e) does apply only to "relevant information," Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e);[11] however, as Plaintiff observed in its Reply, "the relevance of these [text messages] is evident" (Docket Entry 88 at 6), because "repeated communications between . . . Defendant [Kormanis] and his former surgeon-customers; and Defendant [Kormanis] and representatives of Alphatec regarding his former surgeon-customers, all [may] support [Plaintiff's] position [in this action] that Defendant [Kormanis] breached [the] restrictive covenants [in his InoSpine contract]" (id. at 5-6).[12]

_____

[11] "Like its predecessor, the amended [R]ule [37(e)] does not create a duty to preserve ESI. It recognizes the common-law duty to preserve relevant information when litigation is reasonably foreseeable." EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc., No. 3:12CV463, 2018 WL 1542040, at *12 (M.D. Tenn. Mar. 29, 2018) (unpublished) (emphasis added), aff'd in relevant part, 2018 WL 3322305 (M.D. Tenn. May 14, 2018) (unpublished).

[12] Indeed, Defendant Kormanis's responses to the production requests seeking his 2018 communications with Drs. Ditty and Jones, as well as with Alphatec and its officials, did not assert (even in boilerplate fashion) a relevance objection, but instead agreed
(continued...)

Nor does any material dispute remain as to whether the loss of relevant text messages resulted from Defendant Kormanis's failure to take reasonable steps to preserve them. In that regard, the instant Motion includes a paragraph heading entitled (in bold font) "**Defendant[ Kormanis's] Failure to Take Reasonable Steps to Preserve His Text Messages and Emails**" (Docket Entry 85 at 10), under which Plaintiff stated (consistent with the record evidence): "Defendant [Kormanis] failed to put even the most rudimentary litigation hold in place and allowed his iPhone to continue automatically deleting text messages after thirty (30) days. Further, for nearly seven (7) months, Defendant [Kormanis] failed to confirm that his text messages were being backed up and relevant communications were lost." (Id.) Defendant Kormanis's Response, in turn, develops <u>no</u> rationale by which a fact-finder could conclude that he took reasonable steps to preserve the lost text messages. (See Docket Entry 86 at 1-2 (baldly asserting, in "Introduction" section, that "[Defendant] Kormanis took reasonable steps in good faith to preserve all documents that could have conceivably been requested by [Plaintiff]" and that "[a]n error in the use and proper functioning of technology has, unfortunately,

---

¹²(...continued)
that, "[o]nce these communications are retrieved, they will be produced." (Docket Entry 85-3 at 9-13.) And well Defendant Kormanis should have so agreed, because "[i]t is clear that what is relevant in discovery is different from what is relevant at trial, in that the concept at the discovery stage is much broader." <u>Flora v. Hamilton</u>, 81 F.R.D. 576, 578 (M.D.N.C. 1978).

resulted in the loss of some requested [ESI]," but then outlining position that the Court "should deny [the instant Motion] for several reasons," none of which rely on actions taken by Defendant Kormanis to preserve text messages (emphasis omitted)), 5-14 (setting forth, in "Argument" section, four grounds for denial of instant Motion, matching reasons outlined in "Introduction" section, again without addressing reasonableness of Defendant Kormanis's preservation efforts (emphasis omitted)).) Through this omission of any meaningful opposition to the instant Motion's expressly made (and well-supported) contention that he "[f]ail[ed] to [t]ake [r]easonable [s]teps to [p]reserve [h]is [t]ext [m]essages" (Docket Entry 85 at 10 (emphasis omitted)), Defendant Kormanis effectively conceded the issue, see Kinetic Concepts, Inc. v. ConvaTec Inc., No. 1:08CV918, 2010 WL 1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing Local Rules 7.2(a), 7.3(f), and 7.3(k), and discussing authority supporting view that failure to respond to opponent's argument constitutes concession); see also Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) ("A party should not expect a court to do the work that it elected not to do.").

Additionally, in discussing this issue at the hearing on February 6, 2019 (the recording of which the undersigned Magistrate Judge recently replayed, while taking down verbatim notes), Defendant Kormanis's counsel stated: "Was [Defendant Kormanis]

-19-

negligent?  Absolutely, this was negligent behavior."  After reiterating "agree[ment] that [Defendant Kormanis] absolutely was negligent and . . . conced[ing] to that," Defendant Kormanis's counsel argued that such a concession "doesn't mean that [Defendant Kormanis] didn't take reasonable steps. . . .  The reasonable step was backing up his phone.  The negligence was not knowing how to do it. . . .  [H]e took a reasonable step by plugging in his phone [to his computer], but the outcome was negligent because he didn't make sure that the backup did what it was supposed to do."[13]

For reasons detailed in Subsection II.E., a material question of fact exists as to whether Defendant Kormanis <u>ever</u> attempted to preserve text messages; however, even assuming he did attach his iPhone to his computer for that purpose, his admitted actions (and omissions) compel a finding that the loss of text messages he should have preserved happened because he neglected to take reasonable steps.  To begin, upon learning of InoSpine's letter (which expressly warned him to save existing and future text messages), Defendant Kormanis reasonably should have investigated (or asked his counsel, who received the letter, to investigate)

---

[13] Defendant Kormanis's counsel elaborated that Defendant Kormanis's "mistake was thinking that the backups were snapshots in time . . . [such that,] every time [he] back[ed his iPhone] up, it create[d] a new file of that information, while in reality what happens in iTunes is it just replaces the last one, so you have [only] the most recent backup."  Moreover, Defendant Kormanis's counsel acknowledged that he possessed technology that would have captured just the sort of "snapshots" from an iPhone that Defendant Kormanis allegedly thought he had obtained using iTunes.

(a) what text messages his iPhone held, and (b) whether any setting on his iPhone might cause the deletion of existing or future text messages. Defendant Kormanis did not take that basic step and his unreasonable failure to do so led to the loss of text messages he should have preserved. Next, particularly given his self-proclaimed lack of technological prowess (see Docket Entry 86-1 at 3), Defendant Kormanis should have obtained appropriate advice about saving back-up copies of his text messages, rather than "just plug[ging his iPhone] in to the USB [drive on his computer] and let[ting] iTunes do its thing" (Docket Entry 100-1 at 13). At a minimum, Defendant Kormanis should have "check[ed] to see if [his] text messages were actually being uploaded" (id.); once more, he chose not to do so (see id.) and that unreasonable choice again resulted in the loss of text messages he should have preserved.

As very recently well-articulated by another court faced with similar circumstances, Defendant Kormanis's own account of his course of conduct (and inaction) deprives him of any refuge under the "reasonable steps" predicate element of Rule 37(e):

> Defendant[ Kormanis] w[as] required to take reasonable steps to preserve [his] text messages.
>
> [He] did not do so. First, [he] did not suspend the auto-erase function on [his] phone[]. . . . The principles of the standard reasonableness framework require a party to . . . put in place a litigation hold to ensure the preservation of relevant documents. It takes, at most, only a few minutes to disengage the auto-delete function on a cell phone. It is apparent . . . that [Defendant Kormanis also] could have taken advantage of relatively simple options to ensure that

[his] text messages were backed up . . . . These
processes would have cost [him] little, particularly in
comparison to the importance of the issues at stake and
the amount in controversy here.  Failure to follow the
simple steps detailed above alone is sufficient to show
that Defendant[ Kormanis] acted unreasonably.

Paisley Park Enters., Inc. v. Boxill, No. 17CV1212, 2019 WL
1036058, at *4 (D. Minn. Mar. 5, 2019) (unpublished) (internal
citation and quotation marks omitted).

### iii.  Predicate Element Four

"Having concluded that [Defendant Kormanis] did not take
reasonable steps to preserve . . . relevant ESI [resulting in its
loss contrary to his duty of preservation], the Court must next
consider whether the lost ESI can be restored or replaced from any
other source."  Id. at *6.  On that front, the undersigned
Magistrate Judge has found, under the circumstances of this case,
that no reasonable avenue existed for restoration or replacement of
all the lost text messages, particularly not the ones exchanged
between Defendant Kormanis and Alphatec officials.[14]  To begin,

_____

[14] During his deposition, Defendant Kormanis reported that he
recently "found out what a serious matter this is" and then began
"working with . . . Dr. Ditty and Dr. Jones, to recover the text
messages in question."  (Docket Entry 100-1 at 12.)  Subsequently,
just ahead of the hearing on February 6, 2019, Defendant Kormanis
filed a notice reporting that he had produced to Plaintiff "[t]ext
messages between [Defendant] Kormanis and Dr. [] Ditty from January
1, 2018 to August 6, 2018, acquired from Dr. [] Ditty" (Docket
Entry 99 at 1), as well as "[t]ext messages between [Defendant]
Kormanis and Dr. [] Jones from January 3, 2018 to August 10, 2018"
(id.) (although "Dr. Jones was only willing to provide messages
that [he determined] were related to [Plaintiff], Alphatec[], and
spinal business generally" (id.)).  At the hearing, Plaintiff's
(continued...)

-22-

Defendant Kormanis twice has sworn that a data recovery firm deemed the text messages deleted from his iPhone unrecoverable from both his iPhone and his computer. (See Docket Entry 86-1 at 3; Docket Entry 100-1 at 11.) Further, as the instant Motion notes, Defendant Kormanis refused Plaintiff's "offer to conduct a separate forensic examination" of those devices. (Docket Entry 85 at 10; see also Docket Entry 85-4 at 9-10.) Instead of allowing Plaintiff's expert to attempt to restore the lost text messages utilizing the device(s) on which they once resided, Defendant Kormanis has urged the Court to require Plaintiff to try to replace the lost text messages by "issu[ing] subpoenas to all individuals identified in its [production] requests for which [Defendant] Kormanis['s] production was deficient as a first step." (Docket Entry 86 at 14.) That proposal ignores two practical realities.

First, as the instant Motion states, Plaintiff "subpoenaed Alphatec directly for communications exchanged with Defendant[ Kormanis], but Alphatec declined to produce any records.

<hr>

[14](...continued)
counsel expressed confidence that the supplemental production from Dr. Ditty effectively replaced the relevant text messages he and Defendant Kormanis exchanged, but voiced reservations about whether Dr. Jones's production rose to an equivalent level. Consistent with the discussion in Subsection II.D., that latter matter may represent an appropriate subject for exploration at (or in conjunction with) the trial; however, viewing the evidence of the replacement of text messages between Defendant Kormanis and Dr. Jones in the light most favorable to Defendant Kormanis, Plaintiff still prevails on the fourth predicate element of the Rule 37(e) analysis, based on the lack of adequate restoration or replacement of text messages between Defendant Kormanis and Alphatec officials.

[Plaintiff] filed a motion to compel Alphatec to respond to the subpoena in the United States District Court for the Southern District of California, which was denied." (Docket Entry 85 at 11 (internal citation and footnote omitted); <u>see also</u> Docket Entry 85-5 at 3-11 (subpoena), 14 (objection from Alphatec to production of "communications with [Defendant] Kormanis that reference, mention, or relate to Dr. [] Ditty," on ground that "any relevant documents can be sought from a party without the need to seek them from a non-party"), 16 (same as to its communications with Defendant Kormanis about Dr. Jones), 22-26 (order quashing subpoena).) At the hearing, Plaintiff's counsel reported that the Alphatec officials, whose communications with Defendant Kormanis Plaintiff's production requests sought, all reside in California. Given Plaintiff's experience subpoenaing Alphatec, the record reveals no reason to believe any effort to subpoena those Alphatec officials for their text messages with Defendant Kormanis would result (or would have resulted) in anything but wasted time and money.

Second, given the time-sensitive nature of this case, on July 9, 2018, the Court (per United States District Judge Catherine C. Eagles) ordered discovery "expedited and appropriately limited so that the case c[ould] be tried on the merits in December [2018]." (Docket Entry 31 at 1.) As a result, the undersigned Magistrate Judge set a discovery deadline of November 10, 2018. (<u>See</u> Text Order dated July 17, 2018 (adopting in relevant part Discovery Plan

(Docket Entry 41 at 6)).)  When Plaintiff moved to continue the trial due to Defendant Kormanis's failure to timely produce requested records, Defendant Kormanis opposed any continuance (see Docket Entry 71 at 1), but defended his delayed production with "little more than a conclusory assertion through counsel of 'technical difficulties'" (id. at 2).  Judge Eagles nonetheless accommodated Defendant Kormanis by maintaining the December 2018 trial date as to "the validity and enforceability of the covenant not to compete in [his InoSpine] contract [while] sever[ing] for trial [in early 2019] . . . issues of breach and damages . . . ." (Id.)  The undersigned Magistrate Judge then re-set the discovery deadline as to breach and damages to February 1, 2019, and directed the Clerk to put the trial of those issues on the April 2019 Civil Master Calendar.  (See Text Order dated Nov. 1, 2018.)  In light of those scheduling considerations, Plaintiff could not have succeeded in replacing the lost text messages between Alphatec officials and Defendant Kormanis via the wild-subpoena-chase route he suggested.

As Defendant Kormanis has acknowledged, "parties seeking spoliation sanctions are not required to pursue every possible avenue for replacing or restoring the deleted ESI."  (Docket Entry 86 at 13 (internal brackets, citation, and quotation marks omitted).)  The evidence of Plaintiff's offer to forensically examine Defendant Kormanis's devices, combined with its extensive efforts to obtain communications directly from Alphatec, all within

the context of an expedited case-management schedule (that Defendant Kormanis wanted and fought to keep), establishes that Plaintiff "made [a] good-faith attempt to explore its alternatives before pursuing spoliation sanctions" (id. (internal quotation marks omitted)). Despite that attempt, "[a]t most, Plaintiff[ has and reasonably could have] obtain[ed] only scattershot texts . . ., rather than a complete record of [D]efendant[ Kormanis's text messages with Alphatec officials] from [D]efendant[ Kormanis him]sel[f]. The [undersigned Magistrate Judge] therefore finds that the missing text messages cannot be replaced or restored by other sources." Paisley Park Enters., 2019 WL 1036058, at *6 (internal citation and quotation marks omitted).[15]

---

[15] After the undersigned Magistrate Judge orally granted in part the instant Motion by authorizing a post-discovery-deadline deposition of a North Carolina-based Alphatec official at Defendant Kormanis's expense (while also recommending that consideration of trial-related sanctions await trial), Defendant Kormanis filed notices reporting that he had produced to Plaintiff various text messages between Defendant Kormanis and certain Alphatec officials. (See Docket Entry 113 at 1-2; Docket Entry 136 at 1.) Those tardy productions do not alter the conclusions announced at the hearing (and explained herein), but do reinforce the conclusion (discussed in Subsection II.D.) that only at trial should the Court make a final assessment of prejudice (and remedies) for lost text messages. Conversely, any further consideration of prejudice and remedies for lost ESI (as well as of intent by Defendant Kormanis to deprive Plaintiff of ESI for use in litigation) should not encompass Defendant Kormanis's alleged deletion of ESI in his "InoSpine email account at some point close in time to his resignation from InoSpine on March 3, 2018" (Docket Entry 85 at 6). As summarized in Footnote 3, Plaintiff failed to show that, when any such deletions occurred, the deleted e-mail-related ESI "should have been preserved in the anticipation or conduct of litigation," Fed. R. Civ. P. 37(e), and/or that "it cannot be restored," id.
(continued...)

-26-

<u>C. Prejudice Warranting Post-Discovery-Deadline</u>
<u>Deposition and Expense-Shifting under Rule 37(e)(1)</u>

"The Court now turns to what . . . sanctions are appropriate for [Defendant Kormanis's] failure to preserve relevant text messages. . . . If the Court finds that Plaintiff[] ha[s] suffered prejudice from [Defendant Kormanis's] failure to preserve [text messages], the Court may order only those sanctions necessary to cure the prejudice." <u>Id.</u> (citing Fed. R. Civ. P. 37(e)(1)). "An evaluation of prejudice from the loss of [ESI] necessarily includes

_____

[15](...continued)
Regarding the former issue, the instant Motion studiously avoids proposing any specific date before March 9, 2018, when Defendant Kormanis's preservation duty arose. (<u>See, e.g.</u>, Docket Entry 85 at 9 & n.6.) At the hearing on February 6, 2019, Plaintiff's counsel mentioned several possible such dates from August 2017 (when a larger dispute between Plaintiff and Alphatec came to light) through March 1, 2018 (when Defendant Kormanis signed a contract with Alphatec containing an indemnity clause). The undersigned Magistrate Judge has concluded that, although (in light of subsequent events) Defendant Kormanis's apparent deletion of his InoSpine e-mails around March 3, 2018, justifiably raises suspicion, none of the preceding developments (belatedly) identified by Plaintiff clearly triggered Defendant Kormanis's obligation to preserve any particular evidence. <u>See</u> Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e) ("A variety of events may alert a party to the prospect of litigation. Often these events provide only limited information about that prospective litigation, however, so that the scope of information that should be preserved may remain uncertain. It is important not to be blinded to this reality by hindsight arising from familiarity with an action as it is actually filed."). Additionally, the instant Motion acknowledges that Plaintiff "recover[ed] some of these email communications, [while maintaining that it could ]not be certain if those recovered communications are complete until it depose[d] Defendant [Kormanis]." (Docket Entry 85 at 6.) That deposition happened on January 16, 2019, yet, at the hearing on February 6, 2019, Plaintiff did not show any deficiency in its recovery of ESI from Defendant Kormanis's InoSpine e-mail account.

-27-

an evaluation of the [lost ESI's] importance in the litigation."
Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv.
(e)(1); see also Sinclair v. Cambria Cty., No. 3:17CV149, 2018 WL
4689111, at *2 (W.D. Pa. Sept. 28, 2018) (unpublished) ("Prejudice
exists where [ESI] that [is] relevant to a claim [is] unavailable
and the moving party has come forward with a plausible, good faith
suggestion as to what the [lost ESI] might have [shown]." (internal
brackets and quotation marks omitted)).  From its inception, this
litigation has revolved around the question of whether Defendant
Kormanis marketed Alphatec's products to doctors to whom he
formerly marketed Plaintiff's products, in violation of his
InoSpine contract.  (See Docket Entry 1 at 12; accord Docket Entry
82 at 12.)  The lost text messages between Defendant Kormanis and
Alphatec officials held great importance for that inquiry, because
(as Plaintiff has plausibly suggested) "communications between
. . . Defendant [Kormanis] and representatives of Alphatec
regarding his former surgeon-customers[ may] support [Plaintiff's]
position that Defendant [Kormanis] breached [the] restrictive
covenants [in his InoSpine contract]" (Docket Entry 88 at 5-6).

    Nor need the Court wildly speculate about "the potential and
reality of [Plaintiff] finding the modern-day litigation equivalent
of a 'smoking gun' in [the lost] text messages," Paisley Park
Enters., 2019 WL 1036058, at *5, given that Defendant Kormanis's
counsel candidly admitted at the hearing on February 6, 2019, that

"text messages that were lost might have [included] some in there that wouldn't have been great for [Defendant Kormanis's] case" (albeit while insisting that other lost text messages likely would have helped him).  In any event (again borrowing from the words of another court that just confronted an analogous situation):

> As set forth [in Part II.B.iii.], in the . . . discussion regarding [Plaintiff's] ability to replace or restore the missing [text messages], Plaintiff[ was] left with an incomplete record of the communications that Defendant[ Kormanis] had with . . . [Alphatec officials]. . . . Plaintiff[ thus was] forced to . . . attempt to piece together what information might have been contained in those [lost text] messages, thereby increasing [its] costs and expenses.  Sanctions are therefore appropriate under Rule 37(e)(1).

Id. at *7.

Specifically, at the hearing on February 6, 2019, the undersigned Magistrate Judge announced that Plaintiff could take (at Defendant Kormanis's expense) a post-discovery-deadline deposition of Mr. Warrick, an Alphatec official located in North Carolina, who (Plaintiff reasonably believed) participated in some of the lost text message exchanges and/or otherwise possessed knowledge about Defendant Kormanis's move from InoSpine to Alphatec, as a proper, sanctioning "measure[] no greater than necessary to cure [some of] the prejudice [to Plaintiff]," Fed. R. Civ. P. 37(e)(1).  In a further effort to make Plaintiff whole, the undersigned Magistrate Judge also will order Defendant Kormanis to pay "the attorney's fees and costs [Plaintiff] incurred in . . . filing [as well as briefing] the instant Motion . . . and appearing

-29-

for oral argument," <u>Sinclair</u>, 2018 WL 4689111, at *3.  This
combination of discovery-related and expense-shifting remedies
mirrors the sanction recently imposed under Rule 37(e)(1) in
another case involving a party "prejudiced by the loss of [an
opposing party's] text messages," <u>Spencer v. Lunada</u>, No. CV16-
02129, 2018 WL 839862, at *1 (C.D. Cal. Feb. 12, 2018)
(unpublished), <u>appeal filed</u>, No. 18-55383 (9th Cir. Mar. 22, 2018).
<u>See</u> <u>id.</u> at *2 ("[The p]laintiffs are granted monetary sanctions
against [the d]efendant [], in the form of reasonable attorneys'
fees incurred by [the p]laintiffs in bringing their [m]otion [for
sanctions] against [the d]efendant [].  Additionally, [the
p]laintiffs are permitted to depose [the d]efendant [] regarding
issues relevant to spoliation, with costs and fees incurred by [the
p]laintiffs to be included in the award of monetary sanctions.").

### D.  Deferral of Other Remedies under Rule 37(e)(1)

Beyond the sanctions discussed in Subsection II.C., "it may be
that [other] serious measures are necessary to cure prejudice [from
the lost text messages], such as forbidding [Defendant Kormanis]
. . . from putting on certain evidence, permitting the parties to
present evidence and argument to the jury regarding the loss of
[text messages], or giving the jury instructions to assist in its
evaluation of such evidence or argument, other than instructions
[that it may or must presume the lost text messages were
unfavorable to Defendant Kormanis]," Fed. R. Civ. P. 37 advisory

comm.'s note, 2015 amend., subdiv. (e)(1); see also id., subdiv. (e)(2) (explaining that, even absent a finding of intent to deprive a party of lost ESI, a court may "allow[] the parties to present evidence to the jury concerning the loss and likely relevance of [ESI] and instruct[] the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision"); Spencer, 2018 WL 839862, at *2 (ordering that, "[a]t trial, [the parties] will be permitted to present evidence and argument related to the unrecoverable text messages," notwithstanding "finding that there [wa]s insufficient evidence to establish the intent to deprive [element of Rule 37(e)(2)]"). For example, "it may be appropriate to exclude a specific item of evidence [offered by Defendant Kormanis] to offset prejudice caused by [his] failure to preserve [text messages] that might contradict the excluded item of evidence." Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e)(1).

The undersigned Magistrate Judge, however, "recommends that the [ C]ourt . . . reserve its ruling as to [those Rule 37(e)(1)] sanction[s] until trial to see how the evidence is presented." Brewer v. BNSF Ry. Co., No. CV-14-65, 2018 WL 3079499, at *6 (D. Mont. Feb. 27, 2018) (unpublished), recommendation adopted, 2018 WL 2047581 (D. Mont. May 2, 2018) (unpublished); see also Conan v. City of Fontana, No. EDCV 16-1261, 2017 WL 8941499, at *11 (C.D. Cal. Oct. 6, 2017) (unpublished) ("[T]he [c]ourt defers ruling on

[the motion to exclude evidence of ESI spoliation] and will monitor carefully the scope of questioning and argument on this issue." (all-cap font omitted)); Williams v. Klem, No. 3:07CV1044, 2010 WL 3812350, at *3 (M.D. Pa. Sept. 22, 2010) (unpublished) ("[P]retrial rulings curtailing proof should rarely be granted and excluding evidence at the pretrial stage is an extreme measure that is rarely necessary." (internal brackets, ellipsis, and quotation marks omitted)); C & E Servs., Inc. v. Ashland Inc., Civ. No. 03-1857, 2008 WL 1744600, at *3 (D.D.C. Apr. 14, 2008) (unpublished) ("Trials are dynamic and in many of them evidence that seems crucial when the trial begins proves not to be when other evidence is received."); Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007) ("[A] court is almost always better situated during the actual trial to assess the value and utility of evidence."); Ebenhoech v. Koppers Indus., Inc., 239 F. Supp. 2d 455, 461 (D.N.J. 2002) ("[A] ruling [in limine] should not be made prematurely if the context of trial would provide clarity.").

### E.  Intent to Deprive under Rule 37(e)(2)

"[I]f . . . Defendant[ Kormanis] acted with 'intent to deprive' Plaintiff[] of the [text messages'] use, then the Court may order more severe sanctions, including . . . an instruction to the jury that it may or must presume the missing [text messages] w[ere] unfavorable." Paisley Park Enters., 2019 WL 1036058, at *6 (quoting Fed. R. Civ. P. 37(e)(2)); see also Fed. R. Civ. P. 37

advisory comm.'s note, 2015 amend., subdiv. (e)(2) ("Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the [ESI]."). "Intent rarely is proved by direct evidence, and a [fact-finder] has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors. There need not be a 'smoking gun' to prove intent [under Rule 37(e)(2)]." Paisley Park Enters., 2019 WL 1036058, at *6 (internal citation and some quotation marks omitted). Further, such a "credibility analysis and [related] finding as to [a litigant's] mental state," Hunting Energy Servs., Inc. v. Kavadas, No. 3:15CV228, 2018 WL 4539818, at *11 (N.D. Ind. Sept. 20, 2018) (unpublished), constitute "prototypical functions of a jury and questions that [a] jury . . . [may] fairly evaluate and resolve," id. Consistent with that understanding, the commentary to Rule 37(e)(2) explicitly contemplates that the Court may "conclude that the intent finding should be made by a jury, [in which case] the [C]ourt's instruction should make clear that the jury may infer from the loss of [the text messages] that [they were] unfavorable to [Defendant Kormanis] only if the jury first finds that [he] acted with the intent to deprive [Plaintiff] of th[eir] use in the litigation." Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e)(2).

In this case, the parties have made contrasting arguments about what ultimate factual finding the intent-related evidence warrants. (Compare, e.g., Docket Entry 85 at 11-12 ("[B]y leaving his alleged thirty-day deletion policy in place, Defendant [Kormanis] intended that the text messages would be destroyed. [His] false representations that [they] could be recovered . . . supports a finding that he acted in bad faith with the intent to deprive [Plaintiff] of these communications."), with, e.g., Docket Entry 86 at 10 ("The record reflects that the text messages at issue here were deleted inadvertently as a result of the thirty-day (30-day) automatic delete function being either accidentally or automatically activated on [Defendant] Kormanis'[s] iPhone.").) Moreover:

> These competing views each draw support from the record, and in the final analysis may turn on the credibility of [Defendant Kormanis]. Since these matters are fact-bound and inextricably tied to witness credibility determinations, they are not well-suited to the type of pre-trial ruling that [the instant Motion] seeks from the Court.
>
> . . . Instead, [the undersigned Magistrate Judge] believe[s] that this matter should be the subject of proof at trial, and that [the question of] whether, and to what extent, a[n adverse] spoliation inference is warranted, [therefore also] should await trial . . . .

Williams, 2010 WL 3812350, at *3; see also Sosa v. Carnival Corp., No. 18-20957CIV, 2019 WL 330865, at *3 (S.D. Fla. Jan. 25, 2019) (unpublished) (collecting cases where courts ordered "that the jury would decide the [Rule 37(e)(2)] intent issue").

In that regard, as justification for the position that "the text messages at issue here were deleted <u>inadvertently</u> as a result of the thirty-day (30-day) automatic delete function being . . . <u>accidentally</u> . . . <u>activated</u> on [his] iPhone" (Docket Entry 86 at 10 (emphasis added)), Defendant Kormanis evidently relies on his sworn statements (first in his affidavit filed with his Response to the instant Motion and later at his deposition) (<u>see</u> Docket Entry 86-1 at 3 ("At some point prior to [Defendant Kormanis's] receipt of [InoSpine's March 9, 2018] Letter, [he] unknowingly enabled a setting on [his] iPhone that automatically erases all text messages . . . after thirty (30) days of sending and/or receipt."); Docket Entry 100-1 at 7-8 (testifying that, in the course of responding to Plaintiff's production requests (served on July 18, 2018), Defendant Kormanis and his counsel "figured out that there was a setting activated on [Defendant Kormanis's] phone that only retained text messages for 30 days," which he did not "recall activating" and did not "even know about"), 14-15, 17-18 (suggesting that, during visit regarding insufficient photo capacity in unknown year, employee at unknown Verizon store may have activated 30-day text message deletion setting on Defendant Kormanis's iPhone (of unknown vintage) without telling him)).[16] As

---

[16] No evidence shows that Defendant Kormanis acquired his iPhone with the 30-day text message deletion setting "automatically activated" (Docket Entry 86 at 10); instead, the record material on point tends to establish the opposite (<u>see</u> Docket Entry 88-1 at 2).

Plaintiff's Reply, however, correctly points out, Defendant Kormanis's earlier sworn responses to Plaintiff's production requests "contain[ed] no reference to [his] purportedly unknowing and/or accidental activation of an automatic deletion setting. Rather, [they] state that the 30-day text retention policy was due to storage limitations with his device."  (Docket Entry 88 at 3.)

That shift in Defendant Kormanis's account raises a legitimate question about the credibility of his current explanation for the loss of text messages, as another magistrate judge recently observed in recommending that a jury resolve at trial a similar Rule 37(e)(2) intent issue presented by a spoliation motion:

> If in fact [Defendant Kormanis] was operating under a misapprehension regarding the [text message] retention schedule [on his iPhone], one would have thought he would have informed [Plaintiff of that fact upon learning of the 30-day deletion setting] . . . . But that's not what happened.  Failure to mention something under circumstances when a reasonable person would do so is a factor that courts have long approved as an organon for measuring credibility.

BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc., No. 15C10340, 2018 WL 1616725, at *7 (N.D. Ill. Apr. 4, 2018) (unpublished).

Defendant Kormanis's descriptions of his storage (or attempted storage) of text messages on his computer also create credibility questions that merit resolution at trial.  To begin, a reasonable fact-finder could take note that Defendant Kormanis's (above-quoted) sworn insistence (in his affidavit and his deposition) that

he did not learn that his iPhone deleted text messages on a 30-day cycle until some time after July 18, 2018, appears in some tension with his statements under oath (in his production request responses and affidavit) that, on or about March 9, 2018, in deference to the letter from InoSpine, he started copying text messages from his iPhone to his computer (see Docket Entry 85-3 at 9-13; Docket Entry 86-1 at 2-3). Specifically, if (on March 9, 2018) Defendant Kormanis believed that text messages would remain on his iPhone (because he did not know about the 30-day deletion setting), then why would he need to begin saving his text messages on his computer (rather than his iPhone) when he received the letter from InoSpine?

Defendant Kormanis's deposition testimony only underscores this incongruence, as he therein first answered "[r]eally none" when asked to identify "[w]hat steps" he took to comply with InoSpine's letter (Docket Entry 100-1 at 10) and then added: "I didn't know I needed to do anything. So you know, I just didn't delete e-mails. . . . I basically didn't delete anything from my phone." (Id.) Moreover, when directly asked during the deposition about "back[ing] up [his] cell phone" (id.), Defendant Kormanis did not revert back to his prior sworn statements (quoted above) that he had instituted that measure in response to InoSpine's letter, but rather claimed to have begun that (monthly) practice during his time selling Plaintiff's products (see id. at 11, 13).

The foregoing internal inconsistencies in Defendant Kormanis's recounting of events give reason to doubt his assertions that he took "the affirmative step of backing up the contents of his phone to his computer" (Docket Entry 86 at 4), that he "expect[ed] that backing up [of] the contents of his iPhone to his computer would have preserved all of the [lost text messages]" (id. at 4-5), and that "this expectation is indicative of [his] intent to preserve evidence in anticipation of litigation, not an intent to destroy it" (id. at 5 (emphasis omitted)). However, a final consideration even more strongly counsels in favor of allowing a jury to resolve the Rule 37(e)(2) intent issue:  The record indicates that, when Defendant Kormanis produced text messages to Plaintiff, "[t]here were no text messages within [that] production prior to August 5, 2018." (Docket Entry 85-4 at 3 (emphasis added).)  That date falls exactly 30 days before September 4, 2018, the date Defendant Kormanis served his responses to Plaintiff's production requests (see Docket Entry 85-3 at 16), the latest possible date by which he could have discovered that neither his iPhone nor his computer contained properly preserved text messages from throughout 2018 (see id. at 9-13 ("[A]t this time, Defendant Kormanis has not been able to retrieve [the requested text] messages from his personal devices.")).  The lack of any earlier text messages suggests that Defendant Kormanis has made false sworn statements about downloading text messages from his iPhone to his computer, because:

1) even with a 30-day delete setting in place, on September 4, 2018, Defendant Kormanis's iPhone would have held text messages dating back to August 5, 2018; and

2) even if (unbeknownst to him) Defendant Kormanis's iTunes-based, back-up system only preserved the most recent prior download of his iPhone to his computer, that file would have contained a set of 30 days of text messages that (almost certainly) would have extended back well beyond August 5, 2018 (to 30 days before the last monthly download he made from his iPhone to his computer).[17]

Simply put, the evidence in the record could sustain (but does not mandate) a finding that, "[w]hen [Defendant Kormanis had to admit] to [Plaintiff] that [the text messages] were gone, [he] falsely blamed it on the [undetected activation of a 30-day deletion setting on his iPhone and falsely claimed to have downloaded copies of the text messages to his computer]. False

---

[17] To conclude that, despite regularly making computer back-up files of his iPhone throughout 2018, when Defendant Kormanis responded to Plaintiff's production requests on September 4, 2018, both his iPhone and his computer contained no text messages dated before August 5, 2018, one would have to believe that Defendant Kormanis not only first noticed the deletion of text messages from his iPhone on September 4, 2018, but also backed-up his iPhone to his computer that same day (inadvertently replacing the older back-up file of saved text messages with a new back-up file that, like his iPhone, held only text messages dating back to August 5, 2018), all without checking to see (and taking steps to preserve) whatever older text messages he previously had managed to save on his computer. "When one looks at all of the circumstances in the case, [that explanation] seems a bit much to swallow . . . . [Certainly, n]o reasonable adjudicator would be compelled to credit [that] explanation[] . . . ." BankDirect, 2018 WL 1616725, at *6 (internal quotation marks omitted).

exculpatory statements are often evidence of consciousness of guilt." BankDirect, 2018 WL 1616725, at *11 (internal citation omitted). Viewed from that perspective, the above-discussed evidence regarding "the deletion of the [text messages] – or the failure to stop their automatic deletion – is significant to [the resolution of Plaintiff's] claims [against Defendant Kormanis], especially the claim that [he] . . . was going after [Plaintiff's] customers," id. at *12, not just to the resolution of the instant Motion's request for sanctions under Rule 37(e)(2).

"Accordingly, it is recommended that the [C]ourt . . . allow the appropriate evidence to be presented to the jury, which, under proper instructions, [may then] determine the reasons for the non-production [of text messages] and the impact, if any, th[at] non-production . . . has on the merits of the parties' claims [and defenses]." Id.; see also Hunting Energy, 2018 WL 4539818, at *11 ("If the jury accepts the defendant['s] explanations [for the loss of ESI], then an adverse inference would not be appropriate. . . . [The defendant] will already be a witness in this case, and his credibility will already be a central issue as to [the plaintiff's] claims, so allowing the jury to make th[e] finding [about whether the defendant intended to deprive the plaintiff of the use of the lost ESI] as well is appropriate.").

### III.  CONCLUSION

A loss of ESI (consisting of text messages to/from Defendant Kormanis that he should have preserved in the anticipation and/or conduct of litigation) occurred because he did not take reasonable steps to preserve it.  No viable options existed to restore or replace that ESI and Plaintiff suffered prejudice due to its absence, warranting some sanctions, pursuant to Rule 37(e)(1). However, the full extent of the harm to Plaintiff from this spoliation (as well as the precise nature of all proportional, corresponding remedies) remains indeterminable before trial. Finally, the present record permits (but does not require) a finding that Defendant Kormanis acted with intent to deny Plaintiff the use of the lost ESI for litigation, such that a decision about the applicability of sanctions under Rule 37(e)(2) also should occur within the framework of the trial.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Imposition of Sanctions for Spoliation of Evidence (Docket Entry 85) is **GRANTED IN PART**, in that:

1) Plaintiff may depose (and may subpoena text messages from) Ashley Warrick beyond the discovery deadline and Defendant Kormanis shall pay Plaintiff's reasonable expenses, including attorney's fees, associated with that deposition (and any related subpoena);

2) on or before March 27, 2019, the parties shall file a joint notice <u>either</u> confirming their resolution of all issues regarding

the payment of Plaintiff's reasonable expenses from the deposition of (and any related subpoena to) Mr. Warrick <u>or</u> setting out their respective positions on any issue(s) regarding that payment that remain in dispute after good-faith consultation;

3) Defendant Kormanis shall pay Plaintiff's reasonable expenses, including attorney's fees, associated with drafting, filing, briefing, and orally arguing the instant Motion; and

4) on or before March 27, 2019, the parties shall file a joint notice <u>either</u> confirming their resolution of all issues regarding the payment of Plaintiff's reasonable expenses from drafting, filing, briefing, and orally arguing the instant Motion <u>or</u> setting out their respective positions on any issue(s) regarding that payment that remain in dispute after good-faith consultation.

**IT IS RECOMMENDED** that the Court defer until trial the decision of whether other "serious measures are necessary to cure prejudice [from the loss of text messages], such as forbidding [Defendant Kormanis] from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument, other than instructions [that it may or must presume the lost text messages were unfavorable to Defendant Kormanis]," Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e)(1).

**IT IS FURTHER RECOMMENDED** that, because the record supports but does not compel a "finding that [Defendant Kormanis] acted with the intent to deprive [Plaintiff] of the [lost text messages'] use in the litigation," Fed. R. Civ. P. 37(e)(2), the Court submit that issue to the "jury, [with] the [C]ourt's instruction[s ] mak[ing] clear that the jury may infer from the loss of the [text messages] that [they were] unfavorable to [Defendant Kormanis] only if the jury first finds that [he] acted with the intent to deprive [Plaintiff] of the[ir] use in the litigation," Fed. R. Civ. P. 37 advisory comm.'s note, 2015 amend., subdiv. (e)(2).

/s/ L. Patrick Auld

**L. Patrick Auld**
**United States Magistrate Judge**

March 13, 2019